UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEFFREY J. CHOWANIEC,

                                        Plaintiff,

v.                                                              6:24-cv-0085
                                                                (DNH/TWD)


WHITESBORO POLICE DEPARTMENT, et al,

                                        Defendants.
_____

APPEARANCES:                              OF COUNSEL:

JEFFREY J. CHOWANIEC
*Plaintiff, pro se*
910 Utica St.
Oriskany, NY 13424

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

### I.    INTRODUCTION

The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff

Jeffrey J. Chowaniec ("Plaintiff"), brought pursuant to 42 U.S.C. § 1983, alleging the

Whitesboro Police Department and Brandon Macera violated his Fourth Amendment rights

under the United States Constitution.  Dkt. No. 1.  For the reasons stated below, the Court

recommends Plaintiff's complaint be dismissed.

II.    **IFP APPLICATION**

Plaintiff has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP").  Dkt. No. 2.  Upon review, Plaintiff's IFP application demonstrates economic need.  *See id*.  Therefore, he is granted permission to proceed IFP.

III.    **BACKGROUND**

On March 1, 2023, at approximately 8:00 p.m., Plaintiff received a phone call from a friend who stated she had been detained by the Whitesboro Police Department and asked Plaintiff to retrieve her service animal from the police station.  Dkt. No. 1 at 5.[1]  Plaintiff agreed and drove to the police station.  *Id*.  In the station's parking lot, he was greeted by Officer Masera who asked "What's up dude" and Plaintiff responded "I am just here to pick up a dog" as he observed the dog on a nearby curb with his friend.  *Id*.

"Officer Masera got right in my face and insistently said, 'I need to see your ID.'"  *Id*.  Plaintiff asked why and the officer advised him "'anytime there is a transfer of property we need to see to see an ID'."  *Id*.  Plaintiff reached into his wallet to retrieve his driver's license and Masera asked "'Are you ok, you look confused.'"  *Id*.  Plaintiff "in fact was confused as there was no lawful action for what he was asking of me.'"  *Id*.  Concerned for the animal's safety, Plaintiff "held up my license where he proceeded to aggressively snatch my identification from my fingertips.'"  *Id*.

Plaintiff states the officer next "called in my license information through the National Crime Information Center (NCIC)."  *Id*.  After approximately one minute passed, "Officer

---

[1] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Masera appeared aggravated that he had not received a timely response" then entered his vehicle where Plaintiff "could see him type my information into a laptop." *Id*. Plaintiff contends "As I knew and expected, my information came back with no outstanding warrants or violations. Officer Masera demeaner seemed extremely disappointed to this finding." *Id*.

The officer then exited the vehicle and returned Plaintiff's driver's license. *Id*. Plaintiff asked the officer for a copy of his business card, the officer "arrogantly indicated that they do not have business cards" and provided Plaintiff his name and badge number. *Id*. Plaintiff "then asked, 'Is that the dog I hear crying at the curb'", the officer answered in the affirmative, and Plaintiff took possession of the dog. *Id*.

Plaintiff "was expecting to have to sign a release of possession form" and thought "perhaps my identification was needed to fill out this release" however, "No such form was presented to me, so I left with the animal." *Id*. Plaintiff contends:

> [T]here was no probable cause to run my identification, I did not commit a crime, no vehicle infraction occurred, my license was not suspended, and physically taking my license from my possession was not warranted. And for that, I feel that this is a direct violation of my Fourth Amendment right when 'a search or seizure is illegal under the Fourth Amendment if it happens without consent, a warrant, or probable cause to believe a crime has been committed'.

*Id*. at 6 (emphasis omitted). Plaintiff further avers he "spoke to the F.B.I. field office in Albany and The Civil Rights Division of the D.O.J. in D.C. and both told me that my 4th ammendment was violated[.]" *Id*. Plaintiff seeks punitive damages in the amount of $100,000 for "Pain and suffering and emotional distress." *Id*. at 4.

## IV.   STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an IFP complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks

monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. §
1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).
The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter
jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).

 While the law mandates dismissal on any of these grounds, the Court is obliged to
construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret
them to raise the "strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*,
470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted).  A claim is
frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S.
319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007);
*see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual
frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly
incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual
contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal
theory.").

 To survive dismissal for failure to state a claim, a complaint must contain a short and
plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).
This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at
570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the
court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The statement of the claim must do more than
present "an unadorned, the-defendant-harmed-me accusation."  *Id.*  It must "give the defendant

4

fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.   ANALYSIS

### A.  Whitesboro Police Department

Plaintiff lists the Whitesboro Police Department as a Defendant. Dkt. No. 1 at 1. "A police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (dismissing claims against county sheriff's department) (citations omitted); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) ("Under New York law, departments that are merely administrative arms of a municipality do not have a legal

identity separate and apart from the municipality and, therefore, cannot sue or be sued.")
(citations omitted); *see also*, *e.g.*, *Jenkins v. Liadka*, No. 5:10-CV-1223 (GTS/DEP), 2012 WL
4052286, at *9 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely
an administrative arm of the City of Syracuse, it is not a proper defendant in this case.").

Therefore, the Court recommends dismissing Plaintiff's claim against the Whitesboro
Police Department with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).  *See*, *e.g.*, *La Grande v.
Town Of Bethlehem Police Dep't*, No. 1:08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2
(N.D.N.Y. Sept. 1, 2009) ("Since the Bethlehem Police Department cannot be sued pursuant to
42 U.S.C. § 1983, Plaintiff's Complaint is dismissed as against the Town of Bethlehem Police
Department."); *Hester v. City of Oneida*, No. 6:23-CV-1171 (AMN/TWD), 2023 WL 7543607,
at *4 (N.D.N.Y. Nov. 14, 2023), *report and recommendation adopted*, 2024 WL 78485
(N.D.N.Y. Jan. 8, 2024).

### B.  Brandon Macera

Even accepting as true all of the allegations contained in Plaintiff's complaint, his Fourth
Amendment claim against Macera is frivolous, therefore, the complaint must be dismissed.  28
U.S.C. § 1915(e)(2)(B)(i).

The Fourth Amendment generally recognizes "[t]he right of the people to be secure in
their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S.
Const. amend. IV.  "As a threshold showing, to invoke the fourth amendment successfully a
defendant must demonstrate a reasonable expectation of privacy . . . ."  *United States v. Barr*,
605 F. Supp. 114, 117 (S.D.N.Y. 1985)) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967)).
Plaintiff has failed to make such a threshold showing.

Plaintiff's complaint establishes he voluntarily drove to the Whitesboro Police Department station, stated he intended to take possession of a dog which was in the police department's custody, and was instructed he would be required to provide some form of identification to take possession of the dog.  Dkt. No. 1 at 5.  Plaintiff knew that "to take possession of the animal I will need to show identification" so he retrieved his driver's license from his wallet and held it up for the officer.  *Id*.

When Plaintiff presented his identification to the officer, he had no reasonable expectation of privacy in the information contained thereon.[2]  Therefore, even accepting Plaintiff's assertion that the officer used his license information to determine whether he had any outstanding warrants, the Defendant's conduct did not constitute a search for Fourth Amendment purposes.  *See Jennings v. Decker*, 359 F. Supp. 3d 196, 207-08 (N.D.N.Y. 2019) ("A 'search' in

---

[2] *See United States v. Diaz-Castaneda*, 494 F.3d 1146, 1153 (9th Cir. 2007), wherein the Court stated:

> [A sheriff]'s check of [the defendant]'s driver's license or Oregon ID card with radio dispatch also was not a Fourth Amendment search or seizure.  People do not have a reasonable expectation of privacy in their driver's license or state ID card (or the identification numbers contained by those documents) once they hand them over to police officers who legitimately asked for them.  That is, there is no constitutional basis for complaint when the police properly obtain information located in a driver's license or state ID card, and then use it to access additional non-private . . . information about the document's owner.

In *Diaz-Castaneda*, the Ninth Circuit concluded the defendant's driver's license information was properly obtained because the sheriff requested the identification card pursuant to a legitimate traffic stop.  While Plaintiff here was not the subject of a traffic stop, it is apparent from his complaint that he provided his driver's license voluntarily, therefore, this Court has no reason to conclude Officer Masera improperly obtained Plaintiff's license.  *See also, e.g.*, *Chaney v. City of Albany*, No. 6:16-CV-1185 (NAM/TWD), 2019 WL 3857995, at *8-9 (N.D.N.Y. Aug. 16, 2019) (citing *Diaz-Castaneda* in support of the proposition that the defendant's use of license plate reader technology did not violate the plaintiff's Fourth Amendment rights as a police officer's use of license plate data did not constitute a search for Fourth Amendment purposes).

the context of the Fourth Amendment occurs when the police intrude upon a person's reasonable expectation of privacy or if the police otherwise trespass upon one's person, house, papers, or effects for the purpose of acquiring information.") (citations omitted).  Accordingly, Plaintiff's contention that "there was no probable cause to run my identification," Dkt. No. 1 at 6, is immaterial as Defendant's use of the information contained on the driver's license which Plaintiff voluntarily provided did not amount to a search, therefore, probable cause was not required.

To the extent Plaintiff contends the Defendant's interaction with him constituted an unreasonable seizure, any such claim is similarly unavailing.  In assessing whether such a Fourth Amendment violation has occurred, the court must determine "(1) under all the circumstances of the case, did the encounter between the individual and the police officer constitute a 'seizure' within the meaning of the Fourth Amendment; and (2) if said encounter did constitute a seizure, was such seizure reasonable." *Robinson v. Town of Colonie*, 878 F. Supp. 387, 396 (N.D.N.Y. 1995).  Because Plaintiff's encounter with Officer Masera did not amount to a "seizure" within the meaning of the Fourth Amendment, he is unable to establish a constitutional violation.  *See United States v. Tehrani*, 49 F.3d 54, 58 (2d Cir. 1995) ("Whether a seizure occurred" is a question of law).

"The Fourth Amendment does not proscribe all contact between the police and citizens, but is designed to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (internal quotations and citations omitted).  Therefore, a "consensual" encounter between an individual and law enforcement officer "implicates no Fourth Amendment interest." *United States v. Springer*, 946 F.2d 1012, 1016 (2d Cir. 1991) ("[A] seizure takes place '[o]nly when the

officer, by means of physical force or show of authority, has in some way restrained the liberty

of a citizen.' . . . Otherwise, an encounter between a police officer and a citizen is consensual,

and implicates no Fourth Amendment interest.") (first quoting *Florida v. Bostick*, 501 U.S. 429,

434 (1991); then citing *Florida v. Rodriguez*, 469 U.S. 1, 5-6 (1984)) (additional quotations and

citation omitted); *see also*, *e.g.*, *United States v. Hooper*, 935 F.2d 484, 491 (2d Cir. 1991)

(explaining "if [an individual] was not seized within the meaning of the fourth amendment, his

encounter with the [law enforcement] agents did not implicate the fourth amendment.").

   Here, based on the facts as stated in Plaintiff's complaint, his encounter with Officer

Masera was surely consensual.  The Supreme Court has explained "a seizure does not occur

simply because a police officer approaches an individual and asks a few questions."  *Florida v.*

*Bostick*, 501 U.S. 429, 434 (1991).  It necessarily follows that a seizure does not occur where a

police officer asks a few questions after *an individual approaches the officer*, such as the

Plaintiff here, who initiated the exchange by driving to the Whitesboro Police Station and

announcing his intent to take possession of a dog in the department's custody.  *See generally*,

Dkt. No. 1 at 5.

   Moreover, nothing in Officer Masera's statements or conduct towards Plaintiff

transformed the consensual encounter into a seizure.  *See Gallegos v. Haggerty*, 689 F. Supp. 93,

100 (N.D.N.Y. 1988) ("A consensual encounter, however, may be transformed into a seizure

when, in view of all the circumstances, a reasonable person would believe he or she was not free

to leave.") (citations omitted); *see also United States v. Mendenhall*, 446 U.S. 544, 554 (1980)

("Examples of circumstances that might indicate a seizure" include "the threatening presence of

several officers, the display of a weapon by an officer, some physical touching of the person of

the citizen, or the use of language or tone of voice indicating that compliance with the officer's

request might be compelled.").  Plaintiff alleges the officer merely asked "'What's up dude'"
after Plaintiff approached him and "'Are you ok, you look confused'" as Plaintiff took out his
driver's license.  Dkt. No. 1 at 5.  Nor did the officer's request to see identification transform the
encounter into a seizure within the meaning of the Fourth Amendment.  *See Gallegos*, 689 F.
Supp. at 100 ("Police questioning relating to one's identity or a request for identification, without
more, is not a seizure for purposes of the Fourth Amendment.") (citing *Delgado*, 466 U.S. at
216); *see also United States v. Serrano*, 695 F. App'x 20, 22 (2d Cir. 2017) (Summary Order)
(concluding officers' conduct in asking an individual "for his identification and what he was
doing in the neighborhood" was "akin to a casual, consensual encounter and is not a Fourth
Amendment seizure.") (citing *United States v. Glover*, 957 F.2d 1004, 1009 (2d Cir. 1992)).  Put
another way, in view of the surrounding circumstances, a reasonable person would have believed
he *was* free to leave, therefore, Plaintiff was not seized within the meaning of the Fourth
Amendment.  *See Mendenhall*, 446 U.S. at 554.

      In sum, "Defendants did not violate Plaintiff's Fourth Amendment rights when they
asked for his identification, and he voluntarily provided it."  *Brace v. Johnson*, No. 1:20-CV-
0588 (FJS/CFH), 2022 WL 504972, at *4 (N.D.N.Y. Feb. 18, 2022), *aff'd*, No. 22-590, 2023 WL
2027274 (2d Cir. Feb. 16, 2023); *see also Hogan v. City of New York*, No. 1:04-CV-3298, 2007
WL 9710294, at *3 n.4 (E.D.N.Y. Mar. 12, 2007) ("To the extent plaintiffs attempt to allege . . .
a [Fourth Amendment unreasonable search and seizure] claim based on defendants' request for
identification, that claim must fail, as both plaintiffs testified that they handed over their
identification voluntarily.") (citing *Springer*, 946 F.2d at 1016).  Because Plaintiff's claim
against Macera is based on a meritless legal theory, it must be dismissed as frivolous.  *See* 28
U.S.C. § 1915(e)(2)(B)(i).  Although the Court has serious doubts about whether Plaintiff can

amend to assert an actionable claim, in deference to Plaintiff's *pro se* status and out of an abundance of caution, the Court recommends Plaintiff be permitted to amend his complaint insofar as he seeks to proceed against Macera.

## VI.   CONCLUSION

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**,[3] and it is

**RECOMMENDED** that Plaintiff's Fourth Amendment claim against the Whitesboro Police Department be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's Fourth Amendment claim against Macera be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

---

[3] Although Plaintiff's application to proceed IFP has been granted, Plaintiff will still be required to pay fees that he may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

[4] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: March 12, 2024
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2012 WL 4052286
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Sylvia JENKINS, Plaintiff,
v.
Mr. LIADKA, Syracuse Police Officer; Mr. Sands,
Syracuse Police Officer; John Doe, Syracuse Police
Officer; and Syracuse Police Dep't, Defendants.

No. 5:10–CV–1223 (GTS/DEP).
|
Sept. 13, 2012.

**Attorneys and Law Firms**

Sylvia Jenkins, Syracuse, NY, pro se.

Hon. Mary Anne Dougherty, Corporation Counsel for
City of Syracuse, Catherine Ena Carnrike, Esq., Assistant
Corporation Counsel, of Counsel, Syracuse, NY, for
Defendants.

***MEMORANDUM–DECISION and ORDER***

GLENN T. SUDDABY, District Judge.

 **\*1** Currently before the Court, in this *pro se* civil rights
action filed by Sylvia Jenkins ("Plaintiff") against Mr. Liadka,
Mr. Sands, John Doe, and Syracuse Police Department
("Defendants"), is Defendants' motion to dismiss Plaintiff's
Complaint for insufficient service of process pursuant to
Fed.R.Civ.P. 12(b)(5) and/or for failure to state a claim
pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 13.) For the
reasons set forth below, Defendants' motion is granted in part
and denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint
Generally, construed with the utmost of special liberality,
Plaintiff's Complaint asserts three claims against Defendants
arising from an investigatory stop in September 2010, in
Syracuse, New York: (1) a claim that three Syracuse Police
Officers unreasonably searched her in violation of the Fourth
Amendment; (2) a claim that they unlawfully seized, and
failed to return, her personal property in violation of the

Fourth, Fifth, and/or Fourteenth Amendments; and (3) a claim
that they subjected her to excessive force in violation of
the Fourth Amendment. (*See generally* Dkt. No. 1 [Plf.'s
Compl].)

Generally, in support of these claims, Plaintiff alleges as
follows: (1) on the evening of September 9, 2010, she was
stopped on Butternut Street in the City of Syracuse by
two officers, who questioned her regarding a call they had
received; (2) when she told the two police officers that she
did not know what they were talking about and "attempted
to go on about [her] business," the officers became "uptight,
rude, [and] abnormal in their conversations [and] behavior,"
and threatened her; (3) the officers then proceeded to conduct
a search of "all [of Plaintiff and her] personal property,"
and, in the process of doing so, twisted her arm and forced
her onto the front of their police vehicle; (4) a third police
officer arrived, and she was assaulted by all three officers
(hereinafter "Defendants"), who hit her on the back and threw
her onto the police vehicle; (5) following the deprivation on
September 9, 2010, Defendants denied her a post-deprivation
remedy through a combination of threats, intimidation and/
or nonresponsiveness; and (6) Defendants took these actions
against her intentionally because they did not personally like
her, given her previous interactions with the Syracuse Police
Department. (*Id.*)

Plaintiff further alleges that, as a result of this incident,
she suffered various injuries and losses, including (1) a
"tremendous setback in already trying to recover in an [sic]
grave overall manner of my life [and] lifestyle involving
officials internally [and] externally," (2) head and back pain,
and mental suffering, (3) loss of personal property, and, (4)
loss of employment. (*Id.*) As relief, Plaintiff requests an award
of twelve thousand dollars ($12,000) in damages. (*Id.* at ¶ 6.)

Familiarity with the remaining factual allegations supporting
Plaintiff's three claims is assumed in this Decision and Order,
which is intended primarily for review by the parties. (*See
generally* Dkt. No. 1.)

### B. Defendants' Motion
 **\*2** On May 6, 2011, Defendants filed a motion to dismiss.
(Dkt. No. 13, Attach 2.) Generally, in support of their motion,
Defendants assert the following two arguments: (1) because
the Complaint was not served within the time allowed by
Fed.R.Civ.P. 4 or Local Rule 4.1 of the Local Rules of Practice
for this Court, the Court lacks jurisdiction over Defendants in
accordance with Fed.R.Civ.P. 4; and (2) the Complaint fails

to state a claim upon which relief can be granted, because (a) the Complaint fails to identify what constitutional rights Plaintiff is attempting to vindicate, (b) even if the Complaint has sufficiently identified a constitutional violation, the Complaint fails to allege facts plausibly suggesting the personal involvement of the individual Defendants in any such constitutional violation, (c) the City of Syracuse Police Department does not have the legal capacity to be sued, (d) even if Plaintiff's Complaint can be liberally construed as attempting to assert a claim against the City of Syracuse, the Complaint fails to allege facts plausibly suggesting that the individual Defendants' actions the result of a city policy or custom sufficient to confer municipal liability upon the City, (e) the Fifth Amendment does not govern a plaintiff's deprivation-of-property claim against state actors, (f) the Complaint fails to allege facts plausibly suggesting that force was used or that if force was used it was excessive for purposes of a Fourth Amendment claim, and (g) based on Plaintiff's factual allegations, Defendants Liadka and Sands are protected from liability as a matter of law by the doctrine of qualified immunity. (*See generally* Dkt. No. 13, Attach. 2.)

On June 2, 2011, Plaintiff filed a response to Defendants' motion. Generally, Plaintiff's response, which is handwritten and three pages in length, states that she "definitely oppose[s] [Defendants'] request" for the dismissal of her Complaint. (*See generally* Dkt. No. 17.) However, Plaintiff's response does not address the legal arguments asserted by Defendants for the dismissal of Plaintiff's Complaint. (*Compare* Dkt. No. 17 *with* Dkt. No. 13, Attach. 2.) Although Plaintiff's response was submitted two days after the expiration of the responsedeadline, the Court has accepted it, out of an extension of special solicitude to her as a *pro se* civil rights litigant.

In addition, Plaintiff has filed three letters to the Court on the following dates: July 6, 2011, August 22, 2011, and January 13, 2012. (Dkt. No. 18–20.) Generally, these letters contain assertions that Plaintiff believes that the police are treating her, treating her negatively, and responding unsatisfactorily to her telephone calls. (*Id.*) To the extent that these three letters are intended to constitute papers in opposition to Defendants' motion, the Court will not consider them, because (1) they are not responsive to the motion, and/or (2) they were not submitted in a timely manner. Moreover, to the extent that these three letters are intended to constitute a request for relief, the Court will not consider them, because do not state the relief sought, state with particularity the grounds for seeking the order, and attach a memorandum of law and affidavit, as required by Fed.R.Civ.P. 7(b) and Local Rule 7.1 of the Local Rules of Practice for this Court.

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Insufficient Service of Process

**\*3** Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court-on motion or its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

The Local Rules of Practice for this Court shorten the service requirements under Fed.R.Civ.P. 4. Specifically, Local Rule 4.1(b) requires "service of process upon all defendants within sixty (60) days of the filing of the complaint. This expedited service is necessary to ensure adequate time for pretrial discovery and motion practice. In no event shall service of process be completed after the time specified in Fed.R.Civ.P. 4." N.D.N.Y. L.R. 4.1(b).

### B. Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading

contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

**\*4** Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim,

the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id .* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [1]

[1]     It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 [internal quotation marks and

citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an adorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [2] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [3] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28.

[2]    See *Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N . Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

[3]    See *Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

**\*5** Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties),

(3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cnty.,* 12–CV–0336, 2012 WL 1977972, at \*5 (N.D.N.Y. June 1, 2012) (Suddaby, J.). Moreover, "a pro se plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of [her] complaint-to the extent those papers are consistent with the allegations in the complaint." *Planck,* 2012 WL 1977972, at \*5.

### C. Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. See N.D.N.Y. L.R. 7.1(b) (3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini,* 07–CV–0279, 2009 WL 3672105, at \*1, n. 1 (N.D.N.Y.Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este–Green v. Astrue,* 09–CV–0722, 2009 WL 2473509, at \*2 & n. 3 (N.D.N.Y. Aug.7, 2009) (Suddaby, J.) (collecting cases).

### D. Legal Standards Governing Plaintiff's Claims

Because the Court has, in its Decision and Order of March 7, 2011, addressed the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not again recite, in their entirety, those legal standards in this Decision and Order, 9 which is intended primarily for review by the parties. (*See generally* Dkt. No. 5 [Decision and Order].)

### E. Legal Standards Governing Defendants' Defenses

#### 1. Defense of Lack of Separate Identity

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dept.,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002). "Pursuant to Fed.R.Civ.P. 17, New York governs the capacity of

2012 WL 4052286

a police department to sue or be sued. In New York, police departments like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the town." *Loria v. Irondequoit* 775 F.Supp. 599, 606 (W.D.N.Y.1990). While a municipality can sue or be sued, the police department, which does not exist separate from that municipality, can not. *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

### 2. Defense of Limited Municipal Liability

**\*6** It is well established that "[a] municipality may not be held liable in a Section 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior.*" [4] "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy ." [5] "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to ... prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." [6]

[4]   *Powell v. Bucci,* 04–CV–1192, 2005 WL 3244193, at *5 (N.D.N.Y. Nov.30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior."* ).

[5]   *Powell,* 2005 WL 3244193, at *5; *Monell,* 436 U.S. at 690–691 ("[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista,* 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (S.D.N.Y.2003) ("In order to establish the liability of [municipal] defendants in an action under §

1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

[6]   *Batista,* 702 F.2d at 397, *accord, Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995), *McKeon v. Daley,* 101 F.Supp.2d 79, 92 (N.D.N.Y.2000) (Hurd, J.), *Merriman v. Town of Colonie, NY,* 934 F.Supp. 501, 508 (N.D.N.Y.1996) (Homer, M.J.); *Douglas v. Cnty. of Tompkins,* 90–CV–0841, 1995 WL 105993, at *12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. Cnty. of Albany,* 594 F.Supp. 1147, 1156 (N.D.N.Y.1984) (Miner, J.).

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy officially endorsed by the municipality ...; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question ...; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials ...; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees...." [7] With regard to the second element (causation), a plaintiff must show "a direct causal link" or "an affirmative link" between the municipal policy or custom and the alleged constitutional deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation). [8]

[7]   *Dorsett–Felicelli, Inc.,* 371 F.Supp.2d 183, 194 (N.D.N.Y.2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord, Dunbar v. Cnty. of Saratoga,* 358 F.Supp.2d 115, 133–134 (N.D.N.Y.2005) (Munson, J.); *see also Clayton v. City of Kingston,* 44 F.Supp.2d 177, 183 (N.D.N.Y.1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

[8]   *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional

deprivation."); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell'* s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Monell,* 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983. Since this case unquestionably involves official policy as the moving force of the constitutional violation [at issue] ... we must reverse the judgment below."); *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that ... an official policy or custom [was] the cause of the deprivation of constitutional rights.... [T]he plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights.") [internal quotation marks and citation omitted]; *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City."); *Powell,* 2005 WL 3244193, at *5 ("Ultimately, the plaintiff must demonstrate a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.") [internal quotation marks and citation omitted].

### 3. Defense of Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d

Cir.2004) [citations omitted], *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

**\*7** *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) [citations omitted], *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). [9] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007) [citations omitted]. [10] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). [11] As the Supreme Court has explained,

[9]   *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

[10]   *See also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)

("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") [citation omitted]; *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

11    *See also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341. [12]

12    *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

## III. ANALYSIS

### A. Whether Plaintiff's Complaint Should Be Dismissed for Failure to Serve Process in Timely Manner

After carefully considering the matter, the Court must answer this question in the negative. By Defendants' own calculations, Plaintiff's Complaint was served on April 18, 2011–a mere 42 days after the Court granted Plaintiff's motion to proceed *in forma pauperis,* approved the filing of her

Complaint, and directed the Clerk of the Court to issue summonses and forward them with the Complaint to the United States Marshal's Service, for service on Defendants. (Dkt. No. 5 [Decision and Order filed March 7, 2011].) Indeed, Defendants acknowledge that Plaintiff completed the Civil Summonses and USM285 form, and returned them to the Clerk's Office (so that the Clerk's Office could forward them to the U.S. Marshal's Service for service of Plaintiff's Complaint) less than eight days after receiving them from the Clerk's Office. (Dkt. No. 13, Attach. 1, at ¶¶ 6–7; Dkt. No. 13, Attach. 2, at 9 [attaching page "8" of Defs.' Memo. of Law]; *see also* Dkt. Nos. 6, 8.) After that point in time, service was largely if not entirely outside of Plaintiff's control.

Under the circumstances, the Court finds that good cause exists to extend the deadline for service by 42 days. The Court notes that a contrary conclusion (e.g., a conclusion that Plaintiff had to serve her Complaint by December 13, 2010 pursuant to Local Rule 4.1, or even February 11, 2011 pursuant to Fed.R.Civ.P. 4) would render meaningless the Court's directive to the Clerk of the Court, on March 5, 2011, to take sufficient action to enable the United States Marshal's Service to effect service for Plaintiff.

### B. Whether Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

### 1. Whether Plaintiff's Complaint Should Be Dismissed for Failing to Sufficiently Identify What Constitutional Rights She Is Attempting to Vindicate

**\*8**    After carefully considering the matter, the Court must answer this question also in the negative. In construing the pleadings of a *pro se* civil rights litigant in this Circuit, a district court's imagination should be limited only by the plaintiff's factual allegations, not by the legal claims set out in his or her pleadings. *See Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005) ("We leave it for the district court to determine what other claims, if any, Phillips has raised. In so doing, the court's imagination should be limited only by Phillips' factual allegations, not by the legal claims set out in his pleadings.").

Here, based on Plaintiff's (albeit scant and confused) factual allegations, the Court can imagine that she is attempting to assert the following three claims: (1) a claim of an unreasonable search under the Fourth Amendment; (2) a claim of an unlawful seizure of, and failure to return, her personal property under the Fourth, Fifth and/or Fourteenth

Amendments; and (3) a claim of excessive force under the Fourth Amendment.

### 2. Whether Plaintiff's Claims Against the Individual Defendants Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Their Personal Involvement in the Constitutional Violations Alleged

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 13 [attaching page "12" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. *See, supra,* Part III.C. of this Decision and Order. [13] Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, even when construed with the utmost of special liberality, the Complaint does not identify the precise location of the incident, which officers were responsible for violating her rights, how she suffered the head injury she alleges, what property was taken from her, and how Defendants frustrated her efforts to recover that property. *See Vogeler v. Colbath,* 04–CV–6071, 2005 U.S. Dist. LEXIS 44658, at *29, 2005 WL 2482549 (S.D.N.Y. Oct. 6, 2005) ("Plaintiffs must also allege ... the personal involvement of the Defendant in the actions underlying their claim."). [14]

[13]   Under the circumstances, the Court finds that Plaintiff had sufficient notice of the consequences of failing to respond to the arguments asserted in Defendants' motion. For example, on October 14, 2010, Plaintiff was given a courtesy copy of the District's *Pro Se* Handbook and a courtesy copy of the Local Rules of Practice for the Northern District of New York. (Dkt. No. 4.) In addition, on May 6, 2011, Defendants advised Plaintiff of her need to respond to their arguments. (Dkt. No. 15.) Also, Plaintiff had extensive experience as a *pro se* civil rights litigant in this District, before responding to the motion in question. *See, infra,* Part III.D. of this Decision and Order.

[14]   Indeed, the Court notes that one of the officers that Plaintiff lists in her Complaint has not been

identified. In a prior decision by the Court, Plaintiff was ordered to take reasonable steps to ascertain the identity of the unnamed officer, immediately notify the Court, amend her complaint to include the identity of the third Defendant, and also to have that officer served. (Dkt. No. 5, at 14.) Because Plaintiff has not done so, her alleged physical injuries remain attributable to an unidentified person.

For all of these alternative reasons, Plaintiff's claims against the individual Defendants are dismissed.

### 3. Whether the Syracuse Police Department Should Be Dismissed as a Defendant

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach 2, at 13.) The Court would add only the following three brief points.

**\*9** First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, "as Plaintiff has been told several times, under New York State law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued." *Jenkins v. Onondaga Cnty. Sheriff's Dep't,* 12–CV–0855, Report–Recommendation, at 5 (N.D.N.Y. filed June 28, 2012) (Baxter, J.) (citing *Hayes v. Cnty. of Sullivan,* 07–CV–0667, 2012 WL 1129373, at *24 [S.D.N.Y. March 30, 2012]). Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant in this case. The real party in interest is the City of Syracuse itself.

For all of these alternative reasons, the Syracuse Police Department dismissed as a Defendant.

### 4. Whether, Even if the City of Syracuse Were Substituted for the Police Department, Plaintiff's Claims Against the City Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Municipal Liability

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 14–15 [attaching pages "13" and "14" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a widespread policy or custom promulgated by the municipal policy maker necessary to hold the City liable for her injuries. As indicated above in Part II.E.2. of this Decision and Order, Plaintiff must allege facts plausibly suggesting that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 639 (N.D.N.Y.1997) (Scullin, J.) (citing, *inter alia, Monell v. Dept. of Soc. Servs. of City of New York,* 436 U.S. 658, 689 [1978] ). However, Plaintiff has not alleged *any* official policy or custom adopted by the City of Syracuse or its Police Department,[15] let alone one responsible for the alleged injuries she received. Because *Monell* prohibits the finding of liability against a City when there is no causal connection between a municipal policy and a resulting injury, Syracuse City Police Department cannot be responsible for Plaintiff's alleged injuries. *Monell,* 436 U.S. at 692. As a result, the City of Syracuse cannot be maintained as a Defendant in this action, and Plaintiff's Section 1983 claims against it are dismissed.

[15]   In addition to not alleging facts plausibly suggesting the existence of a department-wide policy or custom, Plaintiff has not alleged facts plausibly suggesting that Officers Liadka, Sands, and the unnamed officer created or promulgated that policy, or even that they were final policymakers. "A municipal official that exercises discretion, whether it be in a constitutional or unconstitutional manner, in an area of which that official is not the final policymaker, cannot, by itself, establish municipal liability." *Clayton v. City of Kingston,* 44 F.Supp.2d 177, 184 (N.D.N.Y.1999) (McAvoy, C.J.).

**\*10** For all of these reasons, Plaintiff's claims against the City of Syracuse Police Department and/or the City of Syracuse are dismissed on this alternative ground.

### 5. Whether, in the Alternative, Plaintiff's Deprivation–of–Property Claim Should Be Dismissed to the Extent It Is Grounded on the Fifth Amendment

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 16–17 [attaching pages "15" and "16" of Defs.' Memo. of Law].) The Court would add only the following four brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, a takings claim is not ripe where a state remedy is potentially available. *Vandor Inc. v. Militello,* 301 F.3d 37, 39 (2d. Cir.2002). As the Supreme Court has explained,

> An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Police are not required to provide the owner with notice for state-law remedies, which are "established by published, generally available state statutes and case law." *City of W. Covina v. Perkins,* 525 U.S. 234, 240–241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999). "Once the property owner is informed that his property has been seized,

he can turn to these public sources to learn about the remedial procedures that are available to him. The City need not take other steps to inform him of his options." *City of W. Covina, 525 U.S. at 241.* Here, Plaintiff has not alleged facts plausibly suggesting that she attempted to recover her property in the proper manner (or even what property was taken). Fourth, and finally, Plaintiff does not allege facts suggesting that her property was taken for public use in an unconstitutional manner that would require her to be paid just compensation. Instead, Plaintiff alleges that, after she attempted to escape from their investigation and was restrained by officers, she was searched and had property taken from her.

For all of these alternative reasons, Plaintiff's deprivation-of-property claim is dismissed to the extent that it is grounded on the Fifth Amendment.

**6. Whether, in the Alternative, Plaintiff's Excessive Force Claim Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Either that Force Was Used or that Any Such Force Was Excessive**

**\*11** After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 17–18 [attaching pages "16" and "17" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as stated in the Court's Decision and Order of March 7, 2011, in evaluating a Fourth Amendment excessive-force claim, "courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." (Dkt. No. 5, at 13.) [16] Here, Plaintiff alleges the following facts, which could be construed as plausibly suggesting that, at the time the incident occurred, she had given Defendants probable cause to use the force at issue against her: (1) Defendants were dispatched to that location regarding a problem; (2) Defendants specifically chose to question Plaintiff about the incident; (3) Plaintiff was attempting to get away from Defendant when they were attempting to question her; (4) she acted in such a way as to cause Defendants to become "worked up"; (5) it became

necessary for a third unnamed officer to step in and assist Defendants Sands and Liadka in controlling Plaintiff. (Dkt. No. 1, at ¶ 4 & Attachment.) Simply stated, it is plausible, based on Plaintiff's factual allegations, that the amount of force used by the officers to pull her hands behind her back and detain her was necessary to keep her from getting away and "going about [her] business." (*Id.* at ¶ 4.) It is important to note that Plaintiff does not allege facts plausibly suggesting any physical injury other than vague "head & back pains." (*Id.* at ¶ 5.) [17]

[16]     More specifically, the standard governing constitutional excessive-force claims against government officials in "the course of making an arrest, investigatory stop, or other seizure" of a person is the Fourth Amendment's objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 388, 391, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Pursuant to this standard, three elements must be objectively examined to determine whether excessive force was used for Fourth Amendment violations: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; and (3) the extent of the injury inflicted." *Graham,* 490 U.S. at 390, 397. It is essential to look at surrounding circumstances in each case, and analyze "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The "extent of intrusion on the suspect's rights" must be balanced against the "importance of governmental interests." *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

[17]     More specifically, Plaintiff's Complaint does not allege facts plausibly suggesting that her injuries were significant, how long the pain lasted, or that medical treatment was necessary (or even sought) following the incident. *See Smith v. City of New York,* 04–CV–3286, 2010 U.S. Dist. LEXIS 88774, at \*27, 2010 WL 3397683 (S.D.N.Y. Aug. 27, 2010) ("Courts in this Circuit have consistently held that an injury is de minimis when it is temporary and/or minor in severity.") (collecting cases).

For all of these reasons, Plaintiff's excessive force claim is dismissed on this alternative ground.

**7. Whether, in the Alternative, Plaintiff's Claims Against the Individual Defendants Should Be Dismissed Because, Based on the Factual Allegations of the Complaint, Defendants Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 19–20 [attaching pages "18" and "19" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would the reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as indicated above in Part I.E.3. of this Decision and Order, "[u]nder federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir.2007) (internal quotations and other citations omitted). Here, based on Plaintiff's own factual allegations, it is plausible that police officers of reasonable competence could disagree as to whether Defendants' actions were unlawful (e.g., given their need to question her, and her attempt to flee the scene).

**\*12** For all of these reasons, Plaintiff's claims against the individual Defendants are dismissed on this alternative ground.

**C. Whether the Court Should Give Plaintiff an Opportunity to File an Amended Complaint Before Dismissing This Action**

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that

granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted), *accord, Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103; *Brown,* 1997 WL 599355, at \*1. As explained above in Part II.B. of this Decision and Order, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12; rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.

Here, the Court has some difficulty finding that the referenced defect in Plaintiff's Complaint is merely formal. Nor is the Court confident that granting Plaintiff an opportunity to amend her Complaint will be productive. The Court notes that the errors made by Plaintiff in this action were previously made by her, and not corrected, on many occasions. Plaintiff has been ordered numerous times to file amended complaints at risk of dismissal of her case. [18] Of the seven times an amended complaint was required, Plaintiff submitted an amended complaint only three times. [19] Two of these were one page documents which did not state a claim upon which relief could be granted and were rejected by the Court, and the other did not correct the deficiencies of the original complaint. [20] Plaintiff did not comply with the Court's order

to amend her complaint at all on four occasions.[21] In one case, Plaintiff was given an additional thirty day period to file her amended complaint after she failed to do so within the first 30 day period granted to her. *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006). Similarly, in a separate case, Plaintiff did not follow up on her original claim because she failed to appear for three hearings the Court rescheduled despite warnings of her need to comply with the Court Orders. *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005). All seven of these cases resulted in dismissal, most for failure to prosecute, failure to comply with Court Orders, or failure to state a claim. Five of Plaintiff's cases were not given leave to amend because granting such leniency would have been futile.[22]

18    *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012).

19    *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007).

20    *Id.*

21    *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012)

22    *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. Sheriff's*

*Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. USA,* 09–CV0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011).

**\*13** However, the Court is mindful of the special solicitude that should be afforded to *pro se* civil rights litigants. For these reasons, before the Court dismisses Plaintiff's action, the Court will afford her an opportunity to file an Amended Complaint correcting the above-described pleading defects within thirty (30) days from the date of the filing of this Decision and Order.

If Plaintiff submits an Amended Complaint, she is encouraged to describe the acts of misconduct alleged therein and identify each individual who participated in the misconduct. Moreover, Plaintiff is advised that her Amended Complaint must be a complete pleading that will replace and supersede her original Complaint in its entirety. Finally, Plaintiff is cautioned that, if she fails to file, in a timely fashion, an Amended Complaint that successfully states a claim upon which relief can be granted, her action will be dismissed with prejudice without further Order of the Court.

### D. Whether This Case Should Be Forwarded to the Chief Judge with a Recommendation that an Anti–Filing Injunction Order Be Issued Against Plaintiff

A review of Plaintiff's litigation history on Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that, before filing the current action on October 13, 2010, she filed thirteen *pro se* civil actions in this District alone-twelve of which have been dismissed and the thirteen of which is being considered for dismissal.[23] A review of Plaintiff's litigation history has caused the undersigned to believe that (1) Plaintiff lacks a good-faith expectation in prevailing in her lawsuits, (2) she is vexatious and indeed incorrigible when proceeding pro se, (3) she has caused needless expense to other parties and placed an unnecessary burden on the Court and its personnel, and (4) no lesser sanctions (e.g., such as dismissal or chastisement) would be adequate to protect the Court and other parties.

23    *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. City*

*of Syracuse,* 06–CV–1005 (N.D.N.Y. filed Aug. 21, 2006); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. City of Syracuse,* 07–CV–0930 (N.D.N.Y. filed Sept. 7, 2007); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. USA,* 09–CV–0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

For example, eight of Plaintiff's actions have resulted in a dismissal for failure to state a claim or frivolousness, another has resulted in the pending recommendation of a dismissal on that ground, three others have resulted in a dismissal for lack of subject-matter jurisdiction, and another has resulted in a dismissal for failure to prosecute. [24]

[24]    *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457, Decision and Order (N.D.N.Y. filed Apr. 25, 2006) (Scullin, J.); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059, Decision and Order (N.D.N.Y. filed March 29, 2007) (Hurd, J.); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060, Memorandum–Decision and Order (N.D.N.Y. filed April 14, 2006) (Scullin, J.); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. City of Syracuse,* 06–CV–1005, Order (N.D.N.Y. filed Oct. 5, 2006) (Mordue, C.J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Decision and Order, (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167, Decision and Order (N.D.N.Y. filed Oct. 12, 2006) (Mordue, C.J.); *Jenkins v. City of Syracuse,* 07–CV–0930, Decision and Order (N.D.N.Y. filed Oct. 7, 2007) (Mordue, C.J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Murphy,* 08–CV–0921, Order (N.D.N.Y. filed Oct. 14, 2008) (McCurn, J.); *Jenkins v. USA,* 09–CV–0603, Decision and Order (N.D.N.Y. filed May 28, 2009) (McAvoy, J.); *Jenkins v. Rice,* 11–CV–1037, Decision and Order (N.D.N.Y. filed Oct. 11, 2011) (Kahn, J.); *Jenkins*

*v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation (N.D.N.Y filed June 28, 2012) (Baxter, M.J.).

Moreover, Plaintiff has sued the Onondaga County Sheriff's Department four times. [25] As a result, she has been repeatedly instructed on the legal standard for suing a municipality. For example, on October 6, 2006, she was specifically informed of the need to establish a custom or policy which is the moving force behind a resulting injury. *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 06–CV–1092, Decision and Order, at 4 (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.). However, despite receiving that specific information, she has *repeatedly* continued to file improper claims against the Onondaga County Sheriff's Department. [26]

[25]    *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

[26]    *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 3 (N.D.N.Y. filed Oct. 2, 2007) (Hurd, J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 2 (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV0855, Decision and Order, at 4–5 (N.D.N.Y filed May 24, 2012) (Baxter, M.J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation, at 5–6 (N.D.N.Y filed June 28, 2012) (Baxter, M.J.); *see also, supra,* Part III.B.4. of this Decision and Order.

Finally, Plaintiff has repeatedly had to be ordered to comply with the Local Rules, and reminded that all factual allegations should be contained in the complaint itself, that paragraphs ought to be numbered, and that the individuals she alleges violated her rights must be identified. *See, e.g., Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Order (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.).

**\*14** Under such circumstances, a federal district court may impose reasonable filing restrictions on a *pro se* litigant in that particular court, pursuant to 28 U.S.C. § 1651(a) and its inherent authority to control and manage its own docket

so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ( "[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08–CV–0330, 2008 WL 1767067, at * 1 (N.D.N.Y. Apr.16, 2008) (McCurn, J.).

For all of these reasons, this case is forwarded to Chief United States District Judge Gary L. Sharpe with a recommendation that an Anti–Filing Injunction Order be issued against Plaintiff.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is ***GRANTED* in part** and ***DENIED* in part;** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is conditionally ***DISMISSED;*** and it is further

**ORDERED** that Plaintiff is permitted to file an Amended Complaint within **THIRTY (30) DAYS** of the filing date of this Order; and it is further

**ORDERED** that, *if Plaintiff fails to timely file an Amended Complaint, the Clerk shall enter judgment dismissing this action without further Order of this Court;* and it is further

**ORDERED** that, upon filing of the Amended Complaint, this file in this matter be returned to the Court for further review; and it is further

**ORDERED** that the Clerk of the Court is directed to forward this case to Chief United States District Judge Gary L. Sharpe with the recommendation of the undersigned that an AntiFiling Injunction Order be issued against Plaintiff.

*The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a) (3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4052286

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 2868231
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Quentin LA GRANDE, Plaintiff,

v.

TOWN OF BETHLEHEM POLICE
DEPARTMENT, et al., Defendants.

No. 1:08–CV–0738 (LEK/DRH).
|
Sept. 1, 2009.

**Attorneys and Law Firms**

Quentin La Grande, Albany, NY, pro se.

Nannette R. Kelleher, Bailey, Kelleher Law Firm, Albany, NY, for Defendants.


***DECISION AND ORDER***

LAWRENCE E. KAHN, District Judge.

**\*1** Plaintiff *pro se* Quentin La Grande ("Plaintiff" or "La Grande") commenced the instant action against Defendants Robert Helligrass [1], Stephen Kraz [2] and the Town of Bethlehem Police Department (collectively, "Defendants") pursuant to 42 U.S.C. § 1983. Complaint (Dkt. No. 1). Presently before this Court is Defendants' Motion to dismiss (Dkt. No. 13) and Plaintiff's Motion for summary judgment (Dkt. No. 12). For the following reasons, Defendants' Motion to dismiss is granted and Plaintiff's Motion for summary judgment is denied.

[1]    Incorrectly named in the Complaint as "R.J. Helliergrass." *See generally* Complaint (Dkt. No. 1).

[2]    Incorrectly named in the Complaint as "William Craz." *See generally* Complaint.

**I. BACKGROUND**

According to Plaintiff, "[o]n April 1, 2008 I was threaten by Patrol Officer William Craz. Patrol Officer called me a 'Nigger,' and also threaten to cause bodily harm to me. On April 2, 2008 I met with Seargent R.J. Helliergrass and was

interogated, and racial harrassed. On or about April 5, 10, 15, May 6, 8, 10, 15, and June 6, 2008, I have been followed by the Bethlehem Police Department." Compl. at 2. Plaintiff's jurisdictional statement asserts that the Complaint is being brought pursuant to 42 U.S.C. § 1983. *Id.* at 1.

In lieu of filing an answer, on March 11, 2009, Defendants filed the Motion to dismiss presently before the Court. Mot. to Dismiss (Dkt. No. 13). Plaintiff also filed a Motion for summary judgment on February 24, 2009, which is now before the Court. Mot. for Sum. Judg. (Dkt. No. 12).


**II. DISCUSSION**

**A. Defendants' Motion to Dismiss**

**a. Standard of Review**

In order to withstand a motion to dismiss, "a [pleading] must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A party must plead with such factual detail so as to sufficiently " 'nudge [ ][its] claims ... across the line from conceivable to plausible.' " *Iqbal,* 129 S.Ct. at 1950–51 (quoting *Twombly,* 550 U.S. at 570). While stating a claim does not require the recitation of detailed factual allegations, it does, however, require facts sufficient to state a claim to relief that is *prima facie* plausible. *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 555). The Court must accept the allegations in the well-pleaded complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and draw all inferences in favor of the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1973); *Global Network Comm'ns, Inc. v. City of New York,* 458 F.3d 150, 154 (2d Cir.2006); *King v. Am. Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002).

In assessing the legal sufficiency of the Complaint, the Court is mindful that La Grande is a *pro se* litigant and his submissions are subject to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The Court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999); *see Hemphill v. New York,* 380 F.3d

680, 687 (2d Cir.2004) (" "It is well-established that 'when a plaintiff proceeds *pro se* the court is obligated to construe his pleadings liberally, particularly when they allege civil rights violations' ") (quoting *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004)). However, a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983).

**b. Analysis**

**\*2** Defendants move to dismiss Plaintiff's Complaint in its entirety pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure. [3] Mot. to Dismiss (Dkt. No. 13) at 1. Defendants specifically argue that all causes of action against the Town of Bethlehem Police Department must be dismissed as it is not a legal entity subject to suit under 42 U.S.C. § 1983 and further that Plaintiff's entire Complaint should be dismissed for failing to state a cause of action. *Id.* at 4.

[3]     Defendants argue, alternatively, that Plaintiff's Complaint should be dismissed pursuant to 28 U.S.C. § 1915(e) and for failing to adhere to Rule 8(a) of the Federal Rules of Civil Procedure. The Court need not address these arguments as it is dismissing Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

**i. Town of Bethlehem Police Department**

The Town of Bethlehem moves to dismiss Plaintiff's Complaint on the ground that it is not susceptible to suit under 42 U.S.C. § 1983. While a municipality may be susceptible to suit under 42 U.S.C. § 1983, a municipal police department is not. *See Walker v. Waterbury Police Dep't.,* 08–cv–959 (JG)(AKT), 2009 U.S. Dist. LEXIS 7933, at \*5, 2009 WL 261527 (E.D.N.Y. Feb. 4, 2009). "Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Id.* (citing *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002)). Accordingly, claims asserted under 42 U.S.C. § 1983 will be dismissed against a municipality's police department. *See Walker,* 2009 U.S. Dist. LEXIS 7933, at \*5, 2009 WL 261527 (internal citation omitted); *see also Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

Here, Plaintiff has sued the Town of Bethlehem Police Department along with two individual officers of the

department. *See generally* Compl. Plaintiff's Complaint asserts that it is brought pursuant to 42 U.S.C. § 1983 and does not provide any other basis for the claims. *Id.* at 1. Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, Plaintiff's Complaint is dismissed as against the Town of Bethlehem Police Department.

Even assuming *arguendo* that Plaintiff's claims against the Town of Bethlehem Police Department can be construed as a claim against the Town of Bethlehem, Plaintiff's Complaint would still be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

In order to state a cause of action for municipal liability under 42 U.S.C. § 1983, "a plaintiff must allege that the municipality has adopted a custom or policy which is the moving force behind the [alleged constitutional violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 649 (N.D.N.Y.1997). A municipality cannot be held liable on the basis of *respondeat superior* and "a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Campanaro v. City of Rome,* 999 F.Supp. 277, 281 (N.D.N.Y.1998); *see also Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993).

Plaintiff's Complaint is devoid of any allegations that the Town of Bethlehem had a policy or custom of violating constitutional rights, nor does plaintiff allege or even allude that the Town was deliberately indifferent to his constitutional rights. The complete failure to plead such warrants dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as the Complaint fails to state a cause of action for which relief can be granted under 42 U.S.C. § 1983. *See Campanaro,* 999 F.Supp. at 281; *Dwares,* 985 F.2d at 100.

**ii. Defendants Kraz and Helligrass**

**\*3** La Grande's Complaint alleges that between April and June 2008, he was "racially harassed," "threatened" and "interrogated" by Defendants Kraz and Helligrass, two officers of the Bethlehem Police Department. Compl. at 2. Specifically, La Grande alleges that on multiple occasions the officers addressed him with a racial epithet and followed him through town. *Id.* It is well settled in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Murray v. Pataki,* No. 9:03–cv–1263, 2007 U.S. Dist. LEXIS 26959, at \*22, 2007 WL 956941 (N.D.N.Y. Mar. 29, 2007) (Kahn, J.) (quoting *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003)) (collecting cases).

La Grande v. Town Of Bethlehem Police Dept., Not Reported in F.Supp.2d (2009)

2009 WL 2868231

"[V]erbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Murray,* 2007 U.S. Dist. LEXIS, at \* 22 (quoting *Moncrieffe v. Witbeck,* 2000 U.S. Dist. LEXIS, at \*3, 2000 WL 949457 (N.D.N.Y. June 29, 2000)); *see also Zeno v. Cropper,* 650 F.Supp. 138, 141 (S.D.N.Y.1986) ("vile and abusive language ... no matter how abhorrent or reprehensible cannot form the basis for a § 1983 claim) (internal citation and quotation omitted). Further, "threats do not amount to violations of constitutional rights." *Murray,* 2007 U.S. Dist. LEXIS, at \*23 (quoting *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995)).

In this case, Plaintiff's claim for verbal harassment in the form of racial slurs and threats is not actionable under § 1983 and, therefore, fails to state a claim entitled to relief. Compl. at 2.

### B. Plaintiff's Motion for Summary Judgment

Even assuming *arguendo* that this Court did not grant Defendants' Motion to dismiss, Plaintiff's Motion for summary judgment would still be denied. Under the Local Rules, *"all* motions ... require a memorandum of law, supporting affidavit, and proof of service on all the parties." N.D.N.Y. L.R. 7.1(a) (emphasis added). "All memoranda of law shall contain a table of contents and, wherever possible, parallel citations." *Id.* at 7 .1(a)(1). Further "[a]ny motion for summary judgment shall contain a Statement of Material Facts ... *Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." Id.* at 7 .1(a)(3) (emphasis in original).

Here, not only did the Plaintiff fail to submit a memoranda of law in support of his Motion for summary judgment and an affidavit but he also failed to submit a Statement of Material Facts. In fact, in his Motion for summary judgment filed on February 24, 2009, Plaintiff explicitly stated, "I will provide this Court with a 'Law Memorandum' in support of my motion; such will contain applicable law, and case law. I will submit this to the Court on or before March 6, 2009." Mot. for Sum. Judg. at 1. To date, this Court has never received said memorandum of law. While this Court recognizes Plaintiff's *pro se* status, he has failed to comply with *all* of the Local Rules. *See Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983) (a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law"). Accordingly, Plaintiff's Motion for summary judgment

is denied for failing to comply with the relevant rules of procedure. *See, e.g.,* N.D.N.Y. L.R. 7.1(a), 7.1(a)(3).

### C. Amended Complaint

**\*4** Plaintiff also moves to amend his Complaint. Response (Dkt. No. 27). While *pro se* litigants are generally afforded wide latitude and an opportunity to amend, a District Court need not permit an amendment to a Complaint where it would be futile. *See Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (holding that although leave to amend should be freely given where justice so requires, a district court need not grant leave if amendment would be futile); *Acito v. Imcera Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995).

Here, Plaintiff's Complaint does not state any viable causes of action under 42 U.S.C. § 1983. Further, Plaintiffs Complaint does not state which, if any, of his constitutional rights were violated by Defendants nor does it plead any facts to establish municipal liability. Plaintiff's Complaint also does not plead any facts supporting his allegations that he was "racially harassed," "threatened" or "interrogated." Since, as the Court discussed above, none of the complained of actions provides the basis for a cognizable cause of action, leave to cure these defects would be futile. These deficiencies may have been excusable, albeit not cureable, had this Court not previously informed Plaintiff of the requirements for pleading a cause of action under 42 U.S.C. § 1983 against a municipality. *See La Grande v. Albany Police Dep't,* 1:07–CV–757 (Dkt. No. 4). [4] Given that leave to amend would be futile, this Court denies Plaintiff's request.

[4]     Notably, Plaintiff has also filed numerous Complaints in the Northern District, many of which include assertions of civil rights violations and racial discrimination or harassment, wherein Plaintiff has been granted leave to amend his complaints. Plaintiff has filed eleven suits in the Northern District since 2000, including the instant matter. In fact, on May 12, 2008, Chief United States District Judge Norman A. Mordue entered an order enjoining Plaintiff from filing any further actions or pleadings in this district without the prior permission of the Chief Judge. Dkt. No. 6. This Order was entered based on a record of vexatious and frivolous pleadings previously filed by La Grande.

2009 WL 2868231

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that Defendants' Motion to dismiss (Dkt. No. 13) is **GRANTED in its entirety;** and it is further

**ORDERED,** that Plaintiff's request to amend his Complaint (Dkt. No. 27) is **DENIED;** and it is further

**ORDERED,** that Plaintiff's Motion for summary judgment (Dkt. No. 12) is **DENIED in its entirety;** and it is further

**ORDERED,** that the Clerk serve a copy of this Decision and Order on all parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2868231

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 7543607

2023 WL 7543607
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ronald HESTER, Plaintiff,
v.
CITY OF ONEIDA et al., Defendants.

6:23-cv-01171-AMN-TWD
|
Signed November 14, 2023

**Attorneys and Law Firms**

RONALD HESTER, Plaintiff, pro se, 2723 Emerson Lane, Kissimmee, FL 34743.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**I. INTRODUCTION**

 **\*1** The Clerk has sent the Court a civil rights complaint filed by Ronald Hester ("Plaintiff") for initial review pursuant to 28 U.S.C. § 1915. (Dkt. No. 1.) Plaintiff also filed a motion to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.)

**II. IFP APPLICATION**

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP. (Dkt. No. 2.) After reviewing Plaintiff's application, this Court finds he is financially eligible for IFP status. Therefore, Plaintiff's IFP application is granted.

**III. STANDARD OF REVIEW**

Section 1915 "provide[s] an efficient means by which a court can screen and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The Court shall dismiss a complaint in a civil action if the Court determines it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989),

abrogated on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a) (2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

 **\*2** Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

**IV. BACKGROUND**

**A. The Arrest, Search, and Questioning of Plaintiff**

On the morning of January 5, 2023, Det. Salle [1] of the Rome Police Department was conducting surveillance in the "500 block" of North Madison Street in Oneida County in relation to a recent "shots fired" investigation. (Dkt. No. 1 at 5; Dkt. No. 1-1 at 2.) During the surveillance of the residence located at 506 North Madison Street, Det. Salle observed two black males and one white female exit the residence and enter a red Honda sedan. (Dkt. No. 1 at 5; Dkt. No. 1-1 at 2.) Det. Salle contacted other members of the Rome Police Department and relayed that the sedan had an expired Florida registration; the owner of the sedan, Plaintiff, had a suspended New York Driver's License; and Jessica Reed was driving the vehicle. (Dkt. No. 1 at 5.) Officers Page and Zonnevylle conducted a traffic stop of the sedan due to its expired registration in the "400 block" of North George Street. *Id.* Ms. Reed told the officers she had a suspended license. *Id.* at 5, 7. The officers took Ms. Reed into custody and placed her in the back of the patrol vehicle. *Id.* at 7.

[1]    Although Det. Salle's last name is spelled "Salley" in the caption of the complaint, the Court uses the spelling provided in the attached state court opinion. (Dkt. No. 1-1 at 1-13.) The Clerk is directed to correct the spelling to Salle on the docket.

Per his bodycam footage, Officer Page spoke with the two black males who were still in the vehicle. *Id.* Plaintiff was sitting in the front passenger seat and identified himself to Officer Page. *Id.* Upon being told the vehicle was being towed, Plaintiff and the other man exited the vehicle. *Id.* Because they were not detained, they left the scene shortly after exiting the vehicle. *Id.*

According to Officer Page, he began an inventory search of the vehicle pursuant to Rome Police Department policy prior to the arrival of the tow truck. *Id.* However, Officer Page "did not complete the inventory record of the entire contents of the vehicle." (Dkt. No. 1 at 7; Dkt. No. 1-1 at 3.) As Officer Page "searched for 'something big,' " he came across a handgun in the spare tire compartment of the vehicle. (Dkt. No. 1-1 at 3.) Per his bodycam footage, Officer Page told Officer Zonnevylle he ceased the inventory search upon finding the gun. *Id.* Officer Zonnevylle later testified he completed the inventory search of the vehicle the next day. *Id.*

After securing the gun, the police located Plaintiff and took him into custody. *Id.* at 4. While at the Rome Police Station, Det. Salle read Plaintiff his *Miranda* warnings. *Id.* Plaintiff

stated he understood his rights and agreed to speak with the detective. *Id.*

Det. Salle interviewed Plaintiff twice. *Id.* At the first interview, Plaintiff denied any knowledge of the recovered gun. *Id.* Plaintiff then underwent a visual body cavity search. *Id.*

Plaintiff was directed to remove his clothes and then squat and cough in the presence of Officer White. *Id.* Officer White observed a "foreign object" under Plaintiff's scrotum and directed him to remove the item and place it on the floor. *Id.* The item was suspected to be cocaine. *Id.*

**\*3**  Det. Salle later testified the search was conducted "based solely on [Plaintiff's] history for a drug offense and no other reason." *Id.* On the police department's "Unclothed Search Form," Det. Salle indicated "the sole reason the unclothed search was performed was based upon the fact that [Plaintiff's] criminal history showed him having an undated 'CSCS 3[rd]' offense." *Id.*

After the visual body cavity search, Det. Salle interviewed Plaintiff again and Plaintiff discussed the recovered gun. *Id.*

**B. Suppression of Certain Evidence**

Plaintiff was indicted for Criminal Possession of a Controlled Substance in the Third Degree; Criminal Possession of a Weapon in the Second Degree; and Criminal Possession of a Firearm. *Id.* at 1. Plaintiff moved to suppress certain oral statements he made to law enforcement personnel "involuntarily" and certain evidence that was allegedly seized in violation of his constitutional rights. *Id.*

Hon. Robert L. Bauer of Oneida County Court found the inventory search of Plaintiff's car was not legal as it was equivalent to an "impermissible 'general rummaging' to discover incriminating evidence" and accordingly suppressed the recovered gun from evidence. *Id.* at 9 (citation omitted).

Judge Bauer further found previous drug offenses from nine years ago, standing alone "with no further 'specific, articulable, factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity' [were] not enough to justify the distinctly elevated level of intrusion' " of the visual body cavity search and accordingly suppressed the cocaine recovered from Plaintiff's person. *Id.* at 10 (citation omitted).

Additionally, Judge Bauer found the statements Plaintiff made to the officers at the scene prior to his arrest were voluntarily made, were not subject to *Miranda*, were not in violation of Plaintiff's constitutional rights, and would be admissible at trial. *Id.* at 11.

However, Judge Bauer held "those statements [Plaintiff] made after having duly waived his [*Miranda*] rights resulted from the aforementioned illegal searches and are accordingly suppressed as fruit of the poisonous tree." *Id.* at 12 (citations omitted). Judge Bauer noted

> the testimony and evidence admitted at the hearing, the police actions in stopping the Honda and impounding same as no valid driver was on scene, to searching its contents and finding the gun, then subsequently directing that defendant be taken into custody, Mirandized and interviewed regarding the recovered gun, then strip searched whereupon drugs were recovered, which led to defendant's second interview, constituted one continuous chain of events.

*Id.*

Further, there was nothing in the record "to show the taint of the illegal search of the vehicle had become attenuated so that the gun would have been independently discovered or that for any other reason the gun was not come by exploitation of that illegality." *Id.* (internal quotation marks and citations omitted). Judge Bauer applied the same reasoning to the "illegal, invasive search" of Plaintiff's person which yielded cocaine. *Id.* at 13.

### C. The Current Action

Plaintiff commenced this action on September 12, 2023, against the City of Oneida, the Rome Police, the Oneida County Police, the Oneida County Sheriff's Department, Det. Salle, Officer Zonnevylle, Officer Page, and Officer White alleging violations of his Fourth Amendment rights, false arrest, false imprisonment, and an illegal cavity search of his person. (Dkt. No. 1 at 6.) He seeks $5,000,000 in damages

and "the [s]uspension and/or [t]ermination of all officers involved." *Id.*

### V. DISCUSSION

**\*4** Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (internal quotations and citations omitted). To state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege that the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Whalen v. Cty. of Fulton,* 126 F.3d 400, 405 (2d Cir. 1997). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020). An official may not be held liable for constitutional violations simply because he held a high position of authority. *Victory v. Pataki,* 814 F.3d 47, 67 (2d Cir. 2016). "Section 1983 claims against municipal employees sued in their official capacity are treated as claims against the municipality itself." *Ortiz v. Wagstaff,* 523 F. Supp. 3d 347, 361 (W.D.N.Y. 2021) (internal quotations and citation omitted). A municipality cannot be held liable under Section 1983 unless the challenged action was undertaken pursuant to a municipal policy, custom, or practice. *See Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 694 (1978).

### A. City of Oneida

To begin, Plaintiff's claims against the City of Oneida must be dismissed. A municipality can be liable under § 1983 only if a plaintiff can show that a municipal policy or custom caused the deprivation of his constitutional rights. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–91 (1978). The doctrine of respondeat superior cannot be used to establish municipal liability. *Connick v. Thompson,* 563 U.S. 51, 60 (2011); *Cash v. County of Erie,* 654 F.3d 324, 333-34 (2d Cir. 2011); *Dzugas–Smith v. Southhold Union Free School Dist.,* No. 08 CV 1319, 2012 WL 1655540, at \*20 (E.D.N.Y. May 9, 2012). Here, Plaintiff does not allege, and nothing in his complaint suggests, that any of the allegedly wrongful acts or omissions on the part of any City employee are attributable to a municipal policy or custom. Thus, Plaintiff has not made a showing, in his pleadings, sufficient to impose *Monell* liability on the City of Oneida. *See Hayward v. City of New York,* No. 12-CV-3220 ENV, 2012 WL 3580286, at \*1

(E.D.N.Y. Aug. 17, 2012). Therefore, the Court recommends dismissing the complaint against the City of Oneida without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

## B. Oneida County Police, Oneida County Sheriff's Department, and Rome Police

Plaintiff lists Oneida County Police, Oneida County Sheriff's Department, and Rome Police as defendants in the caption of his complaint. A "police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (dismissing claims against county sheriff's department) (citations omitted); *see also Jackson v. Cty. of Nassau*, No. 07-CV-245, 2010 WL 335581, at *5 (E.D.N.Y. Jan. 22, 2010) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); *see, e.g., La Grande v. Town of Bethlehem Police Dep't*, No. 1:08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009) ("Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, [the plaintiff's] [c]omplaint is dismissed as against the Town of Bethlehem Police Department."); *Jenkins v. Liadka*, No. 5:10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *5 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant.").

Therefore, the Court recommends dismissing the complaint against the Oneida County Police, the Oneida County Sheriff's Department, and the Rome Police with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

## C. Det. Salle, Officer Zonnevylle, Officer Page, and Officer White

**\*5** The Court liberally construes Plaintiff's general claim for Fourth Amendment violations to be equivalent to his claims for false arrest, false imprisonment, and an illegal cavity search of his person. (*See* Dkt. No. 1 at 5-9.) Based on the facts in the complaint, the Court construes the false arrest and false imprisonment claims to pertain to Det. Salle, Officer Zonnevylle, and Officer Page and the illegal cavity search claim to pertain to Det. Salle and Officer White. (Dkt. No. 1 at 5, 7-9; Dkt. No 1-1 at 1-13.)

### 1. False Arrest and False Imprisonment

"A Section 1983 claim for false arrest [or false imprisonment] rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Cea v. Ulster Cty.*, 309 F. Supp. 2d 321, 329 (N.D.N.Y. 2004) (quoting *Sulkowska v. City of N.Y.*, 129 F. Supp. 2d 274, 287 (S.D.N.Y. 2001)). Such claims are one and the same because "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

The elements of a claim for false arrest under § 1983 are the same elements as a claim for false arrest under New York law. *Lewis v. City of New York*, 18 F. Supp. 3d 229, 235 (E.D.N.Y. 2014) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.' " *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016)).

"For purposes of the privilege element of a false arrest and imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported by probable cause." *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 759 (N.Y. 2016); *accord Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) ("Probable cause is a complete defense to an action for false arrest.") (citation and internal quotation marks omitted). Probable cause exists where the officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (citation and internal quotation marks omitted). "[T]he court looks only to the information the arresting officer had at the time of the arrest." *Peterson v. Cty of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998). "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Trans. Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

Here, the Court construes Plaintiff's complaint to allege that because Judge Bauer ruled the search of Plaintiff's car to be illegal and consequently suppressed the recovered gun, that there was no probable cause to arrest and confine him. (*See* Dkt. No. 1-1 at 1-13.) However, "[f]or federal false arrest claims, even in circumstances where a preceding search is illegal, police officers may use evidence obtained in that illegal search to establish probable cause for an arrest." *Hatcher v. City of New York*, No. 15-CV-7500 (VSB), 2018 WL 1583036, at *3 (S.D.N.Y. Mar. 27, 2018) (citing *Townes v. City of New York*, 176 F.3d 138, 144-49 (2d Cir. 1999)); *see also Serrano v. City of New York*, No. 16-CIV-8105(AKH), 2018 WL 3392869, at *6 (S.D.N.Y. July 12, 2018), *aff'd*, 793 F. App'x 29 (2d Cir. 2019) ("Under *Townes*, the fruit of the poisonous tree doctrine cannot be used to 'link the unreasonable search and seizure' to what came next—the discovery of the marijuana cigarette on plaintiff's person—which unquestionably gave officers probable cause to arrest plaintiff[.]").

 **\*6**  In New York State, a person is guilty of Criminal Possession of a Weapon in the second degree if he or she possesses a loaded firearm and does not have a license to possess such a firearm. *See Bannister v. Luis*, No. 18-CV-7285 (EK) (ST), 2022 WL 19402512, at *45 (E.D.N.Y. Feb. 16, 2022) (citing N.Y. Penal Law § 265.03), *report and recommendation adopted as modified*, 2023 WL 2325680 (E.D.N.Y. Mar. 2, 2023). Under New York law, the existence of a firearm in an automobile creates a permissive presumption that all occupants of the vehicle have common constructive possession of the firearm, absent certain statutory exceptions which are inapplicable here. *Id.* (citing N.Y. Penal Law § 265.15(3)). "If a jury may make a presumption of possession under the law, it is reasonable for a police officer to do the same." *Id.* "Therefore, upon finding the loaded handgun in the car, the officers had probable cause" to arrest and confine Plaintiff, defeating his false arrest and false imprisonment claims. *Id.* As noted above, because the fruit of the poisonous tree doctrine does not apply to § 1983 claims, the gun recovered from the illegal search of Plaintiff's car created probable cause for officers to arrest and confine him. *Id.* at *5 (citing *Townes*, 176 F.3d at 145). Accordingly, Plaintiff's false arrest and false imprisonment claims necessarily fail.

Plaintiff's Fourth Amendment false arrest and false imprisonment claims are also frivolous because a dispositive defense (i.e., probable cause) appears on the face of the complaint. *Ferguson*, 130 F. Supp. 2d at 565; *Harrell*, 268

F.3d at 148-49; *Woods*, 921 F. Supp. at 1144-45; *see also Garcia*, 279 F. Supp. 2d at 298. The undersigned accordingly recommends the Court dismiss Plaintiff's Fourth Amendment false arrest and false imprisonment claims because they are frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i).

### 2. Body Cavity Search

The Fourth Amendment protects individuals against searches of their person without a warrant. *Johnson v. City of New York*, No. 21-CV-5268 (PKC), 2022 WL 4133284, at *3 (S.D.N.Y. Sept. 12, 2022). A search incident to an arrest, however, "constitutes an exception to the warrant requirement" imposed by the Fourth Amendment. *Riley v. California*, 573 U.S. 373, 382 (2014). Nevertheless, there are limitations upon the scope of an appropriate search incident to an arrest. *See Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995). Indeed, whether a search incident to an arrest was lawful turns upon whether such search was reasonable. *Id.*

Visual body cavity searches in particular are "invasive and degrading" and a "serious invasion of privacy," even more intrusive than a typical strip search. *Sloley v. VanBramer*, 945 F.3d 30, 38 (2d Cir. 2019). As such, "a visual body cavity search conducted as an incident to a lawful arrest for any offense must be supported by a specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity." *Sloley*, 945 F.3d at 38 (citation and quotation marks omitted). To determine whether a visual body cavity search was reasonable under the circumstances, "courts also consider whether the individual's preceding arrest was for a misdemeanor or felony, whether it involved drugs, whether the individual would soon be surrounded by other inmates or arrestees or housed alone, whether the search occurred privately, and whether the search was performed pursuant to reasonable suspicion or because of a blanket policy." *Monroe v. Gould*, 372 F. Supp. 3d 197, 204 (S.D.N.Y. Mar. 14, 2019) (citing *Gonzalez v. City of Schenectady*, 728 F.3d 149, 162 (2d Cir. 2013)).

Based on relevant authority from New York State courts, *Sloley* identified various factors which can support a reasonable suspicion that an arrestee is secreting narcotics inside his person. *See* 945 F.3d at 46. For example, officers may have reasonable suspicion where the arrestee is seen placing his hands down his pants or making similarly suspicious movements. *People v. Hunter*, 902 N.Y.S.2d 678, 679-80 (3d Dep't 2010) (finding reasonable suspicion based

in part on the officers' observation of the arrestee "fidgeting with his hands down the back of his pants"); *People v. Harry*, 884 N.Y.S.2d 712, 712-13 (1st Dep't 2009) (finding reasonable suspicion where an arrestee was placed in a patrol car and observed "moving around a lot, like sliding up and down in his seat and making movements with his hands" as though he were attempting to place or remove something from his pants); *People v. Clayton*, 868 N.Y.S.2d 303, 305-06 (2d Dep't 2008) (finding reasonable suspicion where the arrestee was observed "wiggling around" in the patrol car and placing his hands in an area where the officer had felt a hard object during a pat-and-frisk). An officer may also have reasonable suspicion based on information that a particular arrestee is secreting objects in his person, or that he has a custom of doing so. *See Hunter*, 902 N.Y.S.2d at 680 (finding reasonable suspicion based in part on information the officers had received from a confidential informant that the arrestee "had a habit of carrying narcotics in his rectum"); *Clayton*, 868 N.Y.S.2d at 306 (finding reasonable suspicion based in part on the defendant's "history of secreting contraband in his rectum"). Finally, an officer has reasonable suspicion where he has watched a suspect "retriev[e] an item from his buttocks area and exchang[e] it for money from a person found in possession of drugs minutes later." *People v. Barnville*, 819 N.Y.S.2d 234, 236 (1st Dep't 2006).

**\*7** None of these factors appear to be present here. *See Falls v. (Police Officer) Detective Michael Pitt*, No. 16-CV-8863 (KMK), 2021 WL 1164185, at \*23–27 (S.D.N.Y. Mar. 26, 2021). Det. Salle testified "the visual body cavity search of [Plaintiff's] person was based solely on [his] history for a drug offense and no other reason." (Dkt. No. 1-1 at 4, 10.) Further, on the "Unclothed Search Form," Det. Salle indicated "the sole reason the unclothed search was performed was based upon the fact that [Plaintiff's] criminal history showed him having an undated 'CSCS 3 rd offense.' " *Id.* at 4, 10. Judge Bauer ultimately found

> [n]o other justification was offered for the search at issue. Prior drug offenses, the last nine years prior, standing alone, with no further 'specific, articulable, factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity' are not enough to justify the 'distinctly elevated level of intrusion' of this search.

*Id.* (citation omitted).

Given what is alleged, the Court recommends Plaintiff's Fourth Amendment claim based on the visual body cavity

search survives initial review under 28 U.S.C. § 1915(e) and requires a response. In so recommending, the undersigned expresses no opinion regarding whether the claim could survive a properly filed motion to dismiss or motion for summary judgment.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**, [2] and it is

[2] Plaintiff should note that although his motion to proceed IFP has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED** that Plaintiff's Fourth Amendment claim based on the body cavity search against Det. Salle and Officer White **SURVIVES** *sua sponte* review; and it is further

**RECOMMENDED** that Plaintiff's Fourth Amendment false arrest and false imprisonment claims against Det. Salle, Officer Zonnevylle, and Officer Page be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report. [3] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

[3] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the

next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Slip Copy, 2023 WL 7543607

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 78485
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ronald HESTER, Plaintiff,

v.

CITY OF ONEIDA, et al., Defendants.

6:23-cv-01171 (AMN/TWD)
|
Signed January 8, 2024

**Attorneys and Law Firms**

RONALD HESTER, 2723 Emerson Lane, Kissimmee, FL 34743, Plaintiff, Pro Se.

**ORDER**

Anne M. Nardacci, United States District Judge:

**I. INTRODUCTION**

**\*1** On September 12, 2023, Plaintiff *pro se* Ronald Hester commenced this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") against the City of Oneida, the Oneida County Police, the Oneida County Sheriff's Department, the Rome Police, Detective ("Det.") Salle,[1] Officer Zonnevylle, Officer Page, and Officer White alleging violations of his Fourth Amendment rights, false arrest, false imprisonment, and an illegal cavity search of his person. *See* Dkt. No. 1 (the "Complaint").

[1]     As noted in the Report-Recommendation, Det. Salle's last name is incorrectly spelled "Salley" in the caption of the Complaint. Dkt. No. 4 at 3 n.1. The Clerk of the Court is directed to correct the spelling of Detective Salle's name on the Docket.

Plaintiff sought leave to proceed *in forma pauperis* ("IFP"). Dkt. No. 2. This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks, who, on November 14, 2023, issued an Order and Report-Recommendation ("Report-Recommendation") granting Plaintiff's application to proceed IFP, and recommending that (i) the Court dismiss the Complaint against the City of Oneida without prejudice; (ii) the Court dismiss the Complaint against the Oneida County Police, the Oneida County Sheriff's Department, and the Rome Police with prejudice; (iii) Plaintiff's Fourth

Amendment false arrest and false imprisonment claims against Det. Salle, Officer Zonnevylle, and Officer Page be dismissed with leave to amend; and (iv) Plaintiff's Fourth Amendment claim based on the body cavity search against Det. Salle and Officer White survives initial review and requires a response. *See generally* Dkt. No. 4.[2] Magistrate Judge Dancks advised Plaintiff that under 28 U.S.C. § 636(b)(1), he had fourteen days within which to file written objections and that failure to object to the Report-Recommendation within fourteen days would preclude appellate review. *Id.* at 15. Plaintiff has not filed any objections to the Report-Recommendation and the time for filing objections has expired.

[2]     For a complete recitation of the facts in Plaintiff's Complaint, the parties are referred to the Report-Recommendation. *See* Dkt. No. 4 at 3-7.

For the reasons set forth below, the Court adopts the Report-Recommendation in its entirety.

**II. STANDARD OF REVIEW**

A district court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). If no specific objections have been filed, the court reviews a magistrate judge's report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 229 (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition).

"[I]n a *pro se* case ... the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

**III. DISCUSSION**

**\*2** Because Plaintiff has not filed any objections to the Report-Recommendation, the Court reviews the Report-Recommendation for clear error.

As to the Defendants named in the Complaint, Magistrate Judge Dancks first concluded that the Complaint did not sufficiently allege *Monell* liability with respect to the City of Oneida because Plaintiff did not allege that "any of the allegedly wrongful acts or omissions on the part of any City employee are attributable to a municipal policy or custom." Dkt. No. 4 at 7-8 (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978)). As a result, Magistrate Judge Dancks recommended dismissing the Complaint against the City of Oneida without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). *Id.* at 8.

As to Defendants Oneida County Police, Oneida County Sheriff's Department, and Rome Police, Magistrate Judge Dancks concluded that they are not proper parties because a "police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Id.* at 8-9 (quoting *Baker v. Willett,* 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999)). As a result, Magistrate Judge Dancks recommended dismissing the Complaint against the Oneida County Police, the Oneida County Sheriff's Department, and the Rome Police with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). *Id.*

Magistrate Judge Dancks next construed the facts in the Complaint as alleging false arrest and false imprisonment claims against Det. Salle, Officer Zonnevylle, and Officer Page, and as alleging an illegal cavity search claim against Det. Salle and Officer White. *Id.* at 9 (citing Dkt. No. 1 at 5, 7-9; Dkt. No. 1-1 at 1-13). [3] As to Plaintiff's false arrest and false imprisonment claims, Magistrate Judge Dancks determined that these claims fail because, upon finding a handgun in Plaintiff's car, there was probable cause for the officers to arrest and confine Plaintiff, regardless of whether the search of Plaintiff's vehicle was illegal. *Id.* at 9-12 (citing, *inter alia, Lourdes Torres v. Jones,* 26 N.Y.3d 742, 759 (N.Y. 2016); *Hatcher v. City of New York,* No. 15-CV-7500 (VSB), 2018 WL 1583036, at \*3 (S.D.N.Y. Mar. 27, 2018)). [4] Magistrate Judge Dancks noted that Plaintiff's false arrest and false imprisonment claims are "frivolous" because the existence of probable cause provides "a dispositive defense ... on the face of the complaint." *Id.* at 11-12. As a result, Magistrate Judge Dancks recommended dismissing Plaintiff's Fourth Amendment false arrest and false imprisonment

claims with leave to amend. *Id.* at 12 (citing 28 U.S.C. § 1915(e)(2)(B)(i)).

[3]    Magistrate Judge Dancks liberally construed Plaintiff's "general claim for Fourth Amendment violations," Dkt. No. 1 at 5-9, as "equivalent to his claims for false arrest, false imprisonment, and an illegal cavity search." Dkt. No. 4 at 9.

[4]    Magistrate Judge Dancks construed the Complaint "to allege that because [Oneida County Court] Judge Bauer ruled the search of Plaintiff's car to be illegal and consequently suppressed the recovered gun, that there was no probable cause to arrest and confine him." Dkt. No. 4 at 10 (citing Dkt. No. 1-1 at 1-13).

**\*3** Finally, as to Plaintiff's Section 1983 claim against Det. Salle and Officer White based on the body cavity search of Plaintiff's person, Magistrate Judge Dancks determined that none of the factors relied upon by the Second Circuit to establish the reasonable suspicion necessary to perform a body cavity search, *see Sloley v. VanBramer,* 945 F.3d 30, 46 (2d Cir. 2019), [5] appear to be present in this case. *Id.* at 13-14. [6] As a result, Magistrate Judge Dancks recommended that Plaintiff's Fourth Amendment claim based on the visual body cavity search survives initial review under 28 U.S.C. § 1915(e) and requires a response.

[5]    In *Sloley,* the Second Circuit found that police officers must have "reasonable suspicion" to conduct a lawful visual body cavity search, and identified factors that can support a reasonable suspicion that an arrestee is "secreting contraband on or in his" person. 945 F.3d at 38-39, 46.

[6]    Magistrate Judge Dancks also relied on Det. Salle's testimony and Det. Salle's "Unclothed Search Form" which indicated that the visual body cavity was performed on Plaintiff solely based on his history of prior drug offenses. Dkt. No. 4 at 14 (citing Dkt. No. 1-1 at 4, 10).

Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 4, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that the Complaint is **DISMISSED without prejudice** against the City of Oneida; and the Court further

**ORDERS** that the Complaint is **DISMISSED with prejudice** against the Oneida County Police, the Oneida County Sheriff's Department, and the Rome Police; and the Court further

**ORDERS** that Plaintiff's Fourth Amendment false arrest and false imprisonment claims against Detective Salle, Officer Zonevylle, and Officer Page are **DISMISSED without prejudice and with leave to amend**; and the Court further

**ORDERS** that Plaintiff's Fourth Amendment claim based on the body cavity search against Detective Salle and Officer White **SURVIVES initial review** and requires a response; and the Court further

**ORDERS** that Plaintiff may file an Amended Complaint **within THIRTY (30) DAYS** of this Order; and the Court further

**ORDERS** that if Plaintiff files an Amended Complaint within the time permitted, the Amended Complaint is referred to Magistrate Judge Dancks for further review; and the Court further

**ORDERS** that if Plaintiff does not file an Amended Complaint, the case is returned to Magistrate Judge Dancks for any orders relating to service of the Complaint on Defendants Detective Salle and Officer White; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules. [7]

[7]     If Plaintiff wishes to pursue any claim dismissed without prejudice, he is advised that any Amended Complaint will entirely replace the original Complaint. If Plaintiff fails to file an Amended Complaint within thirty (30) days, he will be deemed to have forfeited the opportunity to replead the dismissed claims, and the case will proceed solely on Plaintiff's Fourth Amendment claim based on the body cavity search against Det. Salle and Officer White.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 78485

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Brace v. Johnson, Not Reported in Fed. Supp. (2022)**

2022 WL 504972

2022 WL 504972
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ronald BRACE, Plaintiff,

v.

Officer Ryan JOHNSON, and Officer Jeffrey
Grener, Individually and as Employees of the
City of Albany Police Department, Defendants.

1:20-CV-588 (FJS/CFH)
|
Filed 02/18/2022

**Attorneys and Law Firms**

OF COUNSEL: RYANNE G. KONAN, ESQ., RYANNE
KONAN LAW OFFICE & LEGAL SERVICES, 4 Marshall
Road, Suite 107, Wappingers Falls, New York 12590,
Attorneys for Plaintiff.

OF COUNSEL: ABIGAIL W. REHFUSS, ESQ., STEPHEN
J. REHFUSS, ESQ., THE REHFUSS LAW FIRM, P.C., 40
British American Blvd., Latham, New York 12110, Attorneys
for Defendants.

**MEMORANDUM-DECISION AND ORDER**

SCULLIN, Senior Judge

**I. BACKGROUND**

**\*1** Plaintiff commenced this action in May 2020 against
Officers Ryan Johnson and Jeffrey Grener, alleging that
Defendants falsely arrested him and unreasonably searched
and seized him and his property in violation of 42 U.S.C. §
1983. See Dkt. No. 1, Compl.; Dkt. No. 12, Amend. Compl.,
at ¶¶ 17-70. These causes of action stemmed from a traffic
stop in February 2020, in the City of Albany, in which Plaintiff
was a passenger in a pick-up truck that his friend, Isaac
Williams, [1] was driving. See Dkt. No. 12 at ¶ 1. Defendants
passed the truck while driving in the opposite direction and
saw what appeared to be a New York State inspection and
registration tag on the windshield but no front license plate
and a North Carolina license plate on the back. See Dkt. No.
20-1, Defs' Stmt. of Material Facts, at ¶ 5. Defendants turned
around and followed the truck, at which point they claim

to have seen that one of the truck's rear directional signals
was not working properly. See id. at ¶ 6. Defendants stopped
the truck, informed Plaintiff and Mr. Williams that the truck
had a malfunctioning rear directional signal, and asked both
occupants for identification, as well as proof of insurance and
registration for the vehicle. See id. at ¶¶ 11-12. Plaintiff was
allegedly argumentative at first, but he ultimately provided his
identification to Defendants. See id. at ¶ 13. As a result of this
inquiry, Defendants confirmed that the truck was registered
to Mr. Williams's employer. See id. at ¶ 15.

[1]      Mr. Williams filed a separate action before the
        Court, alleging identical claims and raising the
        same issues in response to Defendants' motion for
        summary judgment in his action. See generally
        Case No. 20-CV-589. The Court addresses the
        merits of Mr. Williams's claims in a simultaneously
        issued Memorandum-Decision and Order.

After running Plaintiff's identification, Defendants learned
that his information matched the same date of birth and
general description of a fugitive from justice wanted in South
Carolina, who was also known to have a cauliflower left ear.
See id. at ¶ 16. Based on those similarities and Plaintiff's
apprehension in providing his identification, Defendants
surreptitiously checked Plaintiff's left ear and concluded that
he was not the fugitive. See id. at ¶ 18. The traffic stop ended
at that point, Defendants did not issue any traffic tickets, and
Plaintiff and Mr. Williams were free to go. See id. at ¶ 19. [2]

[2]      Although Plaintiff contends that the truck did not
        have a New York State registration sticker and
        asserts that the taillight was working properly, he
        does not dispute that these were the reasons that
        Defendants proffered as the basis for the traffic
        stop. See Dkt. No. 21-1, Pl.'s Stmt. of Facts, at ¶¶
        5-11. Plaintiff admits all other facts in this section.
        See generally id.

Defendants now move for summary judgment, seeking to
dismiss Plaintiff's complaint or, in the alternative, to establish
that they are protected from liability under the doctrine
of qualified immunity. See Dkt. No. 20. Plaintiff opposes
Defendants' motion and separately cross-moves the Court to
grant summary judgment in his favor by finding the traffic
stop unlawful, or, in the alternative, for the Court to find that
there is a question of fact as to the stop's lawfulness. See Dkt.
No. 21. Plaintiff also asserts that the Court should dismiss
Defendants' motion because they did not attach appropriate
documentation. See Dkt. No. 21.

Brace v. Johnson, Not Reported in Fed. Supp. (2022)

Case 6:24-cv-00085-DNH-TWD    Document 4    Filed 03/12/24    Page 42 of 73

2022 WL 504972

## II. DISCUSSION

### A. Whether the Court should dismiss Defendants' motion for failing to attach the pleadings

**\*2** Plaintiff argues that Defendants did not submit the complaint, answer, or Defendants' affidavits with their summary judgment motion, which is required under Section 3212(b) of New York's Civil Practice Law and Rules. *See* Dkt. No. 21-3 at 10. Plaintiff also faults Defendants for not submitting affidavits or a response to interrogatories as part of their motion. *See* Dkt. No. 27 at 3-4. According to Plaintiff, "Defendants have submitted their depositions only; and therefore, their motion should be dismissed." *See* Dkt. No. 21-3 at 11.

Contrary to Plaintiff's position, nothing in Rule 56 of the Federal Rules of Civil Procedure requires a movant to attach additional information, such as pleadings, to their motion for summary judgment. *See generally* Fed. R. Civ. P. 56. Pursuant to the Local Rules, "all motions and opposition to motions require a memorandum of law, supporting affidavit when necessary to establish and provide factual and procedural background relevant to the motion, and proof of service on all parties." *See* L.R. 7.1(b). Local Rule 7.1(b) further provides that "[d]ocuments that are on file with the Court in the same action should not be attached as exhibits to the motion papers, but rather should be referenced to the appropriate docket number." *See id.* Summary judgment motions must also include a Statement of Material Facts, and the record for purposes of that statement "includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.*See* L.R. 56.1(a). As these rules do not require that a movant attach the pleadings, affidavits, or responses to interrogatories to their motions for summary judgment, the Court finds that this argument is without merit.

### B. Whether there is an issue of fact as to the traffic stop's lawfulness

Plaintiff's first and second causes of action for false arrest and unreasonable search and seizure hinge on his argument that Defendants did not have reasonable suspicion or probable cause to stop the truck. "The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures....' " *United States v. Gomez*, 877 F.3d 76, 85-86 (2d Cir. 2017) (quoting U.S. Const. amend. IV). " ' 'Temporary

detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of [the Fourth Amendment].' " *Id.* at 86 (quoting *Whren v. United States*, 517 U.S. 806, 809-10, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)). "Therefore, traffic stops must satisfy the Fourth Amendment's reasonableness limitation, which 'requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity.' " *Id.* (quoting *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009) (alterations and emphasis omitted)).

"Probable cause to make a stop exists when an officer 'has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the [suspect] has committed or is committing a crime.' " *Savatxath v. Demer*, No. 3:15-CV-82, 2018 WL 8755515 *12, 2018 U.S. Dist. LEXIS 239250 *34 (N.D.N.Y. Mar. 31, 2018) (Hurd, J.) (quoting *United States v. Delossantos*, 536 F.3d 155, 158-59 (2d Cir. 2008)). " 'Reasonable suspicion requires "some minimal level of objective justification" for suspecting criminal activity.' " *Id.* (quoting *United States v. Bristol*, 819 F. Supp. 2d 135, 141 (E.D.N.Y. 2011) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989))). " 'While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop.' " *Id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123-24, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (quoting *Sokolow*, 490 U.S. at 7, 109 S.Ct. 1581)).

**\*3** "Even if lawful at its inception, a traffic stop 'can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution.' " *United States v. Wallace*, 937 F.3d 130, 137-38 (2d Cir. 2019) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005)). "Because a traffic stop's 'mission' is to 'address the traffic violation that warranted the stop and attend to related safety concerns ... [a]uthority for the seizure [ ] ends when tasks tied to the traffic infraction are – or reasonably should have been – completed.' " *Id.* at 138 (quoting [*Rodriguez v. United States*, 575 U.S. 348, 135 S. Ct. 1609,] 1614, 191 L.Ed.2d 492 [(2015)] (internal citations omitted)). "These tasks

Brace v. Johnson, Not Reported in Fed. Supp. (2022)

2022 WL 504972
include both 'determining whether to issue a traffic ticket' and conducting 'ordinary inquiries incident to the traffic stop,' such as 'checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.' " *Id.* (quoting [*Rodriguez*, 135 S. Ct.] at 1615).

Plaintiff also alleges a cause of action for false arrest pursuant to 42 U.S.C. § 1983. " 'To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.' " *Moore v. Keller*, 498 F. Supp. 3d 335, 352 (N.D.N.Y. 2020) (Hurd, J.) (quoting *Jackson v. City of N.Y.*, 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013)) (citation omitted)); (citing *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012)). " 'To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity.' " *Id.* (quoting *Hulett*, 235 F. Supp. 3d at 494 (quoting *Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015)))). " 'The test for probable cause is an objective one and "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.' " " *Id.* (quoting [*Hulett*, 253 F. Supp. 3d at 494] (quoting *Yorzinski v. City of N.Y.*, 175 F. Supp. 3d 69, 75 (S.D.N.Y. 2016))).

Defendants contend that they had reasonable suspicion to stop the truck because of both a malfunctioning rear turn signal and the appearance of a mismatched license plate and registration. With respect to the turn signal, New York's VTL § 375(18) provides that a motor vehicle "shall be equipped with directional signals approved by the commissioner" and "[i]t shall also be unlawful to fail to cause such signals to be maintained, at all times in good and sufficient working order." N.Y. Veh. & Traf. L. § 375(18). Notably, in Plaintiff's memorandum of law, he appears to admit that "Defendants noticed that the vehicle's right hand turn signal was blinking fast." *See* Dkt. No. 21-3 at 11.

In his deposition, Defendant Johnson explained that, as he was following the truck, it made a turn, and he noticed that one of the turn signals was not functioning properly, which is what ultimately triggered Defendants to stop it. *See* Dkt. No. 20-4 at 27. Defendant Grener testified at his deposition that he informed Plaintiff and Mr. Williams that the traffic stop was because the truck had a rear signal that was not

functioning properly – "either not functioning or it's blinking very fast." *See* Dkt. No. 20-5, Def. Grener Depo., at 35-36. Defendant Grener maintained throughout his testimony that it was blinking fast, and when he told Mr. Williams that, Mr. Williams had allegedly told him that the lightbulb did not have sufficient power, causing it to blink that way. *See id.* at 48-49.

Plaintiff testified in his deposition that Defendants informed him and Mr. Williams that they were stopped for a faulty light, but he claimed that all the lights were in working order. *See* Dkt. No. 20-6, Pl.'s Depo., at 25. However, Plaintiff also testified that neither he nor Mr. Williams got out of the vehicle to inspect the lights while stopped. *See id.* After the stop, Plaintiff allegedly got out of the truck to look at the lights, but he did not walk around to the back of the truck to look at the lights from there. *See id.* at 34-35. He also affirmed separately that Mr. Williams turned the truck's lights and signals on at Defendants' request, and those lights were "all working fine." *See* Dkt. No. 21-4, Pl.'s Aff., at ¶ 14. In addition, Mr. Williams testified that Defendants informed him that he was stopped because his rear directional light was not working properly, which Mr. Williams was aware was a violation of VTL § 375. *See* Dkt. No. 20-7, Williams's Depo., at 34. Mr. Williams did not state at his deposition that the light was, in fact, working or otherwise dispute that Defendants had reasonable suspicion to pull him over for a faulty turn signal. *See generally id.*

**\*4** Based on the foregoing, Plaintiff and Defendants agree that Defendants claimed to have stopped Mr. Williams's truck for a faulty turn signal. Although Plaintiff specifically argues that the signal was functioning properly, he admitted that he did not check it at the time of the traffic stop and, when he checked the lights afterward, he did not walk to the rear of the truck to look at the lights. Mr. Williams, the driver, also admitted that he knew that driving with a faulty turn signal violated VTL § 375, and Defendants pulled him over for violating that law. Additionally, Plaintiff did not submit testimony from a non-party mechanic, videos of the lights, or any other evidence to support his position. Considering all of the evidence, the Court finds that there is not a genuine issue of material fact as to whether the rear turn signal was working properly when Defendants stopped Mr. Williams's truck, and Defendants had reasonable suspicion to stop the truck for violating VTL § 375.

Alternatively, the Court further finds that Defendants had reasonable suspicion to stop the truck for having mismatched plates and registration. VTL § 402 requires that all vehicles have license plates that correspond to the certificate of

Brace v. Johnson, Not Reported in Fed. Supp. (2022)

Case 6:24-cv-00085-DNH-TWD   Document 4   Filed 03/12/24   Page 44 of 73

2022 WL 504972

registration and that those plates are conspicuously displayed on the front and on the rear of the vehicle. N.Y. Veh. & Traf. L. § 402(1)(a). Plaintiff admits in his Statement of Facts that Defendants made "a U-turn, and followed Plaintiff, just because they thought they saw a [New York] registration on the windshield, with no front license plate," leading to Defendants' assumption that the car had been stolen. *See* Dkt. No. 21-1, Pl.'s Stmt. of Facts, at ¶ 6; Dkt. No. 21-3 at 11. Although Plaintiff denies that the truck had a New York registration or any registration tag on its windshield, he admits that there was not a front license plate on the vehicle, and there was a New York State inspection sticker on the truck's windshield. *See* Dkt. No. 21-1 at ¶¶ 5-6. Plaintiff also attached a photograph of that inspection sticker as an exhibit to his cross-motion. *See* Dkt. No. 21-6, Ex. 3.

As for Defendants, in his deposition, Defendant Johnson stated that he definitely saw a New York inspection sticker and could not recall if there was a registration sticker as well. *See* Dkt. No. 20-4, Johnson Depo., at 18. He explained that, as he was passing the truck, he saw "stickers consistent with what would be required to be on a New York State registered vehicle," but that the vehicle did not have a license plate on the front and had a non-New York plate attached to the back. *See id.* at 19, 23. According to Defendant Johnson, that gave him "an indication that the vehicle was or is registered in New York and potentially stolen, or there is something else going on with that vehicle." *See id.* at 19. He explained that it is "very common for vehicles to be stolen that had the plate off, another plate put on and be driven around." *See id.* at 29.

Based on the foregoing, the Court finds that the absence of a front license plate, combined with what indisputably appeared to Defendants to be documents consistent with a vehicle registered in New York, sufficiently afforded Defendants reasonable suspicion to stop the vehicle. The Court therefore concludes that it does not matter that there was not actually a New York registration on the windshield with the New York inspection sticker as Defendants had originally believed. As long as that belief was objectively reasonable, then it is of no consequence that the vehicle was not in violation of VTL § 402; Defendants had reasonable suspicion to investigate further and to do so by stopping the truck.

Furthermore, courts in this Circuit have found that police officers may lawfully inquire into a passenger's identity during a traffic stop. *See United States v. Hicks*, No. 18-CR-6041CJS, 2018 WL 6595934 *——, 2018 U.S. Dist. LEXIS 212055 *22-*24 (W.D.N.Y. Dec. 14, 2018)

(collecting cases); *United States v. Baez-Garcia*, No. 5:10-cr-88-3, 2015 WL 13855032, *——, 2015 U.S. Dist. LEXIS 196133, *11 (D. Vt. Aug. 13, 2015) (citing *United States v. Fernandez*, 600 F.3d 56, 61 (1st Cir. 2010); *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1152-53 (9th Cir. 2007)). The Court agrees with the findings of these courts and concludes that Defendants did not violate Plaintiff's Fourth Amendment rights when they asked for his identification, and he voluntarily provided it.

**\*5** The Court must also consider whether Defendants had reasonable suspicion to extend the stop beyond the time necessary to determine whether the vehicle was stolen and to determine whether to ticket Mr. Williams for his improperly working turn signal. The only extension of the stop, the entirety of which lasted somewhere between 10 and 12 minutes according to the video footage from Defendants' body cameras and Plaintiff's recording, occurred when Defendants checked Plaintiff's identification and discovered that his birthday and physical build appeared to match that of a fugitive. *See* Dkt. No. 20-1 at ¶¶ 16, 21. To confirm whether Plaintiff was the fugitive, and without wanting to put themselves in danger in case Plaintiff was a match, Defendants concocted a plan where one officer would pretend to look at the truck's rear lights while checking to see if Plaintiff had a cauliflower ear on his left side. *See id.* at ¶¶ 17-18. After determining that Plaintiff was not a match and therefore not a wanted fugitive, Defendants let Plaintiff and Mr. Williams go without issuing any traffic tickets. The Court finds that Defendants had reasonable suspicion to prolong the stop in the interest of safety, and they did not prolong it more than necessary so as to violate Plaintiff's Fourth Amendment rights.

Finally, as the Court concludes that Defendants had reasonable suspicion and probable cause to stop the truck for traffic infractions, it follows that Plaintiff cannot succeed on his false arrest claim. *See Moore*, 498 F. Supp. 3d at 352; *Stancuna v. Iovene*, No. 3:08-cv-30 (JBA), 2018 WL 1368904 *5, 2018 U.S. Dist. LEXIS 46524 *13-*14 (D. Conn. Mar. 15, 2018) (stating that " '[p]robable cause is a complete defense to claims of false imprisonment and false arrest' " (quotation omitted)). Accordingly, for the above stated reasons, the Court grants Defendants' motion for summary judgment dismissing Plaintiff's complaint in its entirety.

### III. CONCLUSION

Brace v. Johnson, Not Reported in Fed. Supp. (2022)

2022 WL 504972

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, *see* Dkt. No. 20, is **GRANTED**; [3] and the Court further

[3]     Since the Court dismisses each of Plaintiff's causes of actions on the merits, it does not need to address Defendants' argument that they are entitled to qualified immunity.

**ORDERS** that Plaintiff's cross-motion for partial summary judgment, *see* Dkt. No. 21, is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close the case. [4]

[4]     The Court lastly notes that Plaintiff's counsel's submissions did not meet the standard that is ordinarily expected of attorneys licensed to practice in the Northern District of New York. Mr. Konan repeatedly miscited law, relied on law that was irrelevant, and asserted facts that were not supported anywhere in the record. Notably, these representations violate Rule 11 of the Federal Rules of Civil Procedure. **The Court therefore cautions Mr. Konan that his failure to comply with the Federal Rules of Civil Procedure and this District's Local Rules of Practice in the future may result in sanctions.**

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 504972

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Brace v. Johnson, Not Reported in Fed. Rptr. (2023)

2023 WL 2027274

2023 WL 2027274
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Ronald BRACE, Plaintiff-Appellant,

v.

Officer Ryan JOHNSON, individually and
as an employee of the City of Albany Police
Department, Jeffrey Grener, individually
and as an employee of the City of Albany
Police Department, Defendants-Appellees. *

---

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

No. 22-590
|
February 16, 2023

Appeal from a judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

For Plaintiff-Appellant: Ryanne Konan, Ryanne Konan Law Office and Legal Service, Wappingers Falls, NY.

For Defendants-Appellees: Abigail W. Rehfuss, The Rehfuss Law Firm, P.C., Latham, NY.

PRESENT: AMALYA L. KEARSE, RICHARD J. SULLIVAN, SARAH A. L. MERRIAM, Circuit Judges.

---

**SUMMARY ORDER**

**\*1** Ronald Brace appeals from the district court's grant of summary judgment in favor of Albany Police Officers Ryan Johnson and Jeffrey Grener (the "Officers") on Brace's claims under 42 U.S.C. § 1983, relating to the traffic stop of a pickup truck in which he was a passenger. "We review a district court's grant of summary judgment de novo," *Kee v. City of New York*, 12 F.4th 150, 157 (2d Cir. 2021), and will affirm when "there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

An ordinary traffic stop constitutes a "seizure" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). A traffic stop is thus "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810. A police officer's decision to stop a vehicle is reasonable when the officer has probable cause or reasonable suspicion to believe that the vehicle's occupants are engaged in unlawful conduct. *See United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017). While reasonable suspicion is a less demanding standard than probable cause, the Fourth Amendment still requires "some minimal level of objective justification for making the stop." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation marks omitted). Since the test is an objective one, the constitutional reasonableness of a traffic stop does not turn on the subjective motivation of the officers involved. *See Whren*, 517 U.S. at 813 (explaining that "as long as the circumstances, viewed objectively, justify [the officer's] action," his "[s]ubjective intentions play no role in [the] Fourth Amendment analysis" (internal quotation marks omitted)).

Here, the undisputed facts demonstrate that the Officers had reasonable suspicion to stop the pickup truck in which Brace was riding. Officer Johnson testified that, while he was on patrol with Officer Grener, he observed a pickup truck with "stickers consistent with what would be required to be on a New York State[–]registered vehicle" proceeding with no front license plate and a non–New York plate affixed to the rear. App'x at 106. Officer Johnson's testimony was corroborated by Officer Grener, who testified that he too saw "New York State stickers inside the window" of a vehicle with "no front plate" and a "rear plate [from] North Carolina." *Id.* at 226–27, 229, 232. Based on these observations – which Brace does not dispute – the Officers would have reasonably suspected the pickup truck to be in violation of New York law requiring (1) that all vehicles have license plates that correspond to the certificate of registration, and (2) that those plates be conspicuously displayed on both the front and the rear of the vehicle. *See* N.Y. Veh. & Traf. Law § 402(1)(a); *see also United States v. Jenkins*, 452 F.3d 207, 212 (2d Cir. 2006) (upholding constitutionality of traffic stop where vehicle appeared to lack two license plates, in violation of the same provision of New York Vehicle and Traffic Law at issue here); *Whren*, 517 U.S. at 819 (holding that probable

Brace v. Johnson, Not Reported in Fed. Rptr. (2023)

2023 WL 2027274

Case 6:24-cv-00085-DNH-TWD   Document 4   Filed 03/12/24   Page 47 of 73

cause to believe driver committed traffic violation rendered automobile stop reasonable under the Fourth Amendment). When coupled with the Officers' experience that it was common for car thieves in and around Albany to "grab a random license plate ... and place it on a stolen [New York] vehicle," App'x at 36, the Officers had *ample* basis to stop the truck in which Brace was a passenger, *see United States v. Arvizu*, 534 U.S. 266, 273 (2002) (explaining that police officers' "experience and specialized training" may permit them to make inferences from the information available to them that "might well elude an untrained person" (internal quotation marks omitted)). [1]

[1]    *See also, e.g.*, *United States v. Wallace*, 937 F.3d 130, 139–40 (2d Cir. 2019) (where officers "observed ... unusual circumstances [that] ... caused them to suspect that the vehicle may have been stolen," they had "reasonable suspicion" not only to perform but to "extend[ ]" a "traffic stop"); *United States v. Foreste*, 780 F.3d 518, 526 (2d Cir. 2015) (where driver provided an expired rental agreement and appeared to have an uneasy demeanor, officer had reasonable suspicion that the car was stolen); *United States v. Lewis*, 712 F. App'x 83, 84 (2d Cir. 2018) (holding that officers had reasonable suspicion to perform and prolong traffic stop where, inter alia, rental car lacked usual barcode).

**\*2**  Brace offers two responses, but each misses the mark. For starters, he argues that the Officers "did not have reasonable suspicion to make [a] U-turn" and follow the vehicle. Brace Br. at 8. But an officer's decision to trail another vehicle does not implicate the Fourth Amendment. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998) (finding no seizure where police pursued suspects in a high-speed chase). Brace also contends that the Officers lacked reasonable suspicion to stop the vehicle because, despite the New York inspection sticker on the windshield, the vehicle was, in fact, lawfully registered in North Carolina and therefore permitted under New York law to have a single, rear-only license plate as allowed in the state of registration. The relevant question, however, is not whether the vehicle was *ultimately* in compliance with the vehicle and traffic code, but whether Officers Johnson and Grener could have

reasonably concluded otherwise *at the time of the traffic stop*. *See Jenkins*, 452 F.3d at 212 (upholding finding of probable cause based on a reasonable mistake of fact). Given the facts in their possession at the time of the stop – namely, (1) the truck's displaying stickers consistent with a vehicle registered in New York, App'x at 106, (2) a missing front license plate and an out-of-state rear license plate, *id.*, and (3) the Officers' experience that it was "very common for vehicles to be stolen that had ... another plate put on" from a different state, *id.* at 112 – we agree with the district court that the Officers "had reasonable suspicion to investigate further ... by stopping the truck," *id.* at 11.

Of course, the fact that the Officers made a lawful stop of Brace's vehicle does not mean that they were free to detain him indefinitely. "Even if lawful at its inception, a traffic stop can violate the Fourth Amendment if [it] unreasonably" extends the detention beyond the time necessary to achieve the purposes of the stop. *Wallace*, 937 F.3d at 137–38 (internal quotation marks omitted). But it is undisputed that the stop of Brace's vehicle – from the time that the Officers activated their lights and instructed the truck's driver to pull over to the time they told Brace he was free to leave – lasted "no more than ... [twelve] minutes." App'x at 37, 42. That was hardly an unreasonable amount of time in which to speak with the truck's occupants and determine whether the truck was stolen and whether to ticket the driver for infractions related to the missing license plate. *See United States v. Sharpe*, 470 U.S. 675, 687–88 (1985) (upholding twenty-minute detention following traffic stop where agent diligently pursued investigation with no unnecessary delay); *Foreste*, 780 F.3d at 526 (upholding twenty-two minute traffic stop where officers had reasonable suspicion that car was stolen); *Wallace*, 937 F.3d at 141 (upholding nine-minute traffic stop where officers diligently pursued investigation to quickly confirm or dispel their suspicions).

We have considered Brace's remaining arguments and found them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

### All Citations

Not Reported in Fed. Rptr., 2023 WL 2027274

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-00085-DNH-TWD    Document 4    Filed 03/12/24    Page 48 of 73

Hogan v. City of New York, Not Reported in Fed. Supp. (2007)

2007 WL 9710294

2007 WL 9710294
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Tyniera HOGAN and Shanair Hogan, Plaintiffs,
v.
The CITY OF NEW YORK, Police Officer
Higgins, and Police Officer Niksa, Defendants.

No. 04-CV-3298 (JFB) (SMG)
|
Signed 03/12/2007

**Attorneys and Law Firms**

John Cobb, Esq. of Cobb & Cobb, Esqs., 233 Route 17, # 5, Tuxedo, New York 10987, for plaintiffs.

John Burns, Esq., of Worth, Longworth & London, LLP, 111 John Street, Suite 640, New York, New York 10038, for defendants.

MEMORANDUM AND ORDER

JOSEPH F. BIANCO, United States District Judge

 **\*1** Plaintiffs Shanair ("Shanair") and Tyniera ("Tyniera") Hogan filed the complaint in this action on July 20, 2004 alleging claims pursuant to 28 U.S.C. § 1983 against Police Officers William Higgins ("Higgins") and Thaddeus Niksa ("Niksa") (collectively, "defendants") and the City of New York.[1] Defendants now move for summary judgment on all of plaintiffs' claims. Plaintiff Shanair also moves to dismiss the cross-claim by defendant Niksa and plaintiffs cross-move for summary judgment as to defendants' liability on all causes of action. For the reasons that follow, the motions are denied.

[1]    By Stipulation of Discontinuance dated May 23, 2006, plaintiffs discontinued their claims against the City of New York. However, defendants Higgins and Niksa continue their cross-claims against the City of New York, asserting a violation of their statutory right to a defense and indemnification under N.Y. State Gen. Mun. Law § 50-k. Accordingly, the City of New York remains a party to this matter.

I. BACKGROUND

A. Facts

The following evidence is derived from the record in this case.

On July 12, 2003, at approximately 9:20 p.m., Higgins and Niksa were performing Radio Mobil Patrol ("R.M.P."). (Defs.' 56.1 Stmt. ¶ 1.)[2] Higgins and Niksa were in full uniform and in a marked police car in the vicinity of Guy Brewer Blvd. and Foch Blvd. in Queens, New York. (Id.) At approximately the same time defendants were about to make a left turn from Guy Brewer Blvd. onto Foch Blvd., plaintiffs were at the corner, on foot, about to cross Foch Blvd. (Id. ¶ 2.) At the time, Tyniera was twenty-two years old and Shanair was nineteen years old. (Id.) Plaintiffs are half-sisters. (Id.) As plaintiffs were walking across the street, the R.M.P. police car turned onto Foch Blvd. (Id. ¶ 3.) Plaintiffs were almost struck by the vehicle. (Pls.' 56.1 Stmt.) As plaintiffs jumped back to avoid being hit by the car, the police car flashed a searchlight into plaintiffs' eyes. (Pls.' 56.1 Stmt. ¶ 3.)

[2]    Facts cited from one party's Statement of Material Facts are undisputed unless otherwise indicated.

According to plaintiffs, Shanair yelled out "a\* \* \* \* \* \*" at the passing police car.[3] (Shainair Dep. at 81.) Higgins was the driver/operator of the car and Niksa was the passenger/recorder. (Defs.' 56.1 ¶ 3.) Higgins continued to drive another fifty or sixty feet along Foch Blvd. before making a U-turn to return to the corner of Foch and Guy Brewer Blvds. (Id. ¶ 4.) When the car reached the corner, defendants got out of the car and demanded identification. (Shanair Dep. at 102; Higgins Aff. ¶ 5; Niksa Aff. ¶¶ 4-5.) Shanair told defendants what she had said and why she had said it. (Pls.' 56.1 Stmt. ¶ 7.) Shanair complied with the request for identification and handed over her New York State driver's license. (Pls.' 56.1 Stmt. ¶ 9.) Tyniera asked the officers why they needed to see identification. (Pls.' 56.1 Stmt. ¶ 10.) Niksa again requested identification from Tyniera and Tyniera handed over her license. (Pls.' 56.1 Stmt. ¶¶ 11-12.) A crowd of people began to gather near the scene. (Shainair Dep. at 110, Higgins Aff. ¶ 8.) Niksa placed Tyniera's identification into his uniform breast pocket. (Defs.' 56.1 ¶ 9.) Tyniera then began to walk away from Niksa and began to make calls on her cell phone to her father and other family members. (Id. ¶ 9, see also Pls.' 56.1 Stmt. ¶ 11.) Niksa attempted to arrest Tyniera by grabbing her left hand

Case 6:24-cv-00085-DNH-TWD   Document 4   Filed 03/12/24   Page 49 of 73

Hogan v. City of New York, Not Reported in Fed. Supp. (2007)
2007 WL 9710294

to handcuff her. (Tyniera Dep. at 83.) At some point while she was being handcuffed, Shanair grabbed Tyniera's right arm. (Tyniera Dep. at 90, 99.) Niksa then elbowed Shanair. (Shanair Dep. at 114.) She was rendered unconscious and fell to the floor. (Shanair Dep. at 116; Tyniera Dep. at 99.)

3      There is disagreement over who called the police, "a\* \* \* \* \* \*." Defendants both believe it was Tyniera, while both plaintiffs state that it was Shanair. For purposes of this motion, however, identification of the individual who actually used the profanity is immaterial.

**\*2** According to plaintiffs, Shanair did not touch Niksa prior to being elbowed. (Shanair Dep. at 116.) Defendants do not deny that Niksa's elbow most likely hit Shanair. (Defs. 56.1 ¶ 11.) However, according to Niksa, both plaintiffs began to kick him, and Shanair jumped on his back and was holding and scratching his right arm. (Niksa Aff. ¶ 9.) He states that he attempted to get her off by twisting and attempting to shake her. (*Id.*)

According to Higgins, he observed Shanair come closer to defendants as they were attempting to cuff Tyniera and saw Niksa raise his arm to push her away. (Hogan Aff. ¶ 10.) He also states that, at one point, he saw Shanair fall to the ground, landing on her backside. (*Id.*)

Shanair was then picked up off the ground by other officers and cuffed. (Shanair Dep. at 116.) Tyniera was taken into custody by Niksa with assistance from Higgins and transported by R.M.P. to the 113th Precinct. (Defs.' 56.1 Stmt. ¶ 12.) Shanair was also taken into custody by police officers from the Housing Bureau PSA #9, and was transported by them to the 113th Precinct. (*Id.*)

At the 113th Precinct, Niksa realized he was injured from his struggle with plaintiffs and called for an ambulance to take him to Mary Immaculate Hospital. (Higgins Aff. ¶ 11, Niksa Aff. ¶ 11.) He was treated in the emergency room for cuts and scratches to his right arm and for pain in his legs, and released. (Niksa Aff. ¶ 12.)

Approximately two hours after plaintiffs' arrest, Shanair was seen by Emergency Medical Technicians ("EMTs") at the 113th Precinct, but she declined further treatment or examination at a hospital. (Defs.' 56.1 Stmt. ¶ 15; Tyniera Dep. at 131-32.) Shanair was given an ice pack for her mouth and Tyniera had no medical needs requiring immediate attention. (Defs.' 56.1 Stmt. ¶ 15.) Shortly after plaintiffs were

taken to the 113th Precinct, approximately twenty of their friends and family members converged upon the precinct. (Defs.' 56.1 Stmt. ¶ 16.) They had a video camera and insisted on seeing plaintiffs, but this request was refused by the ranking officer of the precinct. (*Id.*)

Higgins was assigned to the arrest processing of both plaintiffs. (Defs.' 56.1 ¶ 17.) After consultation with his superior officers, it was determined that Shanair would be charged with Obstruction of Governmental Administration, [P.L. § 195.05], Resisting Arrest, [P.L. § 205.30], and Disorderly Conduct, [P.L. § 240.20-1]. Tyniera was charged with Resisting Arrest P.L. § 205.30 and Disorderly Conduct P.L. § 240.20-1. Plaintiffs were arraigned in a Queens County Criminal Court on July 14, 2003, based upon a criminal court complaint. (Defs.' 56.1 Stmt. ¶ 18.)

Plaintiffs had a joint bench trial on March 4, 2004 before the Honorable Joseph Zaya. (Defs.' 56.1 Stmt. ¶ 19.) Prior to the commencement of the trial, the Assistant District Attorney assigned to prosecute the case dismissed the obstruction of governmental administration charge against Shanair as well as the resisting arrest charge against both plaintiffs. (*Id.*) Higgins was the only prosecution witness called. (*Id.*) Judge Zayas stated that disorderly conduct

> requires proof that a person is guilty ... when with intent to cause public inconvenience, annoyance or alarm or reckless [sic] creating a risk, they engage in fighting or violent tumultuous or threatening behavior

(Defs.' 56.1 Stmt. ¶ 19; *see also* Defs.' Ex. E. at 68.) Analyzing the proof under that standard, Judge Zayas found Shanair and Tyniera not guilty of the disorderly conduct charges. (Defs.' 56.1 Stmt. ¶ 19.)

**\*3** Plaintiffs filed complaints against defendants with the N.Y.P.D. Internal Affairs Division and the Civilian Complaint Review Board ("CCRB"). (Defs.' 56.1 Stmt. ¶ 20.) The original complaints by the plaintiffs alleged abuse of authority and the use of excessive force. (*Id.*) The excessive force allegations were found to be unsubstantiated, but CCRB did substantiate the abuse of authority allegations with respect to the initial stop of the plaintiffs by the defendants. (*Id.*) The charges against defendants were dismissed after plaintiffs

2007 WL 9710294

failed to appear on the trial dates set before the Departmental Trial Commissioner. (*Id.*)

### B. Procedural History

Plaintiffs commenced the instant action on August 1, 2004, against the City of New York and Police Officers Higgins and Niksa, alleging unlawful search and seizure, malicious prosecution, false arrest and false imprisonment, excessive force, and violations of their First Amendment right to freedom of speech. On December 21, 2004, defendants Higgins and Niksa filed their answer and a cross-claim against the City of New York. Defendant Niksa also filed counter-claims against Shanair for assault and battery and for negligence. The motion and cross-motion were filed on September 26, 2006. Oral argument was heard on the outstanding motions on March 6, 2007. On March 7, 2007, with permission of the Court, counsel for defendants submitted a supplemental letter regarding Shanair's claim for excessive force against Niksa.

### II. DISCUSSION

The standards for summary judgment are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247, 106 S.Ct. 2505. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

### A. False Arrest and False Imprisonment [4]

[4]     Plaintiffs' complaint also alleges an unreasonable search and seizure in violation of plaintiffs' Fourth Amendment rights. However, the parties do not separately brief this claim and plaintiffs fail to make clear how this claim is different from their claim of false arrest. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (recognizing that a § 1983 claim for false arrest rests on the Fourth Amendment individual right to be free from unreasonable seizures). The Court finds that the unreasonable search and seizure claim, as alleged by plaintiffs, is indistinguishable from plaintiffs' false arrest claim, and thus, it is evaluated as a single Fourth Amendment claim. To the extent plaintiffs attempt to allege such a claim based on defendants' request for identification, that claim must fail, as both plaintiffs testified that they handed over their identification voluntarily. *See United States v. Springer*, 946 F.2d 1012, 1016 (2d Cir. 1991) (recognizing that where an encounter between a citizen and an officer is consensual, Fourth Amendment rights are not implicated).

2007 WL 9710294

**\*4** Defendants assert that plaintiffs' claims for false arrest and false imprisonment must be dismissed, as a matter of law, because probable cause existed for their arrest. As set forth below, the Court concludes that there is sufficient evidence in the record to create disputed issues of fact relating to the probable cause issue, which precludes summary judgment in defendants' favor on the issue of probable cause. However, for the same reason, plaintiffs' cross-motion for summary judgment is denied.

In New York, the claim colloquially known as "false arrest" is a variant of the tort of false imprisonment, and that tort is used to analyze an alleged Fourth Amendment violation in the § 1983 context. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). To prevail, a plaintiff must prove four elements: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Broughton v. New York*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (N.Y. 1975) (internal citations omitted). Here, defendants argue that plaintiffs cannot satisfy the fourth element. Specifically, defendants assert that the arrest was privileged as a matter of law because it was supported by probable cause. *Fulton v. Robinson*, 289 F.3d 188, 195 (2d. Cir. 2002) ("A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest."); *see also Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (holding that probable cause is a "complete defense to an action for false arrest"); *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986) ("[T]he common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested."); *see also Walker v. Youman*, No. 02-CV-5957 (NGG), 2006 WL 525921, at \*4 (E.D.N.Y. March 3, 2006) ("When a Section 1983 plaintiff is convicted after trial on the underlying charge, these facts alone provide sufficient evidence that probable cause existed at the time of the arrest and preclude a false arrest claim under Section 1983.") (internal citation omitted).

"When an arrest is made without a warrant and probable cause is raised as a defense, the government bears the burden to demonstrate the existence of probable cause." *Ahern v. City of Syracuse*, 411 F.Supp.2d 132, 147 (N.D.N.Y. 2006). Law enforcement officers have probable cause to arrest when "they have knowledge or reasonably trustworthy information

of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999). In evaluating whether probable cause existed, the court "consider[s] the facts available to the officer at the time of the arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996) ). Here, Tyniera was arrested and charged with the crimes of disorderly conduct [5] and resisting arrest, [6] and Shanair was arrested and charged with disorderly conduct, resisting arrest, and obstruction of governmental administration. [7]

[5]   N.Y. Penal Law § 240.20 provides:

A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:

1. He engages in fighting or in violent, tumultuous or threatening behavior; or

2. He makes unreasonable noise; or

3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or

4. Without lawful authority, he disturbs any lawful assembly or meeting of persons; or

5. He obstructs vehicular or pedestrian traffic; or

6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or

7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose.

Disorderly conduct is a violation.

[6]   N.Y. Penal Law § 205.30 provides:

A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person.

[7]   N.Y. Penal Law § 195.05 provides:

A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or

2007 WL 9710294

by means of any independently unlawful act, or by means of interfering, whether or not physical force is involved, with radio, telephone, television or other telecommunications systems owned or operated by the state, or a county, city, town, village, fire district or emergency medical service or by means of releasing a dangerous animal under circumstances evincing the actor's intent that the animal obstruct governmental administration.

**\*5** Defendants argue that the request for information from plaintiffs escalated into a full arrest situation as a result of plaintiffs' actions.[8] Specifically, defendants point to plaintiffs' depositions where Shanair admits to calling defendants "a\* \* \* \* \* \* \*," Tyniera admits to walking around the police car to pick up her phone to call her father, and Shanair admits to interfering with the officers efforts to handcuff Tyniera.

[8]   First, relying on *People v. De Bour*, 40 N.Y.2d 210, 386 N.Y.S.2d 375, 352 N.E.2d 562 (N.Y. 1976), defendants contend that they were entitled to make an inquiry in response to Shanair's use of profanity towards them. In *De Bour*, the court held that "a policeman's right to request information while discharging his law enforcement duties will hinge on the manner and intensity of the interference, the gravity of the crime involved and the circumstances attending the encounter." *Id.* at 219, 386 N.Y.S.2d 375, 352 N.E.2d 562. In *People v. Hollman*, the court clarified *De Bour*, noting that "police officers have fairly broad authority to approach individuals and ask questions relating to identity or destination, provided that the officers do not act on whim or caprice and have an articulable reason not necessarily related to criminality for making the approach." 79 N.Y.2d 181, 190, 581 N.Y.S.2d 619, 590 N.E.2d 204 (N.Y. 1992). Here, however, whether the officers' request for identification was reasonable under *De Bour* is of no consequence in the present action. The constitutionality of a request for information does not in and of itself give rise to probable cause to arrest. *Cf. People v. Martinez*, 80 N.Y.2d 444, 448, 591 N.Y.S.2d 823, 606 N.E.2d 951 (N.Y. 1992) ("Defendant had a right to refuse to respond to a police inquiry and his flight when the officers approached could not, in and of itself, create a reasonable suspicion of criminal

activity."); *People v. May*, 81 N.Y.2d 725, 593 N.Y.S.2d 760, 609 N.E.2d 113 (N.Y. 1992) ("The police may not forcibly detain civilians in order to question them ... without a reasonable suspicion of criminal activity."). Under plaintiffs' version of the events, regardless of whether defendants were entitled to request their identification, a rational jury could find that defendants lacked probable cause for the actual arrest. Accordingly, defendants' argument, that the ability to make a *De Bour* type inquiry provides the foundation for probable cause to arrest in the instant case as a matter of law, is unfounded.

To prove the crime of disorderly conduct under N.Y. Pen. L. § 240.20, a prosecutor must prove the following three elements:

(i) the defendant's conduct must be "public" in nature, (ii) it must be done with "intent to cause public inconvenience, annoyance or alarm" or with recklessness as to "a risk thereof," and (iii) it must match at least one of the descriptions set forth in the statute.

*Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001). " 'The clear aim [of the New York disorderly conduct statute] was to reserve the disorderly conduct statute for situations that carry beyond the concern of individual disputants to a point where they ... become a potential or immediate public problem.' " *Id.* (quoting *People v. Munafo*, 50 N.Y.2d 326, 331, 428 N.Y.S.2d 924, 406 N.E.2d 780 (N.Y. 1980) ). The statute also requires intent—i.e., " 'intent to cause public inconvenience, annoyance or alarm' or with recklessness 'creating a risk thereof.' " *Provost*, 262 F.3d at 158. (quoting N.Y. Penal Law § 240.20). Other factors to consider include whether the individual's conduct annoyed others, whether the individual persisted in the conduct after warnings by the police or others, whether the conduct created at least a risk that disorder might occur as a result, and whether the conduct occurred in a public location. *People v. Dennis*, 13 Misc.3d 41, 42, 823 N.Y.S.2d 830, 832 (N.Y. App. Div. 2006) (citing *People v. Maher*, 137 Misc.2d 162, 520 N.Y.S.2d 309 (N.Y. Crim. Ct. 1987), *aff'd*, 142 Misc.2d 977, 543 N.Y.S.2d 892, *lv denied* 74 N.Y.2d 794, 545 N.Y.S.2d 555, 544 N.E.2d 233 (N.Y. 1989) ).

**\*6** Here, the undisputed facts show that Shanair called the officers "a\* \* \* \* \* \* \*" through the open window of their vehicle. The officers made a u-turn and came back to where plaintiffs were standing to speak to them. Defendants sought identification and plaintiffs complied. A crowd of people

Case 6:24-cv-00085-DNH-TWD   Document 4   Filed 03/12/24   Page 53 of 73

Hogan v. City of New York, Not Reported in Fed. Supp. (2007)

2007 WL 9710294

started to gather around the plaintiffs and, after Niksa placed Tyniera's identification in his pocket, she began to walk away from the officers and make a cell phone call.

According to defendants, however, plaintiffs began to curse and yell at defendants as soon as defendants approached them, and plaintiffs attempted to get the attention of the crowd. (Hogan Aff. ¶ 5; Niksa Aff. ¶ 4.) Defendants further assert that plaintiffs continued to curse when identification was requested. (*Id.* ¶ 7.) Both officers stated that what they intended as a routine disorderly summons procedure turned into a full arrest due to the conduct of plaintiffs. (*Id.*; Niksa Aff. ¶ 7.) According to Niksa, Tyniera "went off" when he put her identification into his pocket and that she walked away, talking in a loud voice on her cell phone, and refused to stop. (Niksa Aff. ¶ 8.) At that point, the officers arrested Tyniera. (Hogan ¶ 10.) Shanair was then arrested after she locked her arm in her sisters, and, according to defendants, she grabbed Niksa's arm and back, causing a struggle to ensue. (Hogan Aff. ¶ 11.)

According to plaintiffs, after defendants sought identification from Shanair, Tyniera asked, "What did we do?" (Tyniera Dep. at 75.) Tyniera asserts that there was no further conversation before Niksa put Tyniera's identification in his pocket and told Higgins to cuff her and place her under arrest. (*Id.* at 76.) According to Tyniera, she responded, "You can't arrest me. I didn't do anything. What did I do?" and picked up her cell phone to call her father and started to walk in a circle. (*Id.* at 76-82.) Shanair stated that Tyniera was crying and Shanair stood next to her sister and put her arm in her sister's. (Shanair Dep. at 112-113.) Shanair also stated that she did not touch Niksa at any point. (*Id.* at 116.)

Under plaintiffs' version of the facts, a rational jury could conclude that defendants did not have probable cause to arrest plaintiffs for disorderly conduct. First, if plaintiffs' testimony is fully credited, there would be no basis for the officers to conclude that the intent element—i.e., "intent to cause public inconvenience, annoyance, or alarm" (N.Y. Penal Law. § 240.20)—was satisfied. Second, even if defendants reasonably concluded that there was probable cause to believe plaintiffs intended to cause public harm, defendants also would have to possess probable cause to believe that plaintiffs' conduct satisfied one of the statutory provisions. Given plaintiffs' version of the events, there is no evidence that plaintiffs conduct amounted to conduct described in any of the provisions listed in N.Y. Penal Law § 240.20. Therefore, viewing the evidence in a light most favorable to

plaintiffs, a rational jury could conclude that there was no probable cause to arrest plaintiffs for disorderly conduct.

Defendants also argue that plaintiffs' efforts to avoid being handcuffed provided probable cause for their arrest. However, the parties provide radically different versions of the events surrounding the arrest. According to plaintiffs, Tyniera did not resist arrest, and Shanair merely locked arms with her sister. According to defendants, Shanair was on Niksa's back and both plaintiffs were kicking him. Because these facts are disputed, the Court must deny the cross-motions for summary judgment.

**\*7** Furthermore, the resisting arrest statute provides: "[a] person is guilty ... when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an *authorized* arrest of himself or another person." N.Y. Penal Law § 205.30 (emphasis added). The Second Circuit has recognized that

> [t]here are thus at least two essential elements of a charge for resisting arrest under New York law: (1) the person charged must have intentionally attempted to prevent the arrest of himself or someone else, and (2) the arrest he attempted to prevent must itself have been supported by a warrant or by probable cause.

*Curry v. City of Syracuse*, 316 F.3d 324, 336 (2d Cir. 2003). Even assuming *arguendo* there was no dispute that plaintiffs attempted to prevent the arrests in the instant case, genuine issues of material fact exist as to whether the arrests were authorized. *See id.* Accordingly, even if Shanair attempted to prevent the officers from effectuating the arrest when she locked arms with her sister, as stated above, a rational jury could find that there was no reason to believe the arrest of Tyniera was authorized, thus invalidating probable cause for resisting arrest.[9] *See, e.g., People v. Dennis*, 13 Misc.3d 41, 42, 823 N.Y.S.2d 830, 832 (N.Y. App. Div. 2006) ("Since ... the arresting officer lacked any basis to conclude that defendant committed the offense of disorderly conduct, defendant's arrest on said charge was not authorized. Thus, the trial evidence ... failed to establish the elements of resisting arrest."); *People v. Jensen*, 86 N.Y.2d 248, 253, 630 N.Y.S.2d 989, 654 N.E.2d 1237 (N.Y. 1995) ("[The] key

Case 6:24-cv-00085-DNH-TWD   Document 4   Filed 03/12/24   Page 54 of 73

Hogan v. City of New York, Not Reported in Fed. Supp. (2007)

2007 WL 9710294

element of resisting arrest is the existence of an authorized arrest, including a finding that the arrest was premised on probable cause.").

9        This same reasoning applies to the charge of obstructing governmental administration. The elements of that charge are: "(1) prevention or attempt to prevent (2) a public servant from performing (3) an official function (4) by means of intimidation, force or interference." *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995). Furthermore, "New York courts have ... held that the official function being performed must be one that was 'authorized by law.' " *Id.* (quoting *In re Verna C.*, 143 A.D.2d 94, 531 N.Y.S.2d 344, 345 (N.Y. App. Div. 1988) ). As stated above, given the need to show the function was "authorized by law," a reasonable jury could find that defendants lacked probable cause for the arrest on this charge, and, thus, summary judgment is unwarranted.

Defendants argue that even if a reasonable jury could find that defendants lacked probable cause, they are entitled to qualified immunity on the false arrest claim. A government actor may be shielded from liability for civil damages if "his conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). "The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). Even in the absence of probable cause to arrest, defendants may be entitled to qualified immunity "if [they] can show either that: (1) it was objectively reasonable for [them] to believe [they] had probable cause; or (2) officers of reasonable competence could disagree whether probable cause existed." *Cook v. Sheldon*, 41 F.3d 73, 38 (2d Cir. 1994) (citations omitted); *see also O'Neill v. Town of Babylon*, 986 F.2d 646, 649-50 (2d Cir. 1993); *Lennon v. Miller*, 66 F.3d 416, 424-25 (2d Cir. 1995); *Golino*, 950 F.2d at 870.

**\*8** The key questions are whether reasonable officers could disagree that plaintiffs intended to cause public harm, or whether reasonable officers could disagree that plaintiffs were attempting to prevent an "authorized" arrest. *Lennon*, 66 F.3d at 424. As discussed *supra*, under plaintiffs' version of events, they fully complied at all times with the defendants' requests, even though they argue that there was no basis for defendants' investigation. If the Court credits plaintiffs'

version, as it must on defendants' motion for summary judgment, the Court cannot say that the officers' conduct was objectively reasonable or that officers of reasonable competence could disagree as to whether probable cause existed for disorderly conduct or resisting arrest. Thus, where as here the reasonableness of defendants' conduct depends on which version of disputed facts is to be believed, qualified immunity cannot be determined at the summary judgment stage. *See Weyant*, 101 F.3d at 858; *see also Bradley v. City of New York*, No. 04-CV-8411 (RWS), 2007 WL 232945, at *10, 2007 U.S. Dist. LEXIS 7811, at *28 (S.D.N.Y. Jan. 25, 2007) (holding that defendants were not entitled to qualified immunity on a false arrest claim at the summary judgment stage where "the factual circumstances surrounding Plaintiff's arrest are in dispute and are material to a determination of the reasonableness of Defendants' actions."); *Diodati v. City of Little Falls*, No. 04-CV-446 (FJS), 2007 WL 189130, at *3 (N.D.N.Y. Jan. 22, 2007) (denying summary judgment where the Court found that "the reasonableness of [defendants'] beliefs regarding probable cause for Plaintiff's arrest depends on whether the Court credits Plaintiff's or Defendants' version of sharply disputed facts."). In sum, defendants' motion for summary judgment on the false arrest claim is denied. However, for the same reasons, plaintiffs' motion must also fail, because, crediting defendants' version of the events and viewing the evidence in a light most favorable to defendants, the Court cannot conclude as a matter of law that defendants lacked probable cause.

B. Malicious Prosecution [10]

10        At oral argument, counsel for plaintiff clarified that plaintiffs are pursuing the malicious prosecution claim only as against Higgins.

Plaintiffs and defendant Higgins both argue that they are entitled to summary judgment on the malicious prosecution claims. As set forth below, the Court disagrees.

To state a claim of malicious prosecution pursuant to 42 U.S.C. § 1983, a plaintiff must demonstrate that (1) the defendant commenced or continued a criminal proceeding against the plaintiff; (2) the proceeding terminated in plaintiff's favor; (3) there was no probable cause for the criminal proceeding; and (4) the defendant initiated the criminal proceeding out of actual malice. *DiBlasio v. City of New York*, 102 F.3d 654, 657 (2d Cir. 1996).

Hogan v. City of New York, Not Reported in Fed. Supp. (2007)

2007 WL 9710294

Defendants argue that plaintiffs cannot establish that Higgins initiated the criminal proceeding, lacked probable cause, or acted maliciously. As to the first element, New York Criminal Procedure Law provides that "[a] criminal action is commenced by the filing of an accusatory instrument with a criminal court." N.Y. Crim. Proc. § 100.05 (McKinney 2004). Here, Higgins drafted and filed the criminal court complaints. Accordingly, the Court finds that Higgins initiated the proceedings against plaintiffs.

With respect to the third element, as the Court concludes *supra*, there are issues of fact as to whether defendants had probable cause to arrest plaintiffs. Therefore, the Court cannot grant summary judgement to either party based on the alleged existence, or lack, of probable cause as a matter of law.

Finally, to support a claim of malicious prosecution, plaintiffs must demonstrate malice. Though lack of probable cause and malice are two distinct elements of a malicious prosecution claim, where defendants lack probable cause, a jury may infer malice. *See Lowth*, 82 F.3d at 573 ("In most cases, the lack of probable cause—while not dispositive—tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.") (citation and internal quotation marks omitted); *Mesiti v. Wegman*, 307 A.D.2d 339, 763 N.Y.S.2d 67, 70 (N.Y. App. Div. 2003) ("[T]he jury was able to 'infer the existence of actual malice from the fact that there was no probable cause to initiate the proceeding.") (citing *Martin*, 396 N.Y.S.2d at 615, 364 N.E.2d 1304). Thus, the Court cannot conclude as a matter of law that Higgins lacked malice in initiating the proceedings against plaintiffs. Accordingly, because there are issues of fact regarding the probable cause and malice determination, the Court cannot grant summary judgment on the malicious prosecution claim for plaintiffs or defendants.

Higgins would still be entitled to summary judgment on the malicious prosecution claim based on qualified immunity if he could put forth undisputed evidence establishing either that it was objectively reasonable to believe that probable cause existed or if reasonable officers could disagree as to the existence of probable cause. As stated *supra*, this Court cannot conclude that reasonable officers would disagree about the existence of probable cause, or that Higgins belief was objectively reasonable, under plaintiffs' version of events. Accordingly, the Court cannot conclude that Higgins is entitled to qualified immunity on this claim at this stage.

### C. Excessive Force [11]

[11]    At oral argument, counsel for plaintiffs stipulated to the dismissal of Tyniera's excessive force claim and both plaintiffs' excessive force claims against Higgins. Accordingly, the only remaining excessive force claim is Shanair's claim against Niksa.

**\*9** Both sides move for summary judgment on the excessive force claim. However, as set forth below, the disputed issues of fact regarding what transpired at the time of the arrest preclude summary judgment in favor of either side. A police officer's use of force is excessive in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.' " *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ). More specifically, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (citations and internal quotations omitted).

Physical force is often necessary when effectuating arrests or executing search warrants and, thus, "not every push or shove" is unconstitutionally excessive, "even if it may later seem unnecessary in the peace of a judge's chambers." *Maxwell*, 380 F.3d at 108 (citation and internal quotation marks omitted). The analysis involves an inquiry into the totality of the circumstances, "including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000) (citations omitted). "Officers may not ... gratuitously inflict pain in a manner that is not a reasonable response to the circumstances." *Diaz v. City of New York*, No. 00-CV-2944 (JMA), 2006 WL 3833164, at *6, 2006 U.S. Dist. LEXIS 93923 at *18 (E.D.N.Y. Dec. 29, 2006) (citing *Amnesty Am.*, 361 F.3d at 124). However, "the reasonableness inquiry does not allow [the court] to substitute [its] own viewpoint; [the court] must judge the officer's actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' " *Papineau v. Parmley*, 465 F.3d 46, 61

Case 6:24-cv-00085-DNH-TWD   Document 4   Filed 03/12/24   Page 56 of 73

Hogan v. City of New York, Not Reported in Fed. Supp. (2007)

2007 WL 9710294

(2d Cir. 2006) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865).

Defendants argue that any force used against Shanair was reasonable and that the injuries sustained were *de minimis*. The Court recognizes that there may be certain circumstances where the alleged unconstitutional act and injury are so *de minimis* that the act cannot rise to a constitutional violation as a matter of law. *See, e.g., Vogeler v. Colbath*, No. 04-CV-6071 (LMS), 2005 WL 2482549, at *11 (S.D.N.Y. Oct. 6, 2005) (granting summary judgment for defendant where plaintiffs failed to demonstrate that the alleged action by the police officer "was any more than *de minimis* force exerted during the course of an arrest following the raid of a suspected drug trafficking locale"); *Johnson v. Police Officer #17969*, No. 99-CV-3964 (NRB), 2000 WL 1877090, at *5 (S.D.N.Y. Dec. 27, 2000) (dismissing excessive force claim based on admission that plaintiff resisted arrest and only minor injuries); *cf. Tierney*, 133 F.3d at 199 (finding qualified immunity existed for excessive force claim under Due Process Clause, where the claim was related to police conduct toward individuals present during execution of asearch, because the force used "was *de minimis*, necessary, appropriate, and benign"); *Griffen v. Crippen*, 193 F.3d 89, 92 (2d Cir. 1999) (noting, in addressing excessive force claim under the Eighth Amendment, that "*de minimis* uses of force generally do not suffice to state a constitutional claim"). However, a plaintiff need not sustain severe injury to maintain a claim that the use of force was objectively unreasonable under the Fourth Amendment. *See Maxwell*, 380 F.3d at 108 ("[W]e have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising.") (citing *Robison v. Via*, 821 F.2d 913, 924-25 (2d Cir. 1987) ); *see also Hayes v. New York City Police Dep't*, 212 Fed.Appx. 60, 62 (2d Cir. 2007) (summary order) (citing *Maxwell* and noting that "we have permitted claims to survive summary judgment where the only injury alleged is bruising"); *Robison*, 821 F.2d at 924 ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."). Here, the Court declines to hold as a matter of law that the use of force and the injuries alleged by Shanair fall into the *de minimis* category.

**\*10** Shanair testified that she was elbowed in the mouth by Niksa, fell to the ground, and knocked unconscious. (Shanair Dep. at 226-27.) There is an issue of fact as to whether Shanair was on Niksa's back, scratching and kicking him, or whether she was merely standing next to her sister, with her arm locked in her sister's, when she was struck. Assuming plaintiffs' version of the facts were credited by the jury, the Court cannot say as a matter of law, that no reasonable jury would find that, in light of the circumstances as a whole, elbowing Shanair in the mouth with such force as to render her unconscious as she alleges, was objectively reasonable. The Court is also unpersuaded that there is no issue of fact as to whether the force used against Shanair was only that which was necessary to effectuate the arrest of Tyniera. Defendants attempt to have this Court infer from portions of Shanair's testimony that the force used was a result of Shanair's interference with the arrest. However, contrary to defense counsel's assertion at oral argument, the portions of Shanair's testimony highlighted by counsel are not an admission by Shanair that she was crawling on Niksa's back. Rather, the testimony indicates that she was holding Tyniera's arm and was elbowed in the mouth by Niksa. Whether Niksa's use of his elbow was an intentional use of force to remove Shanair from Tyniera's arm or whether the use of force occurred inadvertently as a result of Shanair's close proximity during the effectuation of Tyniera's arrest, is a matter for the jury to decide. Accordingly, Niksa's motion for summary judgment on Shanair's excessive force claim is denied.[12]

[12]   In further support of their excessive force claims, plaintiffs rely on *Atkins v. City of New York*, 143 F.3d 100 (2d Cir. 1998) for the proposition that any force is excessive when the underlying arrest is illegal. However, contrary to plaintiffs assertion, *Atkins* did not announce such a standard. The Second Circuit recently clarified in *Papineau* that

[t]he *Atkins* court clearly did not intend to create or substitute a new standard for arrests lacking probable cause, and the reasonableness test established in *Graham* remains the applicable test for determining when excessive force has been used, including those cases where officers allegedly lack probable cause to arrest.

*Papineau*, 465 F.3d at 62. Therefore, this Court declines to hold Niksa liable for the claims of excessive force under the *per se* standard put forth by plaintiffs. For the same reasons there are disputed issues of fact precluding summary judgment for Niksa, Shanair's motion for summary judgment against Niksa on the excessive force claim must also be denied.

Case 6:24-cv-00085-DNH-TWD   Document 4   Filed 03/12/24   Page 57 of 73

Hogan v. City of New York, Not Reported in Fed. Supp. (2007)

2007 WL 9710294

Defendants further argue that Niksa is entitled to qualified immunity on the excessive force claims. However, given the issues of fact surrounding the incident, the Court cannot conclude that Niksa is entitled to qualified immunity. Assuming plaintiffs' version of the events are true, it cannot be said as a matter of law that it was objectively reasonable or that reasonable officers could disagree as to whether it was necessary to elbow Shanair with such force for putting her arm inside her sister's, given the alleged crimes at issue, that she fell to the ground unconscious.

### D. First Amendment Claim

Plaintiffs also assert First Amendment claims. Shanair's claim is based on her use of the word "a * * * * * * *" in response to the actions of the officers while driving the vehicle, and the resulting demand for identification and questioning. Tyniera's claim is based on her questioning of the officers as to why identification was required, and the resulting arrest. "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right,' and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 126 S.Ct. 1695, 1701, 164 L.Ed.2d 441 (2006) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) ) (internal citation omitted). In order to establish a First Amendment retaliation claim under § 1983, a plaintiff must prove that "(1) he has an interest protected by the First Amendment; (2) defendant's actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." [13] *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (citing *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998) ). In cases such as this, however, where the claim is official retaliation in response to a private individual's speech, *i.e.*, there is an alleged lack of probable cause, plaintiffs "must show that [their] activity was protected by the First Amendment and that the defendant's conduct complained of was in response to that protected activity." *Posr*, 180 F.3d at 418. The Supreme Court recently stated, "when nonretaliatory grounds are in fact insufficient to provoke the adverse consequences, we have held that retaliation is subject to recovery as the but-for cause of official action offending the Constitution." *Hartman*, 126 S.Ct. at 1701.

[13]   Some courts have found, since *Hartman*, that if a plaintiff demonstrates a lack of probable cause, there is no separate chilling requirement in a retaliatory prosecution action. *See, e.g., Bradley*, 2007 WL 232945, at *8, 2007 U.S. Dist. LEXIS 7811, at *21 ("Plaintiff must demonstrate that the prosecution was not supported by probable cause, but need not show a chilling effect.") (citing *Hartman*, 126 S.Ct. at 1695). The Court need not address the issue in the instant case because defendants' motion for summary judgment is based on their belief that probable cause existed for the arrests, rather than the absence of a chilling effect. In any event, even if such a showing were required, there is sufficient evidence in the record from which a finding of "chilling" could be made, thereby precluding summary judgment.

*11 Here, both Shanair's and Tyniera's statements constitute protected speech. "[O]nly 'fighting words' directed at police officers can be criminalized," and there is no suggestion by either side that either plaintiff used "fighting words" against defendants. *Provost*, 262 F.3d at 159. "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *Posr*, 180 F.3d at 415 (quoting *City of Houston v. Hill*, 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) ). Though one may view the use of a profanity directed towards officers and/or the second-guessing of an officer's decision to request information as intended to induce a reaction from the officers, "[p]rovocative" speech directed at police officers is "protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Id.* (citing *City of Houston*, 482 U.S. at 461, 107 S.Ct. 2502) (quoting *Terminiello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949) ); *see also Buffkins v. City of Omaha*, 922 F.2d 465, 472 (8th Cir. 1990) (holding that the district court should have found as a matter of law that the use of profanity directed at police officers does not constitute fighting words); *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990) (stating that arrest for an obscene gesture toward officer would be a "serious First Amendment violation"); *Smith v. Metro North Commuter R.R.*, No. 98-CV-2528 (RWS), 2000 WL 1449865, at *5, 2000 U.S. Dist. LEXIS 14168, *15-*16 (S.D.N.Y. Sept. 29, 2000) (holding that questioning officers as to why plaintiff was " 'getting kicked off the train,' even if utterred in an aggressive tone, was clearly protected by the First Amendment"). Here there is no evidence that either Shanair's

Case 6:24-cv-00085-DNH-TWD   Document 4   Filed 03/12/24   Page 58 of 73

Hogan v. City of New York, Not Reported in Fed. Supp. (2007)

2007 WL 9710294

or Tyniera's statements were likely to produce such a danger or create public upheaval.

With respect to the second element, the Second Circuit has held that "[s]pecific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim." *Curley*, 268 F.3d at 73 (citing *Blue v. Koren*, 72 F.3d 1075, 1082-83 (2d Cir. 1995) (requiring plaintiff to provide "specific allegations or direct evidence of the required state of mind in order to avoid summary judgment based on the defense of qualified immunity") ); *Blue*, 72 F.3d at 1082-83 (requiring plaintiff to proivde "specific allegations of direct evidence of the required state of mind in order to avoid summary judgment based on the defense of qualified immunity"); *see also Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994) ("While a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred."). Specifically, "the plaintiff must proffer particularized evidence of direct or circumstantial facts ... supporting the claim of an improper motive in order to avoid summary judgment." *Blue*, 72 F.3d at 1084 (citing *Siegert*, 500 U.S. at 236, 111 S.Ct. 1789 (Kennedy, J., concurring) ). Where probable cause for the arrest is found, the analysis stops and the court need not inquire into the underlying motive. *Curley*, 268 F.3d at 73 (stating that where officers "had probable cause to arrest plaintiff, an inquiry into the underlying motive for the arrest need not be undertaken") (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995 and *Mozzochi v. Borden*, 959 F.2d 1174, 1179-80 (2d Cir. 1992) ) ); *see also Hartman*, 136 S.Ct. at 1707 (holding, in retaliatory prosecution context, that "[b]ecause showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added cost, it makes sense to require such a showing as an element of a plaintiff's case, and we hold that it must be pleaded and proven"). Defendants argue that the existence of probable cause requires the dismissal of plaintiffs' claims. However, as stated *supra*, the Court cannot conclude as a matter of law that defendants had probable cause to arrest plaintiffs.

Defendants' related argument, that they are entitled to summary judgment because defendants were not motivated to arrest because of plaintiffs' speech, is similarly unavailing. Defendants do not argue that something other than the use of profanity by Shanair motivated them to seek identification from plaintiffs. However, defendants claim it was the

subsequent conduct by plaintiffs, rather than the profanity or later remarks during the provision of identification, that led to the arrest. Under the circumstances of this case, this issue cannot be resolved by summary judgment. "[T]he close temporal proximity between [p]laintiffs' comments and [d]efendants' adverse actions against [p]laintiffs constitutes circumstantial evidence based on which a reasonable fact-finder could infer that the actions at issue were in response to and motivated by [p]laintiffs' protected speech." *Webster v. City of New York*, 333 F.Supp.2d 184, 202 (S.D.N.Y. 2004) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (observing that the temporal proximity between an inmate's lawsuit and the disciplinary action taken against him "may serve as circumstantial evidence of retaliation") ). Both plaintiffs testified that the officers sought and pocketed their identification in response to Shanair's use of the profanity and that Tyniera was arrested for questioning the officers as to what they did. (Tyniera Dep. at 74-75.) Given this sequence of events, and the issue of fact as to the existence of probable cause, a reasonable jury could find that defendants' actions were motivated by plaintiffs' speech.

**\*12** Defendants are also not entitled to qualified immunity on the First Amendment claim.[14] The facts, as alleged by plaintiffs, "demonstrate that defendants violated plaintiffs' clearly established First Amendment rights, 'of which a reasonable person would have known.' " *Papineau*, 465 F.3d at 61 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ). More specifically, according to the facts as alleged by plaintiffs, plaintiffs were arrested for their constitutionally protected speech. Based on plaintiffs' version of events, the Court cannot conclude as a matter of law that reasonable officers could disagree as to whether defendants violated plaintiffs clearly established rights. Accordingly, defendants are not entitled to qualified immunity at the summary judgment stage on this claim and their motion for summary judgment is denied.

14    It is unclear whether defendants even attempt to assert a qualified immunity defense on the First Amendment claim. Defendants argue that they are entitled to qualified immunity on the false arrest and imprisonment, search and seizure, malicious prosecution and excessive force claims and then state, that "[b]y extension, [plaintiffs] First Amendment claim[s] are an outgrowth of their Fourth Amendment claims, and if the Fourth Amendment claims fail, so must the First Amendment claims." (Defs.' Mem. at 24.) In any

Hogan v. City of New York, Not Reported in Fed. Supp. (2007)

2007 WL 9710294

event, the Court shall address whether defendants are entitled to qualified immunity on this claim.

Plaintiffs' motion for summary judgment on this claim must also be denied. Given defendants' version of the events as noted above, a reasonable jury could find that plaintiffs were properly arrested for disorderly conduct and not in retaliation for their speech.

### E. Niksa's Counterclaims

Shanair also moves for summary judgment on the state law counterclaims of assault, battery, and negligence, asserted by Niksa. [15] According to Niksa, Shaniar grabbed his right arm, kicked defendant, jumped on his back and scratched his arm when he attempted to arrest Tyniera. (Niksa Aff. ¶ 9.) He stated that this resulted in deep scratches to his right arm and that he was bleeding. (*Id.* ¶ 11.) Niksa went to Mary Immaculate Hospital for treatment where he was treated in the emergency room for cuts and scratches to his right arm and for pain in his legs. (*Id.* ¶ 12.) As explained more fully above with respect to plaintiffs' claims, the existence of issues of fact prevents this Court from granting plaintiffs'

motion for summary judgment on the counterclaims of assault and battery. Accordingly, plaintiffs' motion for summary judgment on Niksa's counterclaims is denied.

[15]    New York law allows police officers to pursue claims of negligence, assault and battery. *See, e.g.,* N.Y. Gen. Oblig. § 11-106; *Phalen v. Kane,* 192 A.D.2d 186, 600 N.Y.S.2d 988, 989 (holding that police officers may recover damages for assault and battery).

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is DENIED as to all of plaintiffs' claims. Plaintiffs' motion for summary judgment on all of plaintiffs' claims and on defendant Niksa's counterclaims is also DENIED.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2007 WL 9710294

---

**End of Document** 

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 3857995

2019 WL 3857995
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Nakia CHANEY, Plaintiff,

v.

CITY OF ALBANY, Albany Police Department,
Steven Krokoff, Scott Gavigan (Badge #1826), Richard
Gorleski (Badge #2232), Daniel Kuhn (Badge #1952),
Kevin Meehan (Badge #2407), John Doe (Badge #889),
Brian Kisling, Matthew Staley, Daniel James, Jason
Wilson, Seeber, Schenectady County, Schenectady
County Jail, Anthony Sinatra (Badge #270), Joseph
Glasser (Badge #065), Kris Van Hoesen (Badge #291),
Ernie Reaulo (Badge #24), Unknown John Does From
Schenectady Sheriff, Unknown John Does From
Schenectady County Jail, and Alan Bell, Defendants.

6:16-CV-1185 (NAM/TWD)
|
Signed 08/16/2019

**Attorneys and Law Firms**

Nakia Chaney, Schenectady, New York 13206, Plaintiff Pro
Se.

The Rehfuss Law Firm, P.C., Stephen J. Rehfuss, Esq.,
Abigail W. Rehfuss, Esq., 40 British American Blvd.,
Latham, New York 12110, Attorneys for Defendants City of
Albany, Krokoff, Gavigan, Gorleski, Kuhn, Meehan, Kisling,
Wilson, Seeber, Staley, James.

Burke, Scolamiero, Mortati & Hurd LLP, Judith B. Aumand,
Esq., 7 Washington Square, Albany, New York 12212,
Attorney for Defendant Alan Bell.

Goldberg Segalla, LLP, James F. Faucher, II, Esq., Jonathan
M. Bernstein, Esq., 8 Southwoods Blvd., Suite 300, Albany,
New York 12211, Attorneys for Defendants Schenectady
County, Reaulo, Sinatra, Vanhoesen, Glasser.

**MEMORANDUM-DECISION AND ORDER**

Hon. Norman A. Mordue, Senior District Court Judge:

**I. INTRODUCTION**

**\*1** Plaintiff *pro se* Nakia Chaney ("Plaintiff") brings this
action under 42 U.S.C. § 1983 alleging various claims
arising out of encounters with the Defendant law enforcement
officers. (Dkt. No. 1). Currently before the Court are
Defendants' motions for summary judgment, (Dkt. Nos. 165,
167, 168), which Plaintiff has opposed, (Dkt. No. 176, 177,
178). For the reasons that follow, Defendants' motions are
granted in part and denied in part.

**II. BACKGROUND**

**A. Procedural History**

Plaintiff commenced this action on September 30, 2016,
asserting at least nine claims for alleged violations
of his constitutional rights by known and unknown
individuals. (Dkt. No. 1). Specifically, Plaintiff first
alleges that Defendants Schenectady County, Schenectady
County Sheriff's Department, Schenectady County Jail, and
Officers Sinatra, Glasser, Van Hoesen, Reaulo, and other
unknown John Does (collectively, the "Schenectady County
Defendants") conducted "unlawful [ ] visual body cavity
searches" on Plaintiff's person prior to his admission to
Schenectady County Jail in 2013 and 2014. (*Id.*, p. 22). [1]
Plaintiff also alleges that on December 28, 2013, Defendant
Glasser used "excessive force [by] unlawfully tasering
plaintiff while [in] handcuffs...." (*Id.*, p. 23). Defendant
further claims that the Schenectady County Defendants
unlawfully denied him medical care immediately following
the December 28th incident. (*Id.*, p. 7).

[1]    All citations to documents in the record reference
       the page numbers identified on the CM/ECF page
       stamp.

Plaintiff claims that the Albany Police Department ("APD"),
Police Chief Steven Krokoff, and Officers Gavigan, Gorleski,
Kuhn, Meehan, Kisling, Staley, James, Wilson and Seeber
(collectively the "Albany Defendants") conducted "unlawful
[ ] visual body cavity searches" on Plaintiff's person at the
Albany police station. (Dkt. No. 1, p. 22). Plaintiff further
alleges that the Albany Defendants violated his constitutional
rights in August 2014 and October 2014 for separate incidents
involving alleged "unlawful gun point stop[s], arrest or
frisk, forcible touching [ ], sexual assault, excessive force,
and abuse of legal process." (*Id.*). Plaintiff claims that the
Albany Defendants violated his right to privacy through

Case 6:24-cv-00085-DNH-TWD   Document 4   Filed 03/12/24   Page 61 of 73

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

their unlawful touching of his "private parts" during several alleged strip searches. (*Id.*, p. 23).

Finally, Plaintiff alleges that Defendant Alan Bell of the Niskayuna Police Department, along with Defendant Gavigan, conducted "unlawful [GPS] tracking of [Plaintiff's] every move for over 9 months without a warrant...." (Dkt. No. 1, pp. 10, 23). Specifically, Plaintiff claims that Defendant Bell "requested [that] [D]efendant Scott Gavigan use the unlawful GPS tracking device," and "controlled the GPS device in the Town of Niskayuna [while] Defendant Scott Gavigan covered the GPS device for the Albany Police without a warrant [ ] or probable cause." (*Id.*, p. 10).

In November 2017, the Court granted the Albany County Defendants' motion for judgment on the pleadings, dismissing them from this action. (Dkt. No. 110, pp. 7–8). In that same order, the Court denied Defendant Alan Bell's motion to dismiss. (*Id.*, pp. 11–14). On December 15, 2017, the Court granted Plaintiff's motion to substitute Joseph Glasser for Defendant Schenectady County Sheriff Badge #SCP 065; and granted Plaintiff's motion to substitute APD Officers Daniel Kuhn, Brian J. Kisling, Jason A. Wilson, Seeber, Matthew Staley, and Daniel James for "Defendant John Does Albany Police." (*See* Dkt. No. 111).

**B. Record Before the Court** [2]

[2]   The discovery deadline expired on November 30, 2018. Defendants deposed Plaintiff on July 31, 2018. (*See* Dkt. No. 165-28). Plaintiff did not depose any of the Defendants.

**\*2**  While the Court "is not required to consider what the parties fail to point out," in deference to Plaintiff's *pro se* status and out of an abundance of caution, the Court has nevertheless conducted "an assiduous review of the record" to determine whether there is evidence that might support any of Plaintiff's claims. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). The Court has construed the following undisputed facts in the light most favorable to the Plaintiff.

**1. December 28, 2013 Arrest**

On December 28, 2013, Plaintiff was a passenger in a vehicle driven by Lorenzo McGill. (Dkt. No. 165-28, p. 114). McGill led police on a high-speed chase after he was observed

driving without headlights. (*Id. see also* Dkt. No. 165-29, ¶ 4). The chase ended at 767 Westmoreland Drive in the Town of Niskayuna, where Plaintiff lived at the time. (Dkt. No. 165-28, pp. 117, 123). There, Plaintiff was involved in a brief struggle with Schenectady County Sheriff's Deputy Glasser, who used a taser to subdue Plaintiff. (Dkt. No. 165-29, ¶ 4). Plaintiff appeared in court and was released on bail that same night. (Dkt. No. 165-28, p. 125). Plaintiff did not receive medical treatment for any injuries while in police custody, nor did he seek medical treatment following his release. (*Id.*, pp. 127–28). Plaintiff was later charged with obstructing governmental administration and resisting arrest; he pled guilty to disorderly conduct in full satisfaction of those charges. (Dkt. No. 165-28, p. 116; Dkt. No. 165-29, ¶ 9; *see also* Dkt. No. 165-36, pp. 3–4; Dkt. No. 165-37, p. 2).

**2. August 14, 2014 Arrest**

On August 14, 2014, Plaintiff was a passenger in a vehicle driven by his friend, Jonathan Smith. (Dkt. No. 165-28, p. 25). APD officers stopped the vehicle after Smith failed to use a turn signal. (Dkt. No. 167-2, p. 4). The police report states that APD officers then observed Smith throw three glassine envelopes, each containing a quantity of heroin, out of the vehicle. (*Id.*). Smith was arrested and charged with criminal possession of a controlled substance and criminal possession of a hypodermic instrument. (*Id.*). Plaintiff was not charged with any crime, and he was released from the scene. (Dkt. No. 165-28, p. 45).

**3. October 13, 2014 Arrest**

On October 13, 2014, APD Officer Gavigan received information from a confidential informant that Plaintiff and the informant would be transporting heroin to the Albany area from New Jersey. (Dkt. No. 167-2, p. 93). When Plaintiff and the informant exited the highway in Albany, APD officers stopped the vehicle and ordered Plaintiff to show his hands and exit the vehicle. (*Id.*, pp. 93–94). The Arrest Report indicates that APD recovered 198 glassine envelopes from the left pocket of Plaintiff's coat located in the trunk of the vehicle. (*Id.*, p. 6). Each envelope contained a quantity of heroin, with an aggregate weight of 4 grams. (*Id.*). Plaintiff was later charged with and convicted of Criminal Possession of a Controlled Substance in the Third Degree in violation of Penal Law § 220.16(1). (Dkt. No. 167-2, p. 7).

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

**4. Visual Body Cavity Searches**

In 2014, Plaintiff was convicted of drug crimes in Niskayuna Town Court based on activities unrelated to this action. (Dkt. No. 165-28, p. 46). Plaintiff was sentenced to serve 30 consecutive four-day weekends in Schenectady County Jail. (*Id.*). While serving that sentence, Plaintiff was required to submit to a "visual body cavity search" before each admission to the Schenectady County Jail. (Dkt. No. 165-28, pp. 15–16). Plaintiff was admitted to the Schenectady County Jail and searched according to the County's admission policy on at least six occasions in August and September 2014. (Dkt. No. 165-38, ¶ 4).

**III. STANDARD OF REVIEW**

**\*3** Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250, 106 S.Ct. 2505; *see also Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). Further, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and the grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994) (citing *Dister v. Continental Grp., Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas*

*Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). "Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003). To that end, "sworn statements are more than mere conclusory allegations subject to disregard [ ]; they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion." *Id.* at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Further, where a plaintiff proceeds *pro se*, the Court must read his submissions liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, a *pro se* party's " 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Jordan v. New York*, 773 F. Supp. 2d 255, 268 (N.D.N.Y. 2010) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**IV. DISCUSSION**

Plaintiff asserts a number of claims against each of the Defendants. The Court has construed Plaintiff's Complaint liberally, and will address each of the Defendants' arguments for summary judgment in turn.

**A. Claims Against the Schenectady County Defendants**

**1. Excessive Force on December 28, 2013** [3]

[3]   To the extent they are alleged, the Court dismisses Plaintiff's claims against "Unknown John Does from Schenectady County Sherriff" arising from the encounter between Plaintiff and Officer Glasser on December 28, 2013. The Court has reviewed the record and finds that there is no evidence to support a claim that excessive force or other unlawful conduct was committed by any unidentified officer(s) on that date.

**\*4** Plaintiff alleges that on December 28, 2013, Officer Glasser of the Schenectady County Sherriff's Department used "excessive force [by] unlawfully tasering plaintiff while [in] handcuffs." (Dkt. No. 1, p. 23). The Schenectady

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

Case 6:24-cv-00085-DNH-TWD   Document 4   Filed 03/12/24   Page 63 of 73

Defendants counter that the force deployed by Officer Glasser was proper under the circumstances, and they argue that "Plaintiff is estopped from claiming that he was a passive recipient of police violence." (Dkt. No. 165-43, pp. 6–11).

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). To succeed on an excessive force claim, "a plaintiff must ultimately demonstrate that the defendant's use of force was objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491 (N.D.N.Y. 2017); *see also Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004). The "objective reasonableness" inquiry is "case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96 (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

In evaluating an excessive force claim, courts consider: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). "[A] court must evaluate the record from the perspective of a reasonable officer on scene, rather than with the 20/20 vision of hindsight." *Hulett*, 253 F. Supp. 3d at 491 (citing *Tracy*, 623 F.3d at 96; *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)). "[G]ranting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable fact finder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am.*, 361 F.3d at 123.

Here, the parties have offered vastly different versions of the events that occurred after the police chase on December 28th. Plaintiff claims that he "did not run [from police] and had no reason to run," and adds that he was "snatched out of the vehicle by several officers at gun point [sic] flanked by several officers and immediately handcuffed and tasered." (Dkt. No. 176, p. 2). These allegations are consistent with the Complaint, and align with his recollection of events during his deposition testimony. (Dkt. No. 1, p. 7; *see also* Dkt. No. 165-28, pp. 117–28). According to Plaintiff, he was

hit by the taser in the leg near his hamstring, causing bleeding and leaving a scar. (Dkt. No. 165-28, pp. 120–21).

Officer Glasser recalls the encounter quite differently, asserting that when the chase ended at 767 Westmoreland Drive:

> Plaintiff Nakia Chaney jumped out of the passenger side door and ran to the front door of the house trying to get the door open. I took plaintiff to the ground where he resisted and refused to place his hands behind his back. I gave Plaintiff direct orders to put his hands behind his back, which he ignored. I used my taser to drive stun plaintiff in the back. This caused plaintiff's hands to move from the front of his body to the back. Once that occurred, I was able to handcuff plaintiff.

> **\*5** At the time of arrest, I did not know why plaintiff had tried to run away. I also did not know if plaintiff was armed and why plaintiff was resisting so hard to keep his hands in front of him. For my safety and the safety of the other officers involved, Plaintiff needed to be handcuffed so that he could not access a weapon or flee the scene....

> Since the taser did not cause any injury to plaintiff, he was not given medical treatment. No taser darts were used. I employed the taser using a drive stun. A drive stun is when the taser is held against someone's body without firing the projectiles, and is used to employ electricity to gain compliance.

(Dkt. No. 165-29, ¶¶ 4–5, 8). Officer Glasser's recollection appears to be consistent with his Arrest Report and Taser Use Report from the night of the incident. (*See* Dkt. No. 165-33, p. 2; Dkt. No. 165-30, p. 2).

Aside from these accounts, the parties offer no additional evidence to support their opposing versions of events. At a minimum, there are material issues of fact as to whether Plaintiff ran and resisted arrest, where the taser struck him, and whether it did so before or after he was in handcuffs, all of which affect the reasonableness of the use of force. Weighing the competing evidence and the parties' credibility is a task reserved for the trier of fact. Accordingly, the disputed issues of material fact preclude resolution as a matter of law, and the Schenectady County Defendants' motion for summary judgment on this claim must be denied.[4]

4    The Court rejects the Schenectady County Defendants' argument that judicial and collateral

2019 WL 3857995

estoppel bar Plaintiff's excessive force claim because Plaintiff pled guilty to disorderly conduct. (*See* Dkt. No. 165-43, pp. 16–19). Here, a favorable adjudication of Plaintiff's excessive force claim would not "necessarily imply the invalidity" of Plaintiff's guilty plea because disorderly conduct involves materially different elements than obstructing governmental administration and resisting arrest—the original charges against him. *See Shapard v. Attea*, 710 F. App'x 15, 17–19 (2d Cir. 2017) (reversing the district court's finding that Section 1983 claims were barred where the excessive force claims were not incompatible with the plaintiff's prior guilty plea to second degree assault against an officer).

### 2. Denial of Medical Attention

Plaintiff also appears to claim that he was unlawfully denied medical attention by the Schenectady County Defendants following his arrest on December 28, 2013. (Dkt. No. 1, p. 7). Plaintiff alleges that he required medical treatment because "he became extremely hot, nervous, heart racing [sic], shocked scared weird feeling but was denied initial medical treatment to document complaints." (Dkt. No. 176, p. 2).

A claim for deliberate indifference to a pre-trial detainee's serious medical needs is analyzed under the Fourteenth Amendment, and requires a two-part showing: (1) that Plaintiff had a serious medical need for treatment; and (2) that the Schenectady County Defendants acted with deliberate indifference to such needs. *See Gabriel v. County of Herkimer*, 889 F. Supp. 2d 374, 392 (N.D.N.Y. 2012) (citing *Caiozzo v. Koreman*, 581 F.3d 63, 71–72 (2d Cir. 2009)). The first element requires "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Bruno v. City of Schenectady*, 727 F. App'x 717, 720 (2d Cir. 2018) (citing *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005)). The second element is met when "the official 'acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.' " *Id.* (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)).

**\*6** Here, Plaintiff offers no evidence of a serious medical condition capable of producing extreme pain, degeneration,

or death. (*See generally* Dkt. No. 1; Dkt. No. 176). Plaintiff's claim that he was "extremely hot," "nervous," and "shocked" falls far short of the necessary showing. *See Bradley v. Village of Greenwood Lake*, 376 F. Supp. 2d 528, 535 (S.D.N.Y. 2005) (dismissing excessive force claim against an arresting officer who kicked the plaintiff in the stomach causing temporary nausea and an abdominal scratch); *Esmont v. City of New York*, 371 F. Supp. 2d 202, 213–15 (E.D.N.Y. 2005) (dismissing an excessive force claim where the arresting officer caused the plaintiff to bump her head as she was placed in patrol car, resulting in a headache; left her in hot patrol car for ten minutes, resulting in profuse sweating; and applied handcuffs too tightly, resulting in bruising, swelling and unsubstantiated claims of nerve damage); *Roundtree v. City of New York*, 778 F. Supp. 614, 622 (E.D.N.Y. 1991) (dismissing an excessive force claim where the arresting officer pushed the plaintiff into a patrol car causing alleged pain and suffering).

Further, Plaintiff admits that he did not seek medical attention for his alleged medical needs following his release, and he does not claim any lasting physical injuries from the December 28th encounter. (*See* Dkt. No. 165-28, p. 128). Indeed, courts have found that a plaintiff's failure to seek medical attention after being released from custody undermines any claim of serious pain or that urgent care was needed. *See, e.g., Carey v. Maloney*, 480 F. Supp. 2d 548, 557–58 (D. Conn. 2007) (dismissing a plaintiff's claim for denial of medical treatment where the plaintiff never requested medical attention from the police, and did not seek medical attention until nearly twenty-four hours after his release from custody); *see also Rivera v. Goord*, 253 F. Supp. 2d 735, 756 (S.D.N.Y. 2003) ("Evidence that a plaintiff has refused medical care has been found to effectively rebut claims of deliberate indifference to serious medical needs."). After careful review of the record, the Court concludes that there are no facts from which a jury could find that Plaintiff had a serious medical need on December 28, 2013.

Moreover, even if Plaintiff could show a serious medical need, he has not presented any evidence that the Defendant officers ignored or rejected a specific request by Plaintiff for medical attention. Indeed, there is no evidence that the Schenectady County Defendants were even aware of Plaintiff's alleged serious medical condition. Thus, the record offers no facts whatsoever to show deliberate indifference by the Defendant officers.

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

Accordingly, because no reasonable jury could return a verdict in Plaintiff's favor for denial of medical attention, the Schenectady County Defendants' motion for summary judgment is granted on this claim.

### 3. Unlawful Visual Body Cavity Searches

Next, Plaintiff alleges that he was subjected to unlawful visual body cavity searches performed by the Schenectady County Defendants prior to each admission for his weekend stays at the Schenectady County Jail. (Dkt. No. 1, p. 22). Plaintiff adds that the "schenectady county jail admission policy in which [Plaintiff] was forced to undress and spread apart his rectal and lift up his penis was without justification as there was no reason to believe that weapons or contraband was being concealed on or in the body and therefore violated [Plaintiff's] constitutional rights." (*Id.*, pp. 19–20). Plaintiff claims that Defendants Van Hoesen, Reaulo, and Sinatra performed an "unlawful admission visual body cavity search" on Plaintiff on several occasions in August, September, and October of 2014. (*Id.*). Plaintiff also alleges that unidentified John Does of the Schenectady County Sheriff's Department performed unlawful visual body cavity searches in December 2013, and May and August of 2014. (*Id.*). Defendants acknowledge that Plaintiff was admitted to the Schenectady County Jail on six separate occasions in August and September 2014. (Dkt. No. 165-38, ¶ 4).

**\*7** It is well-established that "[t]he general practice of strip searching a detainee during housing searches and on the way to and from court appearances is not unconstitutional, even if the detainee is accused only of a misdemeanor." *Thompson v. City of New York*, No. 16-CV-824, 2017 WL 1929552, at \*2, 2017 U.S. Dist. LEXIS 70423 (S.D.N.Y. May 9, 2017) (citing cases). The Supreme Court has recognized that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 328, 132 S.Ct. 1510, 182 L.Ed.2d 566 (2012). In *Florence*, the Supreme Court held that a county jail did not violate prisoners' rights when it permitted visual inspection body cavity searches, without reasonable suspicion, prior to the prisoners' introduction to a general population unit. *Id.* at 339, 132 S.Ct. 1510. As in *Florence*, Plaintiff's allegations of unlawful searches relate specifically to "visual body cavity searches" conducted upon his admission to the Schenectady County Jail. (*See, e.g.*, Dkt. No. 1, p. 7).

In support of summary judgment, the Schenectady County Defendants argue that Plaintiff's claims have been expressly rejected by the Supreme Court, and that his allegations "fail[ ] to show that the alleged admission visual strip searches violated a clearly established law in the Second Circuit." (Dkt. No. 180-4, pp. 11–12). According to Captain Gregory Cufari of the Schenectady County Sheriff's Office, "[e]ach time the plaintiff entered the jail he was a security risk because he was coming off the street and going into the jail's general population. By coming into the jail from the street, plaintiff had the ability [ ] to bring into the jail such items as weapons, drugs or other contraband." (*Id.*). In response, Plaintiff argues that "there was no reason to conduct a cavity search after plaintiff cleared all boss chairs and handwands without detection," and he contends that "[a]ny cavity searches was only to humiliate as there was no reasonable suspicion as plaintiff cleared security and unrelated to legitimate penological interests." (Dkt. No. 176, p. 4).

On this claim, the Court's previous ruling dismissing Plaintiff's claim against the Albany County Defendants applies with equal force. (*See* Dkt. No. 110, pp. 7–8). Plaintiff alleges that the searches he underwent at the Schenectady County Jail were unconstitutional because the Schenectady County Defendants did not have reasonable suspicion of concealed contraband—precisely the same claim rejected by the Supreme Court in *Florence*. Again here, Plaintiff's argument fails "because *Florence* permits correction officers to strip search detainees without particularized suspicion ... and recognizes that strip searches are specifically 'designed to uncover contraband that can go undetected by a patdown, metal detector, and other less invasive searches.' " *Thompson*, 2017 WL 1929552, at \*2, 2017 U.S. Dist. LEXIS 70423 (quoting *Florence*, 566 U.S. at 334, 132 S.Ct. 1510). That includes searches involving visual inspection of body cavities. *Florence*, 566 U.S. at 340–41, 132 S.Ct. 1510. Moreover, there is no evidence that the searches "did not serve a legitimate penological purpose," or that they were "instead designed to intimidate, harass, or embarrass [Plaintiff]." *See Smith v. City of New York*, No. 14-CV-5934, 2015 WL 3929621, at \*2, 2015 U.S. Dist. LEXIS 81337 (S.D.N.Y. June 17, 2015).

Accordingly, Plaintiff's claims of unlawful searches fail as a matter of law, and the Schenectady County Defendants' motion for summary judgment on these claims is granted. Plaintiff's claims against the Schenectady County Jail and

Case 6:24-cv-00085-DNH-TWD   Document 4   Filed 03/12/24   Page 66 of 73

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

Officers Van Hoesen, Reaulo, Sinatra, and other "Unknown John Does from Schenectady County Jail" are dismissed with prejudice.

### 4. *Monell* Claim

Next, Plaintiff alleges that "[t]he wrongful conduct alleged herein in regards to the admission visual body cavity searches has been conducted generally upon all members of the plaintiff class in that the strip searches were conducted pursuant to a long-established plan, policy, or procedure of the [Schenectady County Sheriff.]" (Dkt. No. 1, p. 20). This could be construed as a municipal liability claim against Schenectady County pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In general, municipalities are responsible only for "their own illegal acts," *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), and are not vicariously liable for civil rights violations perpetrated by their employees. *Monell*, 436 U.S. at 691, 98 S.Ct. 2018. In order to sustain a claim for municipal liability under Section 1983, a plaintiff must show that he suffered a constitutional violation in the first place, and that the violation resulted from an identified municipal policy or custom. *Monell*, 436 U.S. at 694–95, 98 S.Ct. 2018. The same is true for claims against other government entities such as the County of Schenectady. *See Sheriff's Silver Star Ass'n of Oswego County, Inc. v. County of Oswego*, 56 F. Supp. 2d 263, 266 (N.D.N.Y. 1999).

**\*8** As noted by the Schenectady County Defendants, Plaintiff's *Monell* claim is limited to the alleged policy and practice of conducting visual body cavity searches upon admission to the Schenectady County Jail. Because the Court has already determined that the County's pre-admission search practices for the jail did not violate the Constitution, Plaintiff's *Monell* claim fails for the same reason. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (municipal liability under *Monell* may only lie where there is an underlying constitutional violation). Accordingly, the Schenectady County Defendants' motion for summary judgment on Plaintiff's *Monell* claim is granted.

### B. Claim Against Defendant Bell

Plaintiff alleges that Defendant Alan Bell, a sergeant with the Niskayuna Police Department, "requested [that] Defendant Scott Gavigan use the unlawful GPS tracking device," and

"controlled the GPS device in the Town of Niskayuna ... without a warrant [ ] or probable cause." (Dkt. No. 1, pp. 10, 23). Plaintiff claims that "[t]he unlawful GPS tracking on plaintiff [sic] vehicle or cellphone was done without a warrant," resulting in a "massive invasion of [his] privacy." (*Id.*, p. 20). Plaintiff admits that these allegations are solely based on logs from the Albany-area license plate reader ("LPR") system, which identify dates, times, and locations when Plaintiff's vehicle was observed on public roads. (Dkt. No. 165-28, p. 141). Plaintiff testified that he is aware that Albany has cameras stationed throughout the city, and that these cameras are used to "record everything that goes by them," including license plates on passing vehicles. (*Id.*, pp. 133–34). Plaintiff also acknowledged that he does not believe that any LPR technology was placed directly on his vehicle. (*Id.*, pp. 135–37). Nonetheless, he argues that the use of numerous cameras throughout the city operated like a tracking device for law enforcement "because it continuously tracks and it works the same way as the GPS works." (*Id.*).

Defendant Bell argues that summary judgment is appropriate "because there is no evidence that Defendant Bell placed or directed to be placed a GPS device on Plaintiff's vehicle(s) and/or cellphone." (*See* Dkt. No. 168-32, pp. 6–9). Defendant Bell contends that Plaintiff's allegations about unlawful GPS tracking stem from a misunderstanding of the LPR technology. (*See id.*). According to Defendant Bell, "it is without question that [LPRs] are lawful, constitutional technology and may be used by law enforcement as a valuable tool." (*Id.*, p. 7).

Indeed, courts have consistently upheld the use of LPR and similar technologies by law enforcement agencies. *See, e.g.*, *United States v. Miranda–Sotolongo*, 827 F.3d 663, 668 (7th Cir. 2016) ("Because the police conducted a check of a database containing only non-private information and did so using only registration information that could be seen by any member of the public, the police did not conduct a Fourth Amendment search."); *United States v. Diaz–Castaneda*, 494 F.3d 1146, 1152 (9th Cir. 2007) (stating that "when police officers see a license plate in plain view, and then use that plate to access additional non-private information about the car and its owner, they do not conduct a Fourth Amendment search"); *United States v. Ellison*, 462 F.3d 557, 563 (6th Cir. 2006) ("Thus, so long as the officer had a right to be in a position to observe the defendant's license plate, any such observation and corresponding use of the information on the plate does not violate the Fourth Amendment"). In *People v. Bushey*, the New York Court of Appeals addressed a similar challenge to

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

police-use of license plate information collected through LPR technology. *See generally* 29 N.Y.3d 158, 75 N.E.3d 1165 (2017). There, the Court of Appeals explained that:

> **\*9**  Because the purpose of a license plate is to readily facilitate the identification of the registered owner of the vehicle for the administration of public safety, a person has no reasonable expectation of privacy in the information acquired by the State for this purpose and contained in a law enforcement or DMV database. Indeed, the information is typically provided voluntarily by a driver to a government agency in exchange for the privilege of a valid license and registration. Considering that police officers are authorized by law to inspect and check for violations of licensing and registration requirements (*see* Vehicle and Traffic Law §§ 390, 401), drivers cannot claim any objectively reasonable expectation of privacy with respect to the DMV information being obtained by law enforcement. An officer's observation of that which is publicly displayed and the use of the information relative thereto contained in the DMV database does not violate defendant's Fourth Amendment rights, nor any provision of our New York State Constitution. As defendant did not have any reasonable expectation of privacy in either his license plate or the information lawfully obtained and accessible through the DMV database, there was no search or seizure cognizable under federal or state constitutional law.

*Id.* at 163–64.

Here, Defendant Bell has explained how the Albany Crime Analysis Center ("ACAC"), a division of the Albany Police Department, tracks license plate information throughout the Albany area. (*See* Dkt. No. 168-31, ¶ 5). Relevantly, Defendant Bell states that:

> Plaintiff has relied on print outs from the [ACAC] to claim that I placed or caused to be placed a GPS device on his vehicle(s) and/or cell phone. I did not. Instead, I requested information from the ACAC pertaining to license plates known to be associated with the plaintiff. It just so happens that the license plate information I entered into the system was captured by some of the license plate readers in Albany and the print out demonstrates when and where the license plates passed any of the various cameras.

(*Id.*, ¶ 6). Defendant Bell further explains the LPR log forms cited by Plaintiff as follows:

> One heading of the print out states "GPS". In this context, it is not a GPS in the way plaintiff alleges where a device is placed onto a vehicle or cell phone and then sends out information as to the vehicle's whereabouts at any point in time. Instead, in the context of the license plate readers, "GPS" refers to the location of the license plate reader itself. Based on this, I am able to tell whether the license plate associated with the plaintiff was captured as it drove by a stationary camera or a camera affixed to a police vehicle. If a vehicle associated with Mr. Chaney did not drive by a license plate reader, I would not know his whereabouts. Had there actually been a GPS placed on the vehicle, I would be able to know his whereabouts at all times. Because I only accessed the database and did not use a GPS, I would not know where Mr. Chaney

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

was at any given time, only the
occasions when he passed a camera.

(*Id.*, ¶ 7).

In sum, the record shows that APD used fixed cameras throughout the city that indiscriminately recorded 24-hours a day, without any particular focus on specific individuals, a fact acknowledged by Plaintiff. (*See* Dkt. No. 165-28, pp. 135–36). And Plaintiff has presented no evidence that Defendant Bell used any technology other than LPR to track the location of Plaintiff's vehicles or his cell phone. Thus, for the reasons outlined by the Court of Appeals in *Bushey*, Defendant Bell's use of the LPR technology did not violate Plaintiff's Fourth Amendment rights because he had no reasonable expectation of privacy in his license plate information while traveling on public roads.

Accordingly, Defendant Bell's motion for summary judgment is granted.

### C. Claims Against the City of Albany Defendants[5]

[5]    The Court notes that the Albany Defendants have not moved for summary judgment on Plaintiff's unlawful tracking claims against APD and Officer Gavigan. (*Compare* Dkt. No. 1, *with* Dkt. No. 167).

### 1. Excessive Force Claim

Plaintiff claims that he was subjected to excessive force during encounters with APD officers on August 14, 2014 and October 13, 2014. (Dkt. No. 1, pp. 7–8, 22–23). Specifically, Plaintiff claims that an unknown officer (Defendant John Doe Badge #889) "used excessive force by tackling [ ] plaintiff to the ground and handcuffing plaintiff as he tried to enter the store on central ave on the night of August 14, 2014." (*Id.*, p. 7). Plaintiff also claims that he was subjected to excessive force on October 13, 2014 when APD Officers Gavigan, Gorleski, Kuhn, and Meehan "roadblocked plaintiffs [sic] vehicle at gun point and strong armed plaintiff facedown in the middle of interstate I-90." (*Id.*, p. 8). During his deposition, Plaintiff stated that he was "snatched out of the vehicle at gunpoint, ... rustled, handcuff[ed], and arrested." (Dkt. No. 165-28, pp. 55–56). Plaintiff claims that the APD Officers had no reason to use force against him.

**\*10**  The Albany Defendants argue that Plaintiff's excessive force claim is subject to summary judgment because "[Plaintiff] fails to articulate any specific physical injuries," and "never sought or received medical treatment as a result of either incident." (Dkt. No. 167-1, pp. 10–11). In response, Plaintiff argues that officers used "extreme and excessive force" on both occasions, but he fails to identify any resulting injuries. (Dkt. No. 177, p. 3).

As discussed above, excessive force claims brought under Section 1983 are evaluated under the Fourth Amendment's "objective reasonableness" standard. *See Terranova v. New York*, 676 F.3d 305, 308 (2d Cir. 2012). "[A] plaintiff must present sufficient evidence to establish that the alleged use of force is 'objectively sufficiently serious or harmful enough' to be actionable." *Washpon v. Parr*, 561 F. Supp. 2d 394, 406 (S.D.N.Y. 2008) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). "[T]he Second Circuit and district courts in the Circuit recognize the concept of *de minimis* injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed." *Jackson v. City of New York*, 939 F. Supp. 2d 219, 231 (E.D.N.Y. 2013); *see also Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). Furthermore, a " '[*d*]*e minimis* injury can serve as conclusive evidence that *de minimis* force was used.' " *Washpon*, 561 F. Supp. 2d at 407 (quoting *Carr v. Deeds*, 453 F.3d 593, 606 (4th Cir. 2006)). However, "the absence of any significant injury to [Plaintiff] does not end the [excessive force] inquiry, for our standards of decency are violated even in the absence of such injury if the defendant's use of force was malicious or sadistic." *Wright v. Goord*, 554 F.3d 255, 270 (2d Cir. 2009).

Here, Plaintiff does not allege *any* specific injuries resulting from the claimed excessive force by APD officers on August 14 or October 13 in 2014. (*See generally* Dkt. No. 1; Dkt. No. 171). Plaintiff merely asserts that, on August 14th, he was "surrounded by all the officers who basically just took me down," and that "[t]hey came over with guns drawn, threw me down to the floor, rushing me down, and handcuffing me." (Dkt. No. 165-28, pp. 29–30). After being pushed to the ground, Plaintiff states that the APD officers "searched around me, took my phone and stuff out of my pocket, searched my pocket and my, you know, genital area around me at first. And then after that they went and told me to sat [sic] down on the curb, like helped me sit down because I was handcuffed." (*Id.*, p. 32). As for October 13th, Plaintiff recalls that he "got tooken [sic] out of the car, snatched to the ground,

2019 WL 3857995

handcuffed, and -- rustled me out of the car and took me down to the precinct." (*See id.*, pp. 55–56).

For both arrests, it is undisputed that APD officers had probable cause to believe that drug crimes had been committed and did not know whether Plaintiff and his associates were armed. (*See* Dkt. No. 167-2, pp. 4–9, 93–94). Crediting Plaintiff's allegations, the officers made these arrests by taking Plaintiff down to the ground and placing him in handcuffs. There is no evidence whatsoever that Plaintiff suffered any injury resulting from their actions, much less a significant one. Nor could malicious or sadistic intent be inferred based on their actions. On these facts, no jury could find that the force used against Plaintiff was unreasonable. Therefore, Plaintiff's excessive force against the APD Defendants must be dismissed. *See Bermudez v. Waugh*, No. 11-CV-947, 2013 WL 654401, at *5, 2013 U.S. Dist. LEXIS 23422 (N.D.N.Y. Feb. 21, 2013) (finding that tackling of inmate that caused minor bruising constituted *de minimis* force) (collecting cases); *Bradley v. Village of Greenwood Lake*, 376 F. Supp. 2d 528, 535 (S.D.N.Y. 2005) (dismissing excessive force claim against arresting officer who kicked the plaintiff in the stomach causing temporary nausea and an abdominal scratch); *Esmont v. City of New York*, 371 F. Supp. 2d 202, 213–15 (E.D.N.Y. 2005) (dismissing excessive force claim where arresting officer caused the plaintiff to bump her head as she was placed in patrol car, resulting in a headache; left her in hot patrol car for ten minutes, resulting in profuse sweating; and applied handcuffs too tightly, resulting in bruising, swelling and unsubstantiated claims of nerve damage).

### 2. October 13, 2014 Arrest Report

**\*11** Plaintiff next claims that Defendant Gavigan "falsified the arrest report/accusatory instrument on October 13, 2014 by alleging the red jacket found in the trunk belonged to this plaintiff as opposed to the driver who owned the vehicle." (Dkt. No. 1, p. 9). As a result, Plaintiff claims that his due process rights were violated because the "perjured arrest report/accusatory instrument" did not meet the "requirements of CPL 100.40 and CPL 100.15" since Gavigan "failed to provide any facts to support his conclusory statements[.]" (*Id.*).

In response, the Albany Defendants argue that Plaintiff's drug conviction related to the October 13th incident precludes him from asserting that Detective Gavigan falsified the related

arrest report. (Dkt. No. 167-1, pp. 7–8). This argument relies on the Supreme Court's decision in *Heck v. Humphrey*, which held that:

> [I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a Section 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

Here, Plaintiff offers no evidence that his conviction for Criminal Possession of a Controlled Substance in the Third Degree (*see* Dkt. No. 167-2, p. 7) has been reversed or invalidated. Furthermore, the undisputed facts demonstrate that Plaintiff's conviction stems entirely from the evidence obtained by APD officers on October 13th, which included 198 glassine envelopes of heroin recovered from Plaintiff's left coat pocket. (*See id.*, p. 6). Thus, the success of Plaintiff's claim challenging the arrest report would necessarily imply the invalidity of his conviction.

For these reasons, the Court finds that Plaintiff's claim challenging the validity of the October 13th arrest report is

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

barred by *Heck* and must be dismissed. *See Warren v. Fischl,* 674 F. App'x 71, 73 (2d Cir. 2017), *cert. denied,* ––– U.S. ––––, 138 S. Ct. 123, 199 L.Ed.2d 75 (2017) (finding that the appellant's claims alleging that defendants "conspired to fabricate evidence and testimony against him and introduced such fabricated evidence and perjury at trial," if proved, "would demonstrate the invalidity of his conviction," and were therefore barred by *Heck*); *Monroe v. Gould,* 372 F. Supp. 3d 197, 202–03 (S.D.N.Y. 2019) (granting summary judgment on a plaintiff's Section 1983 claim challenging the validity of the police search of a vehicle where the plaintiff's success would have implied the invalidity of the plaintiff's prior conviction).

### 3. Unlawful Strip and Visual Body Cavity Searches

Plaintiff also claims that APD officers subjected him to a number of unlawful strip and visual body cavity searches. (Dkt. No. 1, pp. 23–24). Specifically, Plaintiff alleges that while he was handcuffed on August 14, 2014, "[Defendant John Doe Badge #889], Detective Scott Gavigan and members of his unit arrived on scene and performed there [sic] own search of plaintiff private area [sic]." (*Id.*, p. 8). According to Plaintiff, several APD officers, including Defendant Gavigan, took him to a parking lot and searched his pockets, waistband, shoes, socks, and then removed his belt. (Dkt. No. 165-28, pp. 33–35). Plaintiff states that "my genitals and all that was lift up, [officers] searched inside my pants ... up under my arms, my shoes and socks was tooken [sic] off and then the back was also searched." (*Id., pp. 35–36*). When asked specifically whether the officers touched his genitals, Plaintiff testified: "Yes. Yes. Yes. Outside and at the precinct also, when I got down to the station house." (*Id., p. 36*).

**\*12** Plaintiff also alleges that APD officers conducted a similar unlawful search when he was arrested on October 13, 2014, wherein Defendant Officers Gavigan and Kuhn performed a public search of Plaintiff's "private areas." (Dkt. No. 1, pp. 8–9, 22–23). And Plaintiff claims that APD Officers Gorleski, Kuhn and Meehan performed another unlawful visual body cavity search when Plaintiff arrived at the Albany police station. (*See id.*, pp. 8–9, 22). Plaintiff claims that, on both occasions, the APD officers lacked probable cause to "forcibly search" his underwear in public. (*Id.*, pp. 8–9). Consistent with these allegations, Plaintiff testified that the police strip-searched him in public and again at the police station. (Dkt. No. 165-28, pp. 57, 66). According

to Plaintiff, APD officers, including Defendant Gavigan, physically touched his genitals during both searches. (*Id.*, pp. 66–67).

The Albany Defendants admit that a visual body cavity search was conducted in a private room at the police station on October 13th, but they insist that no strip-searches were ever conducted in public. [6] (Dkt. No. 167-1, p. 9). Further, the Albany Defendants argue that Plaintiff's claims about public strip-searches are "simply unbelievable and unsupported by evidence," and that "the facts and totality of the circumstances rendered the strip [at the police station] necessary and constitutional." (*Id.*, pp. 9–10).

[6]    Regarding the October 13th encounter, Defendant Gavigan states that police performed a "pat down" search on Plaintiff's person. (Dkt. No. 167-2, ¶ 9).

The Fourth Amendment protects individuals from unreasonable searches by the government. *See* U.S. Const. amend. IV. A search of a person is presumptively unreasonable if conducted without a warrant, but warrantless searches may be justified if they fall under an exception to the warrant requirement. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). For example, strip-searches at detention facilities are generally valid under the Fourth Amendment, as discussed above. Under the circumstances here, Plaintiff's allegations about searches at the police station also fall in this category. Notably, the record shows that Plaintiff was arrested with a large amount of narcotics in glassine envelopes and has a criminal history involving narcotics. (*See* Dkt. No. 167-2, p. 6). Therefore, the police also had reasonable suspicion that Plaintiff could be carrying and concealing drugs on his person, which justified the search. Further, Plaintiff admits that the search at the station was performed in a private room, limiting the intrusion on his privacy. (*See* Dkt. No. 165-28, p. 64).

Accordingly, Plaintiff's allegations about searches at the police station do not permit a rational finding that his Fourth Amendment rights were violated. *See Elk v. Townson,* 839 F. Supp. 1047, 1052 (S.D.N.Y. 1993) (holding that the defendant's presence in a vehicle in which drugs were found gave the sheriff's office "reasonable grounds" to conduct a strip-search at the precinct); *Easton v. City of New York,* No. 05-CV-1873, 2009 WL 1767725, at *3–4, 2009 U.S. Dist. LEXIS 53519 (E.D.N.Y. June 23, 2009) (holding that reasonable suspicion existed for visual body cavity search where the plaintiff was arrested while in possession of

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

Case 6:24-cv-00085-DNH-TWD   Document 4   Filed 03/12/24   Page 71 of 73

marijuana and cash, allowing the rational inference that he was engaged in the sale and distribution of marijuana); *see also United States v. Doutre*, No. 08-CR-10215, 2009 WL 1211048, at \*5, 2009 U.S. Dist. LEXIS 37758 (D. Mass. May 5, 2009) (holding that police had reasonable suspicion to conduct a strip-search of the defendant at the station where the defendant was arrested for a drug trafficking crime and police had received information from an informant that defendant possessed cocaine earlier that evening).

However, as to the alleged public strip-searches, the parties' contrasting accounts preclude summary judgment because there is an issue of fact as to whether Plaintiff was subjected to a public strip-search/visual body cavity inspection. A public search as alleged would rise to the level of a Fourth Amendment violation. In sum, the Albany Defendants' motion for summary judgment on Plaintiff's Fourth Amendment claims is granted as to the strip and/or visual body cavity searches conducted upon intake at the Albany police station, but denied as to Plaintiff's claims that APD officers touched his genitals during public strip-searches on August 14th and October 13th of 2014. [7]

[7]    The Court rejects the Albany Defendants' argument that Officers Kisling, Wilson, Seeber, and James were not personally involved in any of the alleged conduct. (*See* Dkt. No. 167-1, p. 6). Plaintiff has consistently recalled that numerous officers were involved in the alleged unlawful searches on August 14th. Plaintiff specifically alleges that after his apprehension on August 14th, "Defendant Scott Gavigan and members of his unit arrived on the scene and performed [their] own search of [Plaintiff's] private areas." (Dkt. No. 1, p. 8). During Plaintiff's deposition, he recalled that he was escorted by four officers to a parking lot where the alleged search was conducted. (Dkt. No. 165-28, p. 35). In opposition to the Albany Defendants' motion, Plaintiff argues that "these officers [sic] names didn't fall from the sky there [sic] names are a result of there [sic] participation in the unlawful public cavities [sic] searches...." (Dkt. No. 177, p. 1). Viewing the alleged facts in a light most favorable to the Plaintiff, the Court finds that a reasonable jury could find that Officers Kisling, Wilson, Seeber, and James were involved in the alleged conduct.

### 4. Deprivation of Property

**\*13**  Next, Plaintiff alleges that Defendant Gavigan unlawfully "seized" $5,832.00 from him on an unspecified date. (Dkt. No. 1, p. 12). Plaintiff asserts that he has "yet to receive a voucher or notification of forfeiture proceedings," and that "[n]othing was ever mentioned in court and I hereby request [the] return of my money confiscated. Plaintiff asserts a claim of conversion [ ]." (*Id.*).

The Albany Defendants deny that that Detective Gavigan ever seized any money from Plaintiff, and argue that "even assuming this allegation is true, the availability of an Article 78 procedure is sufficient to satisfy Plaintiff's right to due process such that Plaintiff fails to state a cognizable [Section 1983] due process claim." (Dkt. No. 167-1, p. 14). In response, Plaintiff argues that the "court has jurisdiction over plaintiff [sic] property claim irrespective of plaintiff not filings [sic] and article 78 and waisting [sic] time." (Dkt. No. 177, p. 3).

In general, "there is no constitutional violation (and no available Section 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881–82 (2d Cir. 1996) (citations omitted). As noted by the Albany Defendants, the Second Circuit has held that "an Article 78 proceeding constitutes an adequate postdeprivation procedure under the Due Process Clause...." *Id.* (citing *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988)). Moreover, this Court has held that Article 78 proceedings provide an adequate remedy for those who seek to challenge any action or inaction by an administrative agency or officers of state or local government. *See Hourihan v. Lafferty*, 58 F. Supp. 2d 10, 14–15 (N.D.N.Y. 1999) (citing N.Y. C.P.L.R. § 7801).

Here, Plaintiff has offered no evidence that he ever sought the return of the money that was allegedly seized by Detective Gavigan, either directly from APD or through an Article 78 proceeding. Plaintiff's remedy for this claim was to seek relief under Article 78 rather than file suit in federal court. Accordingly, Plaintiff's claim to recover the value of the seized property is dismissed as a matter of law.

Case 6:24-cv-00085-DNH-TWD   Document 4   Filed 03/12/24   Page 72 of 73

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

### 5. *Monell* Claim

Lastly, Plaintiff asserts a municipal liability claim against the City of Albany under several theories, including: (1) failure to train, supervise, or discipline its employees; (2) creation and use of "a blanket policy that allowed ... officers to commit perjury within arrest reports;" (3) "fail[ure] to implement a policy that screen [sic] all arrest reports/ accusatory instruments for facial and jurisdictional defects prior to infringing upon a plaintiff [sic] due process liberty rights;" (4) creation of "a blanket policy that allowed all officers to arrest a plaintiff in the absence of probable cause;" (5) "deliberate indifference to Plaintiff's false arrest by enforcing a blanket policy created by the prosecutor and the police chief to allow the Albany police to conduct stop-frisks, unlawful cavity searches, and file false reports without conducting a thorough investigation;" and (6) "the admission visual body cavity searches ... conducted pursuant to a long-established plan, policy, or procedure of the ... albany police department." (Dkt. No. 1, pp. 9–10, 15–17, 20–21).

In support of summary judgment, the Albany Defendants argue that "the only proof Plaintiff has offered in an attempt to substantiate these conclusory, boilerplate allegations are his own isolated allegations of misconduct which form the basis of this litigation." (Dkt. No. 167-1, p. 12). In response, Plaintiff argues that "[t]he defendants were put on notice for years about the same identical issues raised herein and failed to discipline or institute a policy to detect perjury, filings of perjured false police report, unlawful cavity searches etc. wherefore these issues are not isolated and clearly establishes a monell claim." (Dkt. No. 177, p. 3).

**\*14** Under *Monell*, a city may only be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." 436 U.S. at 694–95, 98 S.Ct. 2018; *see also Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733–36, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)). A municipal policy or custom may be established by any of the following: (1) a formal policy, officially promulgated by the municipality, *id.* at 690, 98 S.Ct. 2018; (2) an action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur*, 475 U.S. at 483–84, 106 S.Ct. 1292; (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S.

112, 127–30, 108 S.Ct. 915, 99 L.Ed.2d 107 (1985) (plurality opinion); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Here, Plaintiff has not demonstrated any underlying constitutional violation to support his *Monell* claim, with the possible exception of the alleged public searches. Moreover, he has not produced any evidence of a municipal policy or custom by the City of Albany that caused the alleged constitutional violations. Plaintiff simply asserts, without offering supporting evidence, that his experiences with APD officers were part of a larger pattern of systemic misconduct. (*See* Dkt. No. 1, pp. 9–10, 15–17, 20–21). At most, Plaintiff has only alleged a few isolated instances of misconduct. [8] Without more, he cannot sustain a *Monell* claim because it is well-settled that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998); *see also Southerland v. Garcia*, 483 F. App'x 606, 609 (2d Cir. 2012) (holding that summary judgment was proper where the "[p]laintiffs [ ] failed to allege, let alone present any evidence of, an official custom or policy such as is necessary to establishing liability under *Monell*"); *Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (affirming the district court's dismissal of a *Monell* claim where isolated evidence of constitutional violations "[fell] far short of establishing a practice that is so 'persistent and widespread' to justify the imposition of municipal liability"). Accordingly, Plaintiff's conclusory allegations of wider misconduct by the Albany police are insufficient to show a policy or practice by the City, and Plaintiff's *Monell* claim must be dismissed. [9]

[8] The Court notes that Plaintiff's opposition papers include several articles from Albany-area newspapers identifying at least one other case in which APD and Defendant Gavigan were accused of civil rights violations. (*See, e.g.*, Dkt. No. 177-1, pp. 15–16, 41–42). Although there appears to be some tangential similarities between the claims in those cases and Plaintiff's claims here, there is nothing to suggest anything more than isolated incidents of alleged wrongdoing on behalf of specific officers.

[9] Plaintiff claims that Albany Police Chief Steven Krokoff violated his constitutional rights because

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

Case 6:24-cv-00085-DNH-TWD   Document 4   Filed 03/12/24   Page 73 of 73

Chief Krokoff, *inter alia*, failed "to prevent unlawful stops, frisks without probable cause or [to prevent] the filing of perjurous [sic] police reports that lead to unwarranted malicious prosecution or deprivation of plaintiff [sic] due process liberty rights." (*See* Dkt. No. 1, pp. 9–11). However, Plaintiff has failed to offer any evidence supporting these allegations, and therefore, Plaintiff's claims against Chief Krokoff must be dismissed.

## V. CROSS-CLAIMS

 **\*15** The Schenectady County Defendants and Defendant Bell also move to dismiss all cross-claims against them. (*See* Dkt. No. 165-43, pp. 32–33; Dkt. No. 168-32, p. 9). Although "[n]either the Supreme Court nor the Second Circuit has ruled on the question of whether there is a right to contribution between joint tortfeasors under 42 U.S.C. § 1983, New York district courts have consistently held that federal law does not provide a basis for contribution under Section 1983." *See Thomas v. City of Troy*, 293 F. Supp. 3d 282, 301–02 (N.D.N.Y. 2018) ("even if this action went to trial and City Defendants were found liable, they would be liable for their own actions and not for the actions of County Defendants"); *see also De Ratafia v. County of Columbia*, No. 13-CV-0174, 2013 WL 5423871, at \*18, 2013 U.S. Dist. LEXIS 138169 (N.D.N.Y. Sept. 26, 2013) (holding that "federal law does not provide a basis for contribution for liability under Section 1983"); *Castro v. County of Nassau*, 739 F. Supp. 2d 153, 184 (E.D.N.Y. 2010) ("To the extent the County seeks indemnification and contribution on plaintiff's § 1983 claims, they cannot do so as a matter of law. No right to contribution exists under § 1983. Nor is there a federal right of indemnification under the statute."). The Court sees no reason to diverge from this well-established precedent here. Accordingly, Defendants' cross-claims for contribution and indemnity are dismissed.

## VI. CONCLUSION

For the foregoing reasons, it is

ORDERED that the Schenectady County Defendants' Motion for Summary Judgment (Dkt. No. 165), is **GRANTED** as to Plaintiff's claims for: (1) unlawful visual body cavity searches; (2) denial of necessary medical attention; and (3) municipal liability under *Monell;* but is **DENIED** as to Plaintiff's excessive force claim arising from the encounter on December 28, 2014; and it is further

ORDERED that Defendant Bell's Motion for Summary Judgment (Dkt. No. 168), is **GRANTED**; and it is further

ORDERED that the Albany Defendants' Motion for Summary Judgment (Dkt. No. 167), is **GRANTED** as to Plaintiff's claims for: (1) unlawful searches at the police station on October 13, 2014; (2) excessive force on August 13, 2014 and October 13, 2014; (3) unlawfully "seized" money; and (4) municipal liability under *Monell*; but is **DENIED** as to Plaintiff's claims for unlawful public strip-searches on August 13, 2014 and October 14, 2014; and it is further

ORDERED that all cross-claims, to the extent they are asserted by and against the Defendants, are **DISMISSED** with prejudice; and it is further

ORDERED that, in accordance with this Memorandum-Decision and Order, Defendants Sinatra, Van Hoesen, Reaulo, Bell, Schenectady County Jail, Unknown John Does from the Schenectady County Jail, Unknown John Does from the Schenectady County Sherriff, and Albany Police Chief Steven Krokoff are hereby **DISMISSED** from this action with prejudice; and it is further

ORDERED that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 3857995

---